**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LAWRENCE MALLY, On Behalf of Himself and All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>     -against-<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., RUI LIN WU, and ALBERT LEUNG,<br><br>                         Defendants. | Civil Action No. 1:07-CV-7097 (DLC) |
| MILTON PFEIFFER, On Behalf of Himself and All Others Similarly Situated,<br><br>                         Plaintiff,<br><br>     -against-<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., RUI LIN WU, and, ALBERT LEUNG,<br><br>                         Defendants. | Civil Action No. 1:07 CV-7252 (DLC) |

[Additional Caption on Next Pages]

MEMORANDUM OF LAW IN SUPPORT OF JAMES B. BALABAN'S MOTION
FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL

Marc I. Gross (MG-8496)
Jeremy A. Lieberman (JL-1173)
**POMERANTZ HAUDEK BLOCK**
  **GROSSMAN & GROSS LLP**
100 Park Avenue
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

Patrick V. Dahlstrom (PD-5328)
**POMERANTZ HAUDEK BLOCK**
  **GROSSMAN & GROSS LLP**
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

**Attorneys for James B. Balaban**

| | |
|---|---|
| ISAAC FISHMAN, Custodian for the IBF Foundation, on Behalf of itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., WU RUI LIN, WU ZHI-YANG, ALBERT LEUNG, SONNY KWOK WING HUNG, ZE YUN MU, YI HONG ZHANG, and GROBSTEIN HORWATH & CO., LLP<br><br>Defendants. | Civil Action No. 1:07-CV-7312 (DLC) |

| | |
|---|---|
| MICHAEL LOCKE, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-against-<br><br>QIAO XING UNIVERSAL TELEPHONE, INC., RUI LIN WU, ALBERT LEUNG, ZHI YANG WU, SONNY KWOK WING HUNG, ZE YUN MU, YI HONG ZHANG, and GROBSTEIN, HORWATH & COMPANY LLP,<br><br>Defendants. | Civil Action No. 1:07-CV-7693 (DLC) |

REUVEN LAPIN, Individually and On Behalf
of All Others Similarly Situated,

Civil Action No. 1:07-CV-7829 (DLC)

Plaintiff,

-against-

QIAO XING UNIVERSAL TELEPHONE,
INC., RUI LIN WU, and ALBERT LEUNG,

Defendants.

Proposed Lead Plaintiff James B. Baladan ("Movant") respectfully submits this

memorandum of law in support his motion for an Order:

Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange

Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     appointing James B. Baladan as Lead Plaintiff for the Class of

shareholders who purchased or sold call options and purchased or sold put options on the

common stock of Qiao Xing Universal Telephone, Inc. during the Class Period of June 30, 2004

through July 16, 2007[1] and who were damaged thereby, and

(b)     approving Lead Plaintiff's selection of Pomerantz Haudek Block

Grossman & Gross LLP as Lead Counsel for the Class.

## BACKGROUND

On August 9, 2007, the first of five complaints against Qiao Xing was filed in the

---

[1] Excluded from the Class are defendants; members of the individual defendants'
immediate family; officers, directors, subsidiaries or affiliates of the defendants; any entity
in which any excluded person has a controlling interest; and legal representatives, heirs,
successors or assigns of any of the foregoing.

2

Southern District of New York (the "Related Actions"). Three of the class action complaints[2], alleging federal securities violations on behalf of all public investors who purchased or otherwise acquired Qiao Xing Universal Telephone, Inc. ("Qiao Xing" or the "Company") securities from June 30, 2004 through July 16, 2007, both dates inclusive, (the "Class Period"). A fourth class action complaint is on behalf of persons who acquired the securities of Qiao Xing during the class period October 31, 2006 through and including July 16, 2007.[3] The last class action complaint is on behalf of purchasers of the Qiao Xing's securities between June 20, 2006 and July 16, 2007, inclusive.[4]

Specifically, during the Class Period, defendants touted itself to the investing public as a company with growing net sales and net income that reported its financial results in accordance with generally accepted accounting principles ("GAAP"). In fact, however, the Company's financial results were materially misstated and were not prepared in accordance with GAAP, and the Company's internal controls over financial reporting were hopelessly defective.

On July 17, 2007, before the opening bell, Qiao Xing disclosed that in the process of auditing the Company's financial statements, it identified certain misstatements that were made in the years between 2003 and 2005. Moreover, the Company disclosed in its annual report on Form 20-F that the Company (1) improperly accounted for the fair value of certain assets and liabilities assumed through certain acquisitions; (2) improperly reported certain sales revenue and

---

[2] *Mally v. Qiao Xing Universal Telephone, Inc. et al.*, No. 07-CV-7097 (DLC), *Pfeiffer v. Qiao Xing Universal Telephone, Inc. et al.*, No. 07-CV-7252 (DLC); and *Lapin v. Qiao Xing Universal Telephone Inc. et al.*, No. 07-CV-7829 (DLC).

[3] *Fishman v. Qiao Xing Universal Telephone, Inc. et al.*, No. 07-CV-7312 (DLC).

[4] *Locke v. Qiao Xing Universal Telephone, Inc. et a.*, No. 07-CV-7693 (DLC).

costs of goods sold under EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net

as an Agent"; and (3) recognized losses in excess of the original guaranteed return on an equity

investment in a 49%-owned equity. Further, Qiao Xing overstated its reported net income for the

years ended December 31, 2005 and 2004 by 2% and 93%, respectively. For the year ended

December 31, 2003, Xing understated its reported net loss by 210%.

The Company attributed the misstatements in its financial reports to deficiencies in its

system of internal controls over financial reporting, including:

> Insufficient complement of personnel with a level of accounting
> knowledge, experience and training in the application of the
> accounting principles generally accepted in the United States of
> America commensurate with the Company's financial reporting
> requirements;
>
> Ineffective controls to ensure that the appropriateness of valuation
> methods was adequately evaluated and any significant assumptions
> used were properly supported and documented (including those used
> by specialists engaged by the Company), and to ensure that
> presentation and disclosure of fair value measurements were made in
> accordance with the accounting principles generally accepted in the
> United States of America;
>
> Ineffective controls to identify and measure differences between the
> respective tax and financial reporting bases of certain assets and
> liabilities and to determine the applicable income tax rate to ensure
> and that deferred taxes were accurately presented in the Company's
> consolidated financial statements; and
>
> Ineffective controls for revenue recognition with respect to
> recognizing the technical service income in the period when the
> service was rendered and failing to recognize the revenue from the
> sales of co-operative products in accordance with EITF 99-19,
> Reporting Revenue Gross as a Principal versus Net as an Agent on a
> net basis as service fee income.

-4-

In response to these revelations, the price of Qiao Xing stock declined from $13.97 per share at the close of trading on July 16, 2007, to close at $11.04 per share the next day, a decline of approximately 21%, on extremely heavy trading volume.

## ARGUMENT

### I.    THE OPTIONS CLASS SHOULD NOT BE CONSOLIDATED WITH THE RELATED ACTIONS

Generally, consolidation of related cases is proper where, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). *See also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990),;

*Manual for Complex Litigation (3d)* § 20.123, at 13-14 (1995).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. § 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

However, options classes are afforded separate counsel in securities litigation due to the fact that options are not issued by the defendant company. Therefore, some courts have found that unique issues may be raised attacking the Section 10(b) claims of the options holders, which warrants separate counsel. *See Chill v. Greentree Financial Corp.*, 181 F.R.D. 398, 404 (D.

Minn. 1998). Here, in order to protect the interests of the options plaintiffs, an Options Class

should not be consolidated with the Related Actions and a separate lead plaintiff should be

appointed on behalf of an Options Class.

## II.    JAMES B. BALABAN SHOULD BE APPOINTED LEAD PLAINTIFF FOR AN OPTIONS CLASS

Sections 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of Lead

Plaintiffs in class actions brought under the Exchange Act. The PSLRA directs courts to

consider any motion to serve as Lead Plaintiff filed by class members in response to a  published

notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as

practicable after the Court decides any pending motion to consolidate.  15 U.S.C. § 78u-

4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to

serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to
> a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial
> interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal
> Rules of Civil Procedure

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, the Movant satisfies all three of these criteria and thus is entitled to

the presumption that he is the most adequate plaintiff of the Options Class and, therefore, should

be appointed Lead Plaintiff for the Options Class.

### A.    Movant Is Willing to

-6-

### Serve as Class Representative

On August 9, 2007, counsel in the first filed action against the defendants, referenced above as *Mally v. Qiao Xing Universal Telephone, Inc. et al.*, Civil Action No. 1:07 CV-07097 (DLC), caused a notice to be published pursuant to Sections 21D(a)(3)(A)(i) of the PSLRA announcing that a securities class action had been filed against the defendants herein, and advising purchasers of Qiao Xing securities that they had until October 8, 2007, to file a motion to be appointed as Lead Plaintiff. *See* Exhibit A.

The Movant has filed the instant motion pursuant to the Notice and has attached his Certification attesting that he is willing to serve as a Lead Plaintiff for the Options Class and is willing to provide testimony at deposition and trial, if necessary. *See* Exhibit B. Accordingly, the Movant satisfies the first requirement to serve as Lead Plaintiff for the Options Class.

### B.    The Movant Has The Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see In re Donkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997).

As of the time of the filing of this motion, the Movant believes that he has the largest financial interest of anyone in the relief sought by the Options Class. Here, the Movant suffered a loss of approximately $46,200. *See* Exhibit C. Because the Movant possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff for the Options Class.

### C.    Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a prima facie showing that the Movant satisfy the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60, 64 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The Movant fulfills all of the requirements of Rule 23. The Movant shares substantially similar questions of law and fact with the members of the Options Class and their claims are typical of the members of the class. The Movant and all members of the Options Class allege

-8-

that defendants violated the Exchange Act by publicly disseminating a series of false and misleading statements concerning Qiao Xing. Movant, as did all of the member of the Options Class, purchased or sold call options on Qiao Xing common stock or purchased or sold put options on Qiao Xing common stock during the Class Period at prices artificially inflated, maintained, or stabilized by Defendants' misrepresentations and omissions and were damaged thereby. These shared claims also satisfy the requirement that the claims of the representative parties be typical of the claims of the Options Class.

Thus, the close alignment of interests between the Movant and other Class members, as well as the strong desire of the proposed Lead Plaintiff to prosecute these actions on behalf of the Class, provide ample reasons to grant the Movant's motion to serve as Lead Plaintiff of the Options Class.

**D.     Movant Fairly and Adequately Represents the Interests of the Options Class and Are Not Subject to Unique Defenses**

The presumption in favor of appointing the Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

(aa)     will not fairly and adequately protect the interest of the class; or

(bb)     is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

Movant's ability and desire to fairly and adequately represent the Options Class have been discussed in Section C, above. The Movant is not aware of any unique defenses Defendants

-9-

could raise that would render them inadequate to represent the Options Class. Accordingly, the Movant should be appointed Lead Plaintiff for the Options Class.

### III. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Movant has selected the law firm of Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel. The Pomerantz firm is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resume, attached hereto as Exhibit D. As a result of their extensive experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, the Movant respectfully request s the Court issue an Order (a) appointing James B. Balaban as Lead Plaintiff of an Options Class; (b) approving Pomerantz Haudek Block Grossman & Gross LLP as Lead Counsel; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: October 9, 2007

Respectfully submitted,

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**

/s _____

Marc I. Gross (MG- 8496)
Jeremy A. Lieberman (JL-1173)
100 Park Avenue
New York, New York 10017
Telephone:    (212) 661-1100
Facsimile:    (212) 661-8665

**POMERANTZ HAUDEK BLOCK**
**GROSSMAN & GROSS LLP**

Patrick V. Dahlstrom (PD-5328)
One North La Salle Street
Suite 2225
Chicago, Illinois 60602
Telephone:    (312) 377-1181
Facsimile:    (312) 377-1184

**Attorneys for James B. Balaban**

-11-

# Exhibit A

MWR        Kaplan Fox Seeks to Recover Losses for Investors Who Purchased
           Aug 9 2007   19:48

Kaplan Fox Seeks to Recover Losses for Investors Who Purchased
Securities of Qiao Xing Universal Telephone, Inc.

NEW YORK, NY -- (MARKET WIRE) -- 08/09/07 --  Today, Kaplan Fox &
Kilsheimer LLP filed a class action lawsuit in the United States
District Court for the Southern District of New York on behalf of a
class (the "Class") of all persons who purchased securities of Qiao
Xing Universal Telephone, Inc. ("Xing" or the "Company") (NASDAQ:
XING), including purchasers of both Xing common stock and call
options, between June 30, 2004 and July 16, 2007, inclusive and
alleges violations of the federal securities laws by Xing and certain
of its executives.

As alleged in the Complaint, on July 17, 2007, before the opening of
trading, Xing disclosed, among other things, that in connection with
the audit of the financial statements of a Company subsidiary, certain
misstatements for the years 2005, 2004 and 2003 were identified that
were not initially detected through the Company's internal control
over financial reporting and that, as a result, management has decided
to restate the Company's consolidated financial statements for the
years ended December 31, 2005, 2004 and 2003.  As further alleged,
during the Class Period, Xing overstated its reported net income for
the years ended December 31, 2005 and 2004 by 2% and 93%,
respectively, and for the year ended December 31, 2003, Xing
understated its reported net loss by 210%.

The complaint further alleges that on July 17, 2007, the Company
filed its annual report for the year ended December 31, 2006 on Form
20-F with the SEC that stated that the misstatements in the financial
statements resulted from certain deficiencies in the Company's system
of internal controls over financial reporting.

In response to these announcements, on July 17, 2007, the price of
Xing stock declined from $13.97 per share at the close of trading on
July 16, 2007, to close at $11.04 per share, a decline of
approximately 21%, on extremely heavy trading volume.

If you are a member of the proposed Class, you may move the court no
later than October 8, 2007 to serve as a lead plaintiff for the Class.
 You need not seek to become a lead plaintiff in order to share in
any possible recovery.

Plaintiff seeks to recover damages on behalf of the Class and is
represented by Kaplan Fox & Kilsheimer LLP.  Our firm, with offices
in New York, San Francisco, Los Angeles, Chicago and New Jersey, has
many years of experience in prosecuting investor class actions and
actions involving financial fraud.  For more information about Kaplan

Copyright (c) 2007

MWR          Kaplan Fox Seeks to Recover Losses for Investors Who Purchased
             Aug 9 2007  19:48

Fox & Kilsheimer LLP, or to review a copy of the complaint filed in
this action, you may visit our website at www.kaplanfox.com.


If you have any questions about this Notice, the action, your rights or
your interests, please e-mail us at mail@kaplanfox.com or contact:

Frederic S. Fox
Joel B. Strauss
Jeffrey P. Campisi
KAPLAN FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
(800) 290-1952
(212) 687-1980
Fax: (212) 687-7714
E-mail address: mail@kaplanfox.com

Laurence D. King
KAPLAN FOX & KILSHEIMER LLP
555 Montgomery Street, Suite 1501
San Francisco, CA 94111
(415) 772-4700
Fax: (415) 772-4707
E-mail address: mail@kaplanfox.com
-0- Aug/09/2007 23:48 GMT

Copyright (c) 2007

# Exhibit B

## CERTIFICATION OF PURSUANT
## TO FEDERAL SECURITIES LAWS

1.    I,   James B. Balaban  , make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934 and Section 27(a)(2) of the Securities Act of 1933, as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed the Complaint against Qiao Xing Universal Telephone ("Qiao Xing" or the "Company"), and authorize the firm of Pomerantz Haudek Block Grossman & Gross LLP (the "Pomerantz Firm") to move on my behalf for appointment as lead plaintiff.

3.    I did not purchase Qiao Xing securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934 or the Securities Act of 1933.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased Qiao Xing during the class period of June 20, 2004 through July 16, 2007, inclusive, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action and that the Pomerantz Firm may exercise its discretion in determining whether to move on my behalf for appointment as lead plaintiff.

5.    To the best of my current knowledge, the attached sheet lists all of my transactions in Qiao Xing securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except the following:

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty or perjury that the foregoing is true and correct.


Executed____ **October 3, 2007,**    at    _____**Houston, Texas**_____
            **(Date)**                            **(City, State)**

                                        _____
                                                **(Signature)**

                                        _____**James Bryce Balaban**_____
                                                **(Type or Print Name)**

**QIAO XING UNIVERSAL TEL INC**

Balaban, James B

| Trade Date | Sec | Trans | Shs/K | Price |
|------------|-----|-------|-------|-------|
| 10/27/2006 | QAECB | Pur | 50 | $5.9000 |
| 11/08/2006 | QAECB | Pur | 20 | $5.7000 |
| 11/09/2006 | QAECB | Pur | 20 | $5.5000 |
| 11/16/2006 | LYQAB | Pur | 5 | $6.0000 |
| 11/16/2006 | LYQAB | Pur | 20 | $6.1000 |
| 12/01/2006 | LYQAB | Pur | 20 | $5.5000 |
| 12/18/2006 | STK | Pur | 2,000 | $12.2300 |
| 12/26/2006 | STK | Sld | 2,000 | $14.0000 |
| 12/27/2006 | LYQAB | Pur | 30 | $5.5000 |
| 02/07/2007 | QAECB | Sld | 90 | $7.2000 |
| 02/07/2007 | LYQAB | Sld | 75 | $8.0000 |
| 02/12/2007 | LYQAB | Pur | 145 | $8.8000 |
| 02/27/2007 | LYQAB | Pur | 10 | $7.8000 |
| 03/07/2007 | LYQAB | Pur | 10 | $7.0000 |

# Exhibit C

**QIAO XING UNIVERSAL TEL INC**
**CLASS PERIOD: JUNE 30 2004 through JULY 16 2007**

10/09/2007vk

81-Day* Mean Price $9.7728

| Plaintiff | Purchase Date | | Shs/K | Price | Amount | Sales Date | | Shs/K | Price | Amount | Shares Held | Estimated Value | Estimated Gain(Loss) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Balaban, James B | | | | | | | | | | | | | |
| Calls 03/08 $10 | 10/27/2006 | CB | 50 | $5.9000 | $29,500 | | | | | | | | |
| | 11/08/2006 | CB | 20 | $5.7000 | $11,400 | | | | | | | | |
| | 11/09/2006 | CB | 20 | $5.5000 | $11,000 | 02/07/2007 | CB | 90 | $7.2000 | $64,800 | 0 | | $12,900 |
| | | | 90 | | $51,900 | | | | | | | | |
| Calls 01/10 $10 | 11/16/2006 | AB | 20 | $6.1000 | $12,200 | | | | | | | | |
| | 11/16/2006 | AB | 5 | $6.0000 | $3,000 | | | | | | | | |
| | 12/01/2006 | AB | 20 | $5.5000 | $11,000 | | | | | | | | |
| | 12/27/2006 | AB | 30 | $5.5000 | $16,500 | 02/07/2007 | AB | 75 | $8.0000 | $60,000 | 0 | | $17,300 |
| | | | 75 | | $42,700 | | | | | | | | |
| Calls 01/10 $10 | 02/12/2007 | AB | 145 | $8.8000 | $127,600 | | | | | | | | |
| | 02/27/2007 | A3 | 10 | $7.8000 | $7,800 | | | | | | | | |
| | 03/07/2007 | AB | 10 | $7.0000 | $7,000 | | | | | | 165 | $66,000 | ($76,400) |
| | | | 165 | | $142,400 | | | | | | | | |
| Total Options | | | 330 | | $237,000 | | | 165 | | $124,800 | 165 | $66,000 | ($46,200) |

**Notes:**
Calls 01/10 $10 - 165K open - Last price as of 10/05/2007 - $4.00

* Avg of Stk Closing Prices July 17 - Oct 05

# Exhibit D

## POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP

Pomerantz Haudek Block Grossman & Gross LLP (the "Pomerantz Firm" or "Firm") is nationally known for its class actions on behalf of investors injured by securities fraud, as well as its antitrust, shareholder derivative, consumer, health care and ERISA litigation practice. We continue the proud tradition established over seventy years ago by the firm's founder, Abraham L. Pomerantz, known as the dean of the class action bar and one of the "pioneers who developed the class action/derivative action field."[1]  The Firm has won settlements and judgments on behalf of its clients aggregating many hundreds of millions of dollars. Our success has been recognized in an analysis by Institutional Shareholder Services which ranked the Pomerantz Firm third in the country in 2005 for the highest average settlement amount achieved on behalf of clients.[2]

The Pomerantz Firm takes pride in providing high quality and personalized client service. It has a long tradition of successfully representing individual investors as well as major institutional, financial and associational clients. It has the financial and legal resources necessary to represent clients successfully against corporations defended by Wall Street's most powerful law firms, and is of the optimal size to offer each client undivided attention. Moreover, the Firm has maintained a nationally renowned reputation, and its lawyers' excellence has been recognized by courts around the country.

## A BROAD RANGE OF EXPERIENCE WITH
## AN ANCHOR IN SECURITIES CLASS ACTIONS

Focusing on the field of securities class actions, the Pomerantz Firm has successfully attacked the fraudulent activities of large corporations on behalf of victimized shareholders.

---

[1] *New York Law Journal*, Aug. 1, 1983.

[2] Securities Class Action Services 50 for 2005.

Pomerantz is led by senior partner Stanley M. Grossman, a nationally prominent securities litigator, who is the former president of the National Association of Securities and Commercial Law Attorneys ("NASCAT"). He has been invited to testify before various congressional committees concerning the securities laws and related pending legislation. Mr. Grossman practices with well-respected and experienced partners, all of whom also specialize in complex class litigation, as well as dedicated and knowledgeable associates and legal assistants.

Presently, the Firm serves as lead or co-lead counsel in numerous major securities fraud class actions and price fixing and other antitrust class actions, health care class actions, and also derivative actions.

Brooklyn Law School sponsors the Abraham L. Pomerantz Lecture Series, which focuses on issues pertinent to shareholder rights.

THE POMERANTZ FIRM'S MAJOR PRACTICE AREAS ARE:

□ **Securities Litigation:** The Firm is nationally recognized as a premier securities class action litigation firm. Such actions typically concern securities whose price has been artificially inflated due to misleading statements or omissions.

□ **Antitrust Litigation:** The Firm has a very active antitrust practice. These cases concern a variety of wrongful business practices in restraint of competition including price-fixing, attempted monopolization, and customer allocation. In such cases, businesses and/or individuals have been injured as a result of conduct which is anti-competitive in nature.

□ **Shareholder Derivative Actions:** In these cases, where suit is brought by a shareholder on behalf of a company to recover for losses sustained by the misconduct of corporate insiders or other parties, the firm has played a substantial leadership role.

□ **HMO and ERISA Litigation:** The Firm has been at the fore-front in developing and prosecuting class actions designed to

2

protect both patients and doctors from the abuses of managed care.

◻ **Consumer Litigation:** The Firm has also brought a number of important consumer protection, deceptive practices and automobile defect cases on behalf of our clients.

## SIGNIFICANT VICTORIES BY THE POMERANTZ FIRM

The Pomerantz Firm has had the privilege of serving as lead or co-lead counsel in some of the more prestigious class action and derivative litigations of the past 25 years. Below are some examples of its successes.

In *In re Salomon Analysts AT&T Litig.* (S.D.N.Y.), we recently recovered $74.75 million for the class in a securities fraud action against Citigroup, its CEO Sanford Weil, and its now infamous telecommunications analyst Jack Grubman. .

In *In re Charter Communications Securities Litigation*, the Pomerantz Firm, as sole lead counsel, recently reached a settlement with Charter and several of its officers for $146.25 million in cash and securities in a complex accounting manipulation case relating to Charter's alleged inflation of its customer count and operating results. As part of the settlement, Charter has additionally agreed to enact several substantive corporate governance measures. The settlement was approved by the Court in June 2005.

In *In re Livent Noteholders Securities Litigation*, the Pomerantz Firm, as co-lead counsel, was recently granted summary judgment against defendants Garth Drabinsky and Myron Gottlieb, who orchestrated a massive accounting fraud at Livent. Drabinsky and Gottlieb were ordered by the Court to pay over $23 million in damages. Together with the previous settlements in this case, the total damages awarded by the Court now exceed $40 million.

In *In re Elan Corporation, plc*, the Pomerantz Firm, as co-lead counsel, recently reached a settlement with the Irish-based pharmaceutical company for $75 million in cash. The complaint asserted accounting and disclosure claims on behalf of investors for the period February 7, 2000 through July 1, 2002. The settlement is significant, particularly in light of a recommendation by the Magistrate Judge that a substantial portion of these claims be dismissed. The settlement was also achieved despite the fact that Elan has been losing money and has a substantial debt load. The recovery represents one of the largest ever achieved against a foreign corporation.

3

In *In re Safety-Kleen Corp. Stockholders Litigation*, the Pomerantz Firm, as co-lead counsel, has obtained settlements of $54.5 million from the Company's outside auditor and numerous other defendants in a complicated accounting manipulation case.

In *In re First Executive Corporation Securities Litigation*, the Pomerantz Firm, as sole lead counsel achieved settlements worth $102 million for the class and exposed a massive securities fraud arising out of the Michael Milken debacle.

In *In re Methionine Antitrust Litigation*, the Pomerantz Firm, as co-lead counsel, obtained a $107 million settlement in a complex antitrust class action against manufacturers of methionine who were charged with fixing the price of this product during a fifteen year period.

In *In re Salomon Brothers Treasury Litigation*, the Pomerantz Firm went head to head with numerous top-line corporate defense firms and eventually achieved a $100 million settlement for the class in a complicated antitrust and securities fraud case.

In *Snyder v. Nationwide Insurance Co.*, a "vanishing premium" life insurance case, the Pomerantz Firm served as co-lead counsel. This action was settled for benefits totalling $100 million on behalf of 650,000 policyholders.

In *In re Sorbates Direct Purchaser Antitrust Litigation*, the Pomerantz Firm served as member of an Executive Committee of Plaintiffs' Counsel and helped achieve settlements of over $80 million in a major antitrust case.

In *In re National Health Laboratories, Inc. Securities*, the Pomerantz Firm, as co-lead counsel, succeeded in obtaining a $64 million recovery arising out of one of the largest ever medicare frauds.

In *Mardean Duckworth v. Country Life Insurance Co.*, the Pomerantz Firm, as co-lead counsel, helped obtain a $45 million settlement in a securities fraud action.

In *In re Boardwalk Marketplace Securities Litigation*, the Pomerantz Firm, serving as lead counsel, obtained a benefit of over $66 million — Including a $16 million cash recovery plus a reduction in class members' indebtedness on promissory notes of over $50 million.

In *In re Summit Metals, Inc.*, the Pomerantz Firm, as sole lead counsel, obtained a $43 million judgment and required turn over of the stock of two corporations after vigorously pursuing derivative claims against a defendant who had tried to conceal his control of assets by creating a maze of shell companies.

4

## WHAT COURTS HAVE SAID ABOUT THE POMERANTZ FIRM

Courts have consistently acknowledged the ability of the Pomerantz Firm to vigorously pursue the claims of class members.

In *Snyder v. Nationwide Insurance Co.*, where as co-lead counsel, the Pomerantz Firm helped recover a settlement valued at $100 million for defrauded life insurance policy customers, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

In *Charter Communication Securities Litigation*, where the Firm obtained a $146.25 million recovery, the Court commended Pomerantz for the "vigor" of its prosecution, which resulted in "an excellent" recovery in a case, "where the risk of obtaining a significantly smaller recovery, if any, was substantial." In *Mercury Savings and Loan* commended the Firm for the "absolutely extraordinary job in this litigation." In the *Boardwalk Marketplace Securities Litigation*, Judge Eginton described the Firm's services as "exemplary," commended it for its "usual fine job of lawyering...[in] an extremely complex matter," concluding that the case was "very well-handled and managed." Judge Broderick observed in *Nodar v. Weksel*, "that the services rendered [by the Pomerantz firm] were excellent services from the point of view of the class represented, [and] the result was an excellent result . . . ." Judge Goettel praised the Firm in *Klein v. A.G. Becker Paribas, Inc.* for providing "excellent . . . absolutely top-drawer representation for the class, particularly in

light of the vigorous defense offered by the defense firm." In the *Digital Securities Litigation*, Judge

Young complimented the Firm for its "[v]ery fine lawyering."

In *In re Wiring Devices Antitrust Litigation*, where the Pomerantz Firm was again

lead counsel, then Chief Judge Jack B. Weinstein stated:

> Counsel for the plaintiffs I think did an excellent job . . . . They are
> outstanding and skillful.    The litigation was and is extremely
> complex.    They assumed a great deal of responsibility.    They
> recovered a very large amount given the possibility of no recovery
> here which was in my opinion substantial.

In *Rauch v. Bilzerian*, the Court referred to the partners from the Pomerantz Firm who

had litigated the case as "exceptionally competent counsel," and as having provided "top drawer,

topflight [representation], certainly as good as I've seen in my stay on this court."

In *Steinberg v. Nationwide Mutual Insurance Co.*, Judge Spatt, in granting class

certification and appointing the Pomerantz Firm as class counsel, observed: "The Pomerantz firm

has a strong reputation as class counsel and has demonstrated its competence to serve as class

counsel in this motion for class certification."    Similarly, in certifying the class in *DeMarco v.*

*Robertson Stephens,* Judge Lynch stated that the Pomerantz Firm had "ably and zealously

represented the interests of the class."

In December 2005, in appointing the Pomerantz Firm as sole lead counsel in *In re*

*American Italian Pasta Co. Sec. Litig.*, the district court judge stated: "Pomerantz Haudek has

significant experience (and has been extremely effective) litigating securities class actions, employs

several highly qualified attorneys, and possesses ample resources to effectively manage the class

litigation and protect the class's interests."

6

## BIOGRAPHIES OF POMERANTZ'S LAWYERS

Brief biographies of the Firm's lawyers follow below:

### ROBERT J. AXELROD

Robert J. Axelrod is a partner at Pomerantz. Mr. Axelrod practices securities, antitrust, and insurance litigation. As a member of the Firm's insurance practice group, Mr. Axelrod currently is prosecuting actions on behalf of clients including the American Medical Association, the American Dental Association, and the Medical Society of the State of New York, against such insurers as United Healthcare Corporation, CIGNA, Aetna, Oxford, Health Net, Inc., and Nationwide, among others. Mr. Axelrod was on the successful trial team in the action against American Medical Security. Additional healthcare cases that Mr. Axelrod has litigated include *American Medical Association v. United Healthcare Corporation, American Dental Association v. Aetna, Inc.,* and *Wachtel v. Health Net Inc.* He has been involved in the prosecution of numerous securities and antitrust actions, including *In re Nasdaq Market Makers Antitrust Litigation* ($1.02 billion settlement), and *In re Flat Glass Antitrust Litigation* ($121 million settlement).

Mr. Axelrod's public pension fund and union trustee education presentations include "Will Your Benefits Be There When Your Beneficiaries Retire," "Protecting Yourself and Your Pension Board from Financial and Non-Financial Risks, "Corporate Governance: Ensuring Investor Confidence," and "Improving Board Governance: Policies and Procedures." He is a member of the National Association of Public Pension Attorneys (NAPPA), International Union of Police Associations (IUPA), and the Louisiana Trustee Education Council (LATEC).

7

Mr. Axelrod serves as a member of the Class Action Committee of the New York State Bar Association. He is a member of the Temple University College of Liberal Arts Alumni Board, and serves as a trustee and General Counsel of Temple Beth El in Huntington, New York.

Mr. Axelrod is admitted to practice in United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second and Third Circuits.

## **DANIEL L. BERGER**

Daniel L. Berger graduated from Haverford College in 1976, and Columbia Law School in 1979 where he was a Stone Scholar.

Mr. Berger joined the Firm as a partner in September 2006. Previously, Mr. Berger was a senior partner of Bernstein Litowitz Berger & Grossmann, where he litigated complex securities and discrimination class actions for 22 years. While at that firm, Mr. Berger tried two 10b-5 securities class actions to jury verdicts, among the very few such cases ever tried. He served as principal lead counsel in many of the largest securities litigations in history, achieving successful recoveries for classes of investors in cases including *In re Cendant Corp. Sec. Litig.*, (D. N.J.) ($3.3 Billion); *In re Lucent Technologies, Inc. Sec. Litig.* (D. N.J.) ($675 Million); *In re Bristol-Myers Squibb Sec. Litig.*, (S.D.N.Y.) ($300 Million); *In re Daimler Chrysler A.G. Sec. Litig.*, (D. Del.) ($300 Million); *In re Conseco, Inc. Sec. Litig.*, (S.D. Ind.) ($120 Million); *In re Symbol Technologies Sec. Litig.*, (E.D.N.Y.) ($139 Million); and *In re OM Group Sec. Litig.*, (N.D. Ohio) ($92 Million). Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott*,

8

250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990).

In addition, Mr. Berger was lead class counsel in several important discrimination class actions, in

particular *Roberts v. Texaco, Inc.* (S.D.N.Y.), where he represented African-American employees

of Texaco and achieved the largest settlement ($175 Million) of a race discrimination class action.

Mr. Berger's work has received praise from the many federal courts where he has

appeared. For example, in commenting on the settlement achieved in *McCall v. Scott*, one of the

most significant recoveries in a derivative action, the United States District Court for the Middle

District of Tennessee wrote "[the settlement] confers an exceptional benefit upon the company and

the shareholders by way of the corporate governance plan....Counsel's excellent qualifications and

reputations are well documented in the record, and they have litigated this complex case adeptly and

tenaciously throughout the six years it has been pending. They assumed an enormous risk and have

shown great patience by taking this case on a contingent basis, and despite an early setback they have

persevered and brought about not only a large cash settlement but sweeping corporate reforms that

may be invaluable to the beneficiaries."

In addition, Mr. Berger's work as lead trial counsel in *In re ICN/Viratek Sec. Litig.*

was noted by the United States District Court for the Southern District of New York, which said

"plaintiffs' counsel did a superb job here on behalf of the class. . . This was a very hard fought case.

You had very able, superb opponents, and they put you to your task. . . The trial work was beautifully

done and I believe very efficiently done. . ."

Mr. Berger was a member of the Board of Managers of Haverford College from

2000-2003 and currently serves on the Board of Managers of Columbia Law School. He served on

9

the Board of inMotion, Inc., a non-profit organization providing legal services to victims of domestic violence, for six years, and currently is a member of the Board of Madison Square Park Association.

Mr. Berger is admitted to the bar of the State of New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Third, Fifth, Sixth, Seventh, Ninth and Tenth Circuits.

## MICHAEL M. BUCHMAN

Michael Buchman joined the Firm as a partner in 2007. Mr. Buchman has litigated complex antitrust and consumer protection class actions for over ten years. Mr. Buchman served as an Assistant Attorney General in the Antitrust Bureau of the New York State Attorney General's Office. He joined the New York State Attorney General's Office after receiving an advanced degree in international antitrust and trade law from Fordham University School of Law where he focused on European Union competition law.

Mr. Buchman has extensive experience litigating complex commercial matters in federal and state courts across the country. Over the past seven years, he has spearheaded an effort to challenge anticompetitive conduct by pharmaceutical companies designed to artificially inflate the price of brand name prescription drugs. These cases include "generic drug" litigations which focus on: (i) payments by brand name companies to generic competitors to prevent or delay generic competition; (ii) brand name companies fraudulent obtainment of patents from the Patent and Trademark Office in order to extend a monopoly; or (iii) the commencement of "sham litigation" to foreclose or delay generic entry into a market.

10

He has served as Co-Lead Counsel in a number of "generic drug" cases, including *In re Buspirone Antitrust Litig.*, MDL 1413 (S.D.N.Y.) ($90m setlement); *In re Relafen Antitrust Litig.*, 01-12222-WGY (D. Mass.) ($75m settlement); and *In re Augmentin Antitrust Litig.*, 02 Civ. 445 (E.D. Va. Norfolk Div.). ($29m settlement). Some of the settlements achieved by Mr. Buchman have resulted in substantial "cy pres" monetary awards for well known charitable organizations. For example, in *Augmentin* awards exceeding $100,000 were donated, on a "cy pres" basis, to well known organizations such as St. Jude Children's Research Hospital and Children's Rights of New York. Mr. Buchman's efforts have been acknowledged by courts. Former Chief Judge William G. Young noted in *Relafen* "[t]his proposed settlement is the result of a great deal of very fine lawyering . . ." Similarly, in *Buspar* Judge John G. Koeltl stated "Let me say that the lawyers in this case have done a stupendous job. They really have." His "tenacious and skillful" work has also been recognized outside of the "generic drug" cases by Judge Lewis A. Kaplan of the Southern District of New York in an international antitrust class action brought on behalf of foreign purchasers and sellers of works of art sold at auction by Christie's and Sotheby's which resulted in a $40 million settlement.

Mr. Buchman was actively involved in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023 (S.D.N.Y.) ($1.027b) and *In re Visa Check/Mastermoney Antitrust Litigation*, CV 96-5238 (E.D.N.Y.) ($3b) which are two of the largest antitrust settlements in the over one hundred year history of the Sherman Act.

He has frequently spoken on antitrust and consumer protection class action issues. In 2002, he was interviewed by and appeared on the *CBS Evening News* in connection with generic drug litigations. That same year, he presented at the Practicing Law Institute's 10th Annual Consumer

11

Financial Services Litigation on Recent Developments In State Unfair Deceptive Acts and Practices Statutes and Private Attorney General Litigation. On February 7, 2007, he spoke at the 4th National In-House Counsel Conference on Managing Complex Litigation on class certification issues and presented a mock class certification argument. Mr. Buchman has also authored or co-authored articles on procedure or competition law including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation entitled *Dealer Termination in New York* dated June 1,1998 and *What's in a Name – the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc.,* Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

He is admitted to practice in the states of Connecticut and New York and the following federal courts: United States Supreme Court, United States Court of Appeals for the Second Circuit, United States District Courts for the Districts of Arizona and Connecticut, United States District Courts for the Southern and Eastern Districts of New York and the United States Court of International Trade.

## PATRICK V. DAHLSTROM

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor-in-Chief of the Administrative Law Journal, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic.

Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge. He joined the Pomerantz Firm as an associate in the Fall of 1991 and became a partner in January 1996. Mr. Dahlstrom is the resident partner in the Pomerantz Firm's Chicago Office.

Recently, in *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), Mr. Dahlstrom obtained the first class certification in a federal securities case involving fraud by analysts. Some examples of other notable litigations by Mr. Dahlstrom are *In re Safety-Kleen Stockholders Securities Litigation*, 3:00-736-17 (D. S.C.) (as co-lead counsel, Firm obtained $54.5 million settlement); *In re Livent, Inc. Noteholders Securities Litigation*, 98 Civ. 7161 (VM) (S.D.N.Y.) (Firm, as sole-lead, obtained $17 million settlement, plus $23 million judgment); and *In re Woolworth Corporation Securities Class Action Litigation*, 94 Civ. 2217 (RO) (S.D.N.Y.7) (Firm, as co-lead counsel, secured a $20 million). Mr. Dahlstrom was also co-Class Counsel and a member of the trial team in *In re ICN/Viratek Securities Litigation*, 87 Civ. 4296 (KMW) (S.D.N.Y.).

Mr. Dahlstrom is admitted to practice in the state courts of New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of Illinois, the Northern District of Indiana, the Eastern District of Wisconsin, the District of Colorado, the Western District of Pennsylvania, and the United States Courts of Appeals for the Fourth, Sixth, Seventh and Eight Circuits.

13

## MARC I. GROSS

Marc I. Gross has been associated with the Firm since 1976 and became a partner in 1984. He graduated from New York University Law School in 1976 and received his undergraduate degree from Columbia University in 1973.

Mr. Gross has extensive experience in litigating class (securities, antitrust and consumer) and derivative actions. He is sole or co-lead counsel in many of the Firm's major pending cases, including class actions involving fraud by analysts, and has won rulings highly favorable to plaintiffs. *See e.g. Salomon Analyst AT&T Litig.*, 350 F. Supp. 2d 455 (S.D.N.Y. 2004) (GEL).

Mr. Gross has obtained numerous large recoveries. For example, he was sole Lead Counsel in *In re Charter Communications Inc. Sec. Litig.*, MDL No. 1506 (E.D. Mo.), a case where, as described, the Court lauded the Firm's efforts in obtaining a $146.25 million settlement.

He was also co-lead counsel in *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633 (N.Y. Supreme Court, Onondaga County), which resulted in a settlement valued at $100 million for defrauded life insurance policy customers. In approving the settlement, Judge Tormey stated:

> The Court approves the settlement in all respects. It is so ordered, and I compliment you all, not only the manner in which you arrived at this result today, but the time that you -- in which it was done. And I think you all did a very, very good job for all the people. You made attorneys look good. I thank you very much. It was nice working with you all.

Other examples of cases where Mr. Gross served as co-lead counsel are: *In re Elan Corp. Sec. Litig.* (S.D.N.Y.) ($75 million recovery); *In re Salomon Analysts AT&T Litig.* ($74.75 million settlement) (S.D.N.Y.); *In re National Health Laboratories, Inc. Securities*, CV-92-1949-H

14

(CM) (S.D.Cal. 1995) ($64 million recovery); *Mardean Duckworth v. Country Life Insurance Co.*,

No. 98 CH 01046 (C.D. Ill. 2000) ($45 million settlement); and in *Frank v. Paul* (Centrust Savings

Bank Securities Litigation), 93 Civ. 1453 (TCP) (E.D.N.Y. 1996) (over $20 million recovery).

In addition, Mr. Gross was the attorney in charge of *Texas International Securities

Litigation*, where in granting class certification the Court stated:

> The performance of plaintiffs' counsel thus far leaves the Court with
> no doubt that plaintiffs' claims will be vigorously and satisfactorily
> prosecuted throughout the course of this litigation.

In the course of approving the subsequent settlement of the case, the Court added:

> I would like to compliment all the parties and attorneys in this case.
> . . . You have all worked together better than I think any case I've had
> that involved these extensive issues and parties and potential
> problems. And I for one appreciate it. And I think it shows certainly
> a great deal of professionalism on all your part.

Mr. Gross is currently a Vice President of the Institute of Law and Economic Policy

("ILEP"), a not-for profit organization devoted to promoting academic research and dialogue in

securities law issues and litigation. At the 2006 ILEP Conference, Mr. Gross was a commentator

on a panel discussing Sarbanes-Oxley governance issues. Mr. Gross has also served as Chairman of

Neighbors Helping Neighbors, a not-for- profit housing group based in Brooklyn, New York that is

affiliated with the Neighborhood Reinvestment Corporation.

Mr. Gross is admitted to the bar of the State of New York and the United States

District Courts for the Southern and Eastern Districts of New York.

## STANLEY M. GROSSMAN

Stanley M. Grossman, the senior partner of the Pomerantz Firm, was featured in the New York Law Journal article: "*Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants,*" *New York Law Journal*, August 1, 1983. He has been with the Pomerantz Firm since February 1969, and has been a member of the Firm since 1976. Throughout this period he has mainly represented plaintiffs in securities and antitrust class actions. He has lectured to the profession on various occasions under the auspices of the Southern Federal Securities Institute, Columbia University School of Law, Duke University Law School, University of Arizona Law School, Brooklyn Law School, ALI-ABA, PLI, the New York State Bar Association, and the Association of the Bar of the City of New York. Mr. Grossman is the author of "*Commentary: The Social Meaning of Shareholder Suits,*" 65 BROOKLYN LAW REV. (1999), among other articles.

Mr. Grossman has been active in numerous professional organizations. He is the former president of the National Association of Securities Attorneys ("NASCAT") -- an organization of attorneys specializing in securities class action litigation. During his tenure, he represented NASCAT in meetings with the Chairman of the Securities and Exchange Commission, members of Congress and of the Executive Branch in furnishing input and commentary on legislation which became the Private Securities Litigation Reform Act of 1995 ("PSLRA").

In the summer of 1998, at the invitation of Chairman of the Judiciary Committee Henry Hyde, Mr. Grossman testified before Congress on proposed legislation dealing with "federalization of state class actions." Subsequently, Mr. Grossman was asked to participate with Congressional counsel in drafting proposed legislation.

In February, 2002, Mr. Grossman was requested to brief the Democratic caucus of the House Committee on Financial Services on issues pertaining to proposed legislation following the Enron debacle.

Mr. Grossman served on New York State Comptroller Carl McCall's Advisory Committee for the New York Stock Exchange Task Force on corporate governance. He also serves as a vice president and adviser of the Institute for Law and Economic Policy ("ILEP"), which is a public policy research and educational foundation established to preserve, study and enhance access to the civil justice system by all consumers.

Mr. Grossman is also a member of the United States Advisory Board of the Institute for Consumer Antitrust Studies at Loyola University Chicago. Additionally, he is on the Advisory Committee for the Abraham L. Pomerantz Lectures at Brooklyn Law School. Mr. Grossman is currently a member of the Judiciary Committee of the New York City Bar Association. Previously he served on the Association's Committee on Professional and Judicial Ethics; State Courts of Superior Jurisdiction; and Trade and Antitrust.

Mr. Grossman is actively involved in local and national civic affairs. In June, 1999, he was appointed by the New York City Bar Association to chair a special Blue Ribbon Commission on the future of the City University of New York. Upon the publication of the Commission's Report, the President of the Association described it as "insightful, measured and persuasive . . . a striking example of the very best of what this Association can do."

He is a director of the Lincoln Center Institute for the Arts in Education, as well as a member of the Appleseed Foundation, a national public interest advocacy group. In addition, he

17

is also a member of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Mr. Grossman's law practice is devoted to complex class actions. For example, he was the lead lawyer for plaintiffs and the class *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (RPP)(S.D.N.Y. 1994), where he obtained a $100 million cash recovery for the class. He was also the attorney in charge of the *In re First Executive Corporation Securities Litigation*, CV-89-7135 DT (Kx)(C.D. Cal. 1994), another case where he negotiated a $100 million settlement for the class. Similarly, in *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 CAL (N.D. Cal. 2000), his efforts with his co-counsel resulted in an over $80 million settlement for the class.

Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants over $2 billion obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged on the record the high quality of the legal representation provided by Mr. Grossman to classes of investors. For example, in *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial (Tr. 507):

> *[I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.*

Mr. Grossman has tried other complex litigations involving the securities and other federal and corporate laws.

18

## CHERYL HAMER MACKELL

Cheryl Hamer Mackell joined the Firm in February 2003 to head up its Washington, D.C. office and became a partner in January 2007. She is a 1973 graduate of Columbia University and a 1983 graduate of Lincoln University Law School. She studied tax law at Golden Gate University and holds a Certificate in Journalism from New York University. As a member of the Firm's Institutional Practice Group, Ms. Mackell is part of the trial team in In re American Italian Pasta Co. Sec. Litig., (W.D. Mo. Filed Aug. 12, 2005) and In re Symbol Technologies, Inc. Sec. Litig. (E.D.N.Y. filed Aug. 16, 2005).

Before joining the Pomerantz Firm, Ms. Mackell served as of counsel to nationally known securities class action law firms focusing on plaintiff securities fraud litigation. In private practice for over 20 years, she has litigated, at both the State and Federal levels, Racketeer Influenced and Corrupt Organizations, Continuing Criminal Enterprise, death penalty and civil rights cases. She has authored numerous criminal writs and appeals.

She was an Adjunct Professor at Pace University, Dyson College of Arts and Sciences, Criminal Justice Program and The Graduate School of Public Administration, where she taught Non-Profit Corporate Law, from 1996 to 1998.

Ms. Mackell has served as vice-chair of Freeing the Innocent Imprisoned Committee, chair and vice-chair of the Death Penalty Litigation Committee, Liaison to American Bar Association, and a member of the Nominating Committee of the National Association of Criminal Defense Lawyers and as a Liaison to the American Bar Association. She has also served on numerous non-profit boards of directors including Shelter From the Storm, the Southern California Coalition on Battered Women, and the Native American Preparatory School. She is a member of

19

the American Bar Association's Litigation and Individual Rights Sections, the Corporate, Finance & Securities Law Section of the District of Columbia Bar.

Ms. Mackell has long experience working with Taft-Hartley and public pension funds and works exclusively with institutions on behalf of the Firm. She is a member of the National Association of Public Pension Attorneys and the Association of Benefit Administrators and has served as a member of the AFL-CIO Center for Working Capital's National Advisory Council of Employee Benefit Professionals.

Ms. Mackell is admitted to practice in the State of California, the District of Columbia and the State of New Mexico. She is also admitted to the bars of the United States District Courts for the Northern, Southern, Eastern and Central District of California, the District of New Mexico and the District of Columbia, the United States Courts of Appeals for the Second, Third, Fourth, Seventh, Ninth, Tenth and Eleventh Circuits, and the Supreme Court of the United States.

## D. BRIAN HUFFORD

D. Brian Hufford joined Pomerantz in April 1993 and became a partner in July 1995. After obtaining a Masters of Urban Affairs from Wichita State University in 1982, Mr. Hufford attended the Yale Law School, where he was Notes and Topics Editor for the *Yale Law and Policy Review* and was awarded the Thomas I. Emerson Prize for the Outstanding Legislative Services Project. Graduating from Yale in 1985, Mr. Hufford subsequently spent two years in Washington, D.C. as an Honors Attorney in the United States Department of the Treasury's Honors Law Program. From 1987 until he joined the firm in 1993, he was a litigation associate at Davis Polk & Wardwell,

20

where he worked primarily on securities and class actions. His article *"Deterring Fraud vs. Avoiding the Strike Suit: Reaching An Appropriate Balance,"* was published in 61 *Brooklyn Law Rev.* 593 (Summer 1995).

At the Pomerantz Firm, Mr. Hufford has prosecuted not only a number of securities and antitrust cases, but is also the attorney in charge of the Firm's healthcare and consumer practice. Mr. Hufford successfully argued before the New York Appellate Division in *Batas v. Prudential*, 281 A.D.2d 260, 724 N.Y.S.2d 3 (1st Dep't 2001), in which the court upheld claims that Prudential relied on improper procedures for the determination of medical necessity in its health insurance contracts. Mr. Hufford also successfully argued *Drolet v. Healthsource, Inc.*, 968 F. Supp. 757 (D.N.H. 1997), in which the court upheld the charge that the defendant breached fiduciary duties under ERISA by misrepresenting the financial incentives it paid to physicians to reduce medical expenditures. In addition, Mr. Hufford received a successful decision upholding claims against United Healthcare in *American Medical Association v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309 (S.D.N.Y. Oct. 23, 2002), where plaintiffs claimed that the defendant relied on an improper database for determining "usual, customary and reasonable" fees for the purpose of reimbursing subscribers for services received from out-of-network health care providers. Morever, Mr. Hufford was the partner in charge of *Addison v. American Medical Security*, Case No. CA 001455-AB (Cir. Ct., Palm Beach Cty., Fla.), in which plaintiffs won a two-week bench trial, with the Court finding in March 2002 that the defendant had violated Florida law by, among other things, improperly raising health care premiums based on an individual's health history.

Mr. Hufford has also written and lectured in the area of healthcare litigation. The court in *Orthopaedic Surgery Associates of San Antonio v. Prudential Health Care Plan, Inc.*,

21

quoted extensively an article written by Mr. Hufford for a PLI Seminar, entitled "*Managed Care Litigation: The Role of Providers,*" 1216 PLI/Corp. 487 (Nov. 2000), citing it as "instructive." Moreover, Mr. Hufford recently testified at the New York State AFL-CIO Task Force on Prescription Drugs: First Public Speak Out & Hearing, held on June 17, 2002, in Albany, New York, where he discussed pending antitrust cases against pharmaceutical companies for manipulating the prices of prescription drugs, and he served as a panelist for a forum sponsored by the American Corporate Counsel Association entitled "Considerations in Deciding Whether to Mediate, Arbitrate or Litigate Business Disputes." Further, Mr. Hufford was featured in the book *Net Law: How Lawyers Use the Internet*, by Paul Jacobsen (Jan. 1997), which discusses how he has used the Internet to investigate some of the firm's pending class actions.

In addition to representing numerous individuals serving as class representatives on behalf of the firm, Mr. Hufford has been retained by a number of significant institutions to pursue claims on their behalf, including medical associations (the American Medical Association, the Medical Society of the State of New York, the Missouri State Medical Society and the Pennsylvania Chiropractic Association), unions (New York State United Teachers, the Civil Service Employees Association, the New York State Police Investigators Association and the Organization of NYS Management Confidential Employees), and corporations (General Electric Company, U.S. Trust Company of New York, the CitiGrowth Funds, Hambrecht & Quist Healthcare Investors and Springwell Navigation Corp.), among others.

Mr. Hufford is admitted to the bar of the State of New York and the United States District Courts of the Southern and Eastern Districts of New York.

22

## H. ADAM PRUSSIN

Mr. Prussin joined the Firm as Of Counsel in June, 2000, and became a partner in January 2002. He graduated *cum laude* from Yale College in 1969, and after obtaining a Masters Degree from the University of Michigan in 1971, he received his J.D. degree from Harvard Law School in 1974.

In addition to securities litigation, Mr. Prussin has extensive experience in derivative actions. He has published several articles on the subject of the standards and procedures for obtaining dismissal of shareholder derivative actions, including *"Termination of Derivative Suits Against Directors on Business Judgement Grounds: From Zapata to Aronson,"* 39 The Business Lawyer 1503, 1984; *"Dismissal of Derivative Actions Under the Business Judgement Rule: Zapata One Year Later,"* 38 The Business Lawyer 401, 1983; and *"The Business Judgement Rule and Shareholder Derivative Actions: Viva Zapata?,"* 37 The Business Lawyer 27, 1981.

Mr. Prussin was special litigation counsel in *Summit Metals, Inc. v. Gray*, a derivative action which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. He was also one of the lead lawyers in *In re Livent Noteholders Securities Litigation* Mr. Prussin is co-lead counsel in several of the Firm's pending derivative actions.

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. Mr. Prussin played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

23

Prior to joining Silverman, Harnes in 1994, Mr. Prussin was Of Counsel to Weil, Gotshal & Manges. While there, he represented numerous corporate defendants in shareholder derivative actions and class actions, and also in general commercial, bankruptcy and antitrust disputes.

Mr. Prussin is admitted to the bar of New York, the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

## J. DOUGLAS RICHARDS

J. Douglas Richards joined Pomerantz in March 2007 as a partner specializing in antitrust class actions. Prior to joining Pomerantz, Mr. Richards served for more than two years as Deputy General Counsel of the Commodity Futures Trading Commission, where he supervised more than twenty attorneys in the Office of General Counsel and managed more than 35 appeals in the United States Courts of Appeals. Mr. Richards was responsible for the management of all litigation by and against that federal agency, including numerous cases involving unlawful trading activities on commodity exchanges, and was the recipient of a Special Act or Service Award for his contributions to the agency. Prior to that time he was a litigation partner for more than eight years with O'Sullivan Graev & Karabell (which merged into O'Melveny & Myers in 2002 and became its New York office). While with O'Sullivan he participated in diverse commercial litigation including antitrust cases such as *In re Beer Industry Antitrust Litigation*, 86 CV 2400 (E.D.N.Y.), in which he was a lead trial counsel for defendant the Stroh Brewery Company and successfully obtained a directed verdict for it after a two-week jury trial. Mr. Richards has broad experience with the

24

litigation of antitrust and trade regulation matters at the trial and appellate levels, and from the differing perspectives of plaintiffs and defendants as well as those of regulatory authorities.

Mr. Richards has especially extensive experience in the successful prosecution of antitrust class actions. He was co-lead counsel for the plaintiffs in a class action against Microsoft in New York state court, which resulted in a settlement providing benefits of more than $160 million for New York consumers and needy public schools. He was co-lead counsel in *In re Buspirone Antitrust Litigation*, MDL No. 1410 (S.D.N.Y.), which led to a $90 million settlement and in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job." He was co-lead counsel in *In re Relafen Antitrust Litig.*, No. 01-12239 (D. Mass.), which led to a $75 million settlement and in which presiding Judge Young stated that the settlement was "the result of a great deal of very fine lawyering." He was co-lead counsel for international customers of Christie's and Sotheby's in connection with class action claims against them for price-fixing, in connection with which presiding Judge Kaplan observed that the representation of the plaintiffs had been "tenacious and skillful," and in which a $40 million settlement was achieved for foreign auction house customers. He also made a substantial contribution to the record-setting recovery of more than $3 billion in the antitrust class action against Visa and Mastercard in *In re Visa Check/Mastermoney Antitrust Litig.*, CV-96-5238 (E.D.N.Y.), which is the largest antitrust settlement in the over 100 year history of the Sherman Act. Other prominent class actions in which he has argued dispositive motions and served as lead or co-lead counsel include *In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 363 F. Supp. 2d 514 (E.D.N.Y. 2005), *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D. N.J. 2004), and *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751 (E.D. Pa. 2003).

In his career Mr. Richards has argued more than twenty-five appeals in the federal

and state courts of appeals, including more than a dozen appeals in the Second Circuit. In recent years he has argued appeals on several cutting-edge issues of antitrust law in recent years. In November 2006 he argued to the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, No. 05-1126, which is likely to establish a vital precedent governing pleading requirements for antitrust conspiracy cases. He participated in 2007 in the briefing to the Supreme Court in *Credit Suisse v. Billing*, No. 05-1157, which may lead to a vital precedent concerning the scope of operation of antitrust law in regulated industries. He also has argued such leading appellate cases as *In re Tamoxifen Citrate Antitrust Litig.*, 429 F.3d 370 (2d Cir. 2005), *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004), *Kruman v. Christie's Int'l PLC*, 284 F.3d 384 (2d Cir. 2002), and *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147 (1st Dep't 2004). Aspects of antitrust law in which he has particular expertise include the application of United States antitrust law to events occurring outside the United States, inferences that may be drawn from circumstantial evidence of antitrust conspiracy, relationships between antitrust law and patent or regulatory laws, and application of antitrust law to practices affecting the pricing of brand name and generic drugs.

Mr. Richards also has been a frequent speaker on issues of antitrust law. On Nov. 9, 2006, he was a speaker along with United States District Judge Todd Rakoff, former FTC Commissioner Tom Leary and David Copeland of Kaye Scholer at Federal Bar Council presentation in the Southern District of New York courthouse, titled "Antitrust Issues in Patent Litigation Settlements: the Divergent Views of Federal Courts and Agencies." On Sept. 14, 2006, he was a speaker in Federalist Society presentation at NYU Law School, titled "Does Procedure Dominate Substance? Of Class Actions and Pretrial Motions." On June 21, 2005, he was a speaker, along with United States District Judge Thomas Penfield Jackson, Professor Eleanor Fox of NYU Law School

and Commissioner Jon Leibowitz of the FTC, at the annual symposium of the American Antitrust Institute titled "Thinking Creatively About Antitrust Remedies." He also recently authored *What Makes An Antitrust Class Action Remedy Successful?: A Tale of Two Settlements*, 80 Tulane L. Rev. 621 (2005).

Mr. Richards is admitted to the bar of the State of New York, as well as the United States District Courts for the Northern, Eastern, Southern and Western Districts of New York, the District of Connecticut, all of the Circuits of the United States Courts of Appeals, and the United States Supreme Court.

### SHAHEEN RUSHD

Shaheen Rushd graduated *summa cum laude* from New York Law School in 1981 and received her undergraduate degree from Kalamazoo College in 1977 (*magna cum laude;* elected to Phi Beta Kappa).

Ms. Rushd joined the Firm as an associate in January 1983 and became a partner in July 1991. Previously, Ms. Rushd was a staff attorney at the New York Regional Office of the Federal Trade Commission and served as law clerk to the Honorable Leonard I. Garth, Circuit Court Judge of the United States Court of Appeals for the Third Circuit.

Ms. Rushd specializes in securities and antitrust class actions. She has participated in the litigation of many of the Firm's major cases, including *EBC I, Inc. v. Goldman Sachs & Co.*, No. 601805-02 (Sup. Ct. N.Y.), *Kronfeld v. TWA*, No. 83 Civ. 8641, and *In re Safety-Kleen Corp. Stockholders Litigation*, C.A. No. 3:00-CV-736-17 (D.S.C. 2004). She was also part of the successful trial teams in *Walsh v. Northrop Grumman, et al.* CV-94-5105 (E.D.N.Y.) and *Rauch v.*

*Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J. 1991).

Ms. Rushd was a trustee of Kalamazoo College from 1996 through June 2002. Ms. Rushd also served as an Adjunct Instructor at New York Law School during the 1989 academic year and was a member of the New York City Bar Association's Antitrust and Trade Regulation Committee.

Ms. Rushd is admitted to the bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Eighth and Eleventh Circuits.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh joined the Firm as an associate in April 1998 and became partner in January 2007. Ms. Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

At Pomerantz, Ms. Steven Walsh specializes in securities and corporate governance-related litigation. Ms. Steven Walsh was part of the trial team in *Lewis v. Beall*, a derivative action in California state court that focused on the duties of corporate directors. More recently, in *In re Livent Noteholders' Securities Litigation*, Ms. Steven Walsh was one of the lead attorneys in prosecuting this securities class action against the company's former chief executive officers, and obtained a $36.6 million judgment against these individuals (which was recently affirmed by the

28

Second Circuit). The Pomerantz Firm also obtained settlements totaling over $17 million from other defendants in the case.

Ms. Steven Walsh is also part of the team working on the *EBC I v. Goldman Sachs* case, in which the Pomerantz firm obtained a landmark ruling from the New York Court of Appeals - that underwriters owe certain fiduciary duties to their issuer clients.

Ms. Steven Walsh currently serves as a member of the editorial board for Class Action Reports. In the past, she has served as a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted in New York, and in the United States District Courts for the Eastern and Southern Districts of New York.

### JOSHUA B. SILVERMAN

Joshua B. Silverman joined the Pomerantz Firm in April 2006. He is a 1993 graduate of the University of Michigan, where he received *Phi Beta Kappa* honors, and a 1996 graduate of the University of Michigan Law School.

Prior to joining the Pomerantz Firm, Mr. Silverman was a litigation associate at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies. His practice there focused on complex commercial litigation including class action commodities fraud, civil RICO and antitrust cases. Mr. Silverman also spent two years as a securities trader.

29

Mr. Silverman is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeal for the Seventh and Eighth Circuits.

### JASON S. COWART

Jason S. Cowart graduated *cum laude* from Northwestern University Law School in 1999. While in law school, he won the Moot Court competition and was an editor of the Journal of International Law and Business.

After law school, Mr. Cowart served as a law clerk to United States District Court Judge Richard Enslen. Prior to joining Pomerantz, Mr. Cowart was a litigation associate at Sidley Austin Brown & Wood LLP for over four years. During that time, Mr. Cowart concentrated his practice on complex commercial litigation including antitrust, contract, fraud, and health care-related matters.

Mr. Cowart is the co-author of *State Immunity, Political Accountability and Alden v. Maine*, 75 Notre Dame L. Rev. 1069 (2000).

Mr. Cowart is admitted in New York and Washington, D.C. and in the United States District Courts for the Southern and Eastern Districts of New York, the Western District of Michigan, and the District of Columbia. Mr. Cowart also is admitted to practice before the United States Supreme Court.

### LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar became associated with the Firm in January, 2002, and is practicing in the Chicago office. She graduated from Chicago-Kent College of Law in 1996. Upon

30

her graduation, Ms. Handelman Smollar spent the next 5 years specializing in complex litigation, handling a broad variety of matters.

Ms. Handelman Smollar co-authored an article for the Illinois Institute for Continuing Legal Education (IICLE) entitled "Shareholder Derivative Suits and Stockholder Litigation in Illinois" published in IICLE Chancery and Special Remedies 2004 Practice Handbook.

Ms. Handelman Smollar is admitted in Illinois, the United States District Courts for the Northern District of Illinois and Eastern District of Missouri, and the United States Courts of Appeal for the Seventh and Eighth Circuits.

### R. JAMES HODGSON

Jim Hodgson became associated with the Firm in May 2007. He concentrates on prosecuting securities fraud class action lawsuits.

Mr. Hodgson graduated from the University of Pennsylvania Law School in 2003. While in law school, he served as a judicial intern to the Honorable John F. Keenan, United States District Judge, Southern District of New York. He also served as a Senior Editor of the University of Pennsylvania Law Review and, upon graduation, was recognized with an award for "Exemplary Public Service while at Penn Law School."

Following law school, Mr. Hodgson was associated with the law firm of Fried, Frank, Harris, Shriver & Jacobson LLP for nearly four years. At Fried, Frank, Mr. Hodgson focused his practice on general commercial and securities litigation, regulatory defense, copyright enforcement, and white-collar criminal defense. In addition, he has tried (on a pro bono basis) numerous asylum law cases on behalf of refugees seeking asylum protection in the United States.

31

Mr. Hodgson is admitted to practice in New York. He is a member of American Bar Association, New York State Bar Association, and Association of the Bar of the City of New York.

### JEREMY A. LIEBERMAN

Jeremy A. Lieberman graduated from Fordham University School of Law in 2002. While in law school, Mr. Lieberman served as a staff member of the Fordham Urban Law Journal.

Upon graduation, Mr. Lieberman began his career at Chadbourne & Parke LLP as a litigation associate, where he specialized in complex commercial litigation and products liability.

Mr. Lieberman became associated with the firm in August 2004. He is a member of the New York State Bar Association. He is admitted in New York.

### FEI-LU QIAN

Fei-Lu Qian graduated from Albany Law School of Union University in 2003. Mr. Qian was Associate Editor of the Albany Law Review. While in law school, he interned at the New York State Office of the Attorney General.

Mr. Qian began his legal career as an associate at Lovell Stewart Halebian LLP, where he specialized in securities litigation.

Mr. Qian became associated with the Firm in July 2005. He is admitted in New York and the United States District Courts for the Southern and Eastern Districts of New York.

### CAROL A. STRAW

Carol A. Straw joined Pomerantz as an associate in 2007 and focuses on securities fraud class and derivative actions. She is a 1991 graduate of Columbia University School of Law

32

and received her undergraduate degree from Queens College, cum laude, with honors in Economics. Before law school, Ms. Straw interned with the NYC Public Development Corporation under the Mayor's Urban Fellows Program. After law school, she had her own private practice for many years.

Ms. Straw has represented indigent clients in divorce and child support proceedings as a participant in the Brooklyn Volunteer Lawyers Association. She is admitted to practice in New York and the District of Columbia.

### SUSAN J. WEISWASSER

Susan J. Weiswasser graduated from Brooklyn Law School in 2000. While in law school, Ms. Weiswasser served as a law clerk intern to the Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York. Ms. Weiswasser also served as a legal intern with the New York State Capital Defender Office.

Ms. Weiswasser focuses her practice on health insurance and other class action insurance litigation. She is a member of the New York City Bar Association.

Ms. Weiswasser is admitted in New York, the United States District Courts for the Southern and Eastern Districts of New York , and the United States Court of Appeals for the Third Circuit.

33