UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE QIAO XING<br>SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions | MASTER FILE<br>07-CIV-7097 (DLC)<br><br>**"ECF" Case** |

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF PRELIMINARY APPROVAL OF THE SETTLEMENT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

PROCEDURAL HISTORY..................................................................................... 2

LEAD PLAINTIFF'S ALLEGATIONS...................................................................... 3

ARGUMENT....................................................................................................... 5

  I.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED................................... 5

    A.   All The Requirements For Class Certification Have Been Met ..................... 5

      1.   Rule 23(a)(1): Numerosity ............................................................... 6

      2.   Rule 23(a)(2): Commonality.............................................................. 6

      3.   Rule 23(a)(3): Typicality ................................................................. 7

      4.   Rule 23 (a)(4):  Adequacy of Representation ...................................... 7

      5.   Rule 23(b)(3): Predominance............................................................ 8

      6.   Rule 23 (b)(3):  Superiority............................................................... 8

  II.    THE SETTLEMENT SHOULD BE APPROVED UNDER RULE 23(e) ................... 8

    A.   The Settlement Was The Result of Arm's-Length Negotiations .................. 10

    B.   The Nine *Grinnell* Factors Also Support Settlement Of This Action.......................... 10

      1.   The Complexity, Expense And Likely Duration Of The Litigation ......................... 11

      2.   The Favorable Reaction Of The Settlement Class .................................... 12

      3.   The Stage Of Proceedings And The Amount Of Discovery Completed ................. 12

      4.   The Risks Of Establishing Liability.......................................................... 13

      5.   The Risks Of Establishing Damages.......................................................... 14

      6.   The Risks Of Obtaining And Maintaining
         The Class Action Through Trial ............................................................ 16

7.  The Ability Of Defendants To Withstand A Greater Judgment ............................... 16

8.  The Range Of Reasonableness Of The Settlement
    Fund In Light Of The Best Possible Recovery .......................................................... 17

9.  The Range of Reasonableness of the Settlement Fund
    In Light of the Attendant Risks of Litigation............................................................. 18

III.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE ......... 19

IV.    THE PROPOSED NOTICE IS FAIR AND REASONABLE ..................................... 21

CONCLUSION ....................................................................................................................... 22

## TABLE OF AUTHORITIES

### Statutes and Rules

Fed. R. Civ. P. 23.................................................................................................................*passim*

Securities Exchange Act of 1934, Section 10(b) ....................................................... 2, 19

Securities Exchange Act of 1934, Section 20(a) .............................................................. 2

### Cases

*AUSA Life Ins. Co. v. Ernst & Young*,
  206 F.3d 202 (2d Cir. 2000)........................................................................................ 19

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)............................................................................................ 7

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001).......................................................................................... 9

*Bentley v. Legent Corp.*,
  849 F. Supp. 429 (E.D. Va. 1994),
  *aff'd sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995) ......................... 18

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................... 10, 17, 19

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................ 6, 7

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)......................................................................................... 10

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).......................................................................................... 5

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ................................................................................................... 21

*Eisenstadt v. Centel Corp.*,
  113 F.3d 738 (7th Cir. 1997) ................................................................. 18

*Evans v. Jeff D.*,
  475 U.S. 717 (1986) ............................................................................... 9

*Frank v. Eastman Kodak Co.*,
  228 F.R.D 174 (W.D.N.Y. 2005) .......................................................... 17

*Green v. Wolf Corp.*,
  406 F.2d 291 (2d Cir. 1968),
  *cert. denied*, 395 U.S. 977 (1969) ......................................................... 8

*In re Acceptance Ins. Cos. Sec. Litig.*,
  423 F.3d 899 (8th Cir. 2005) ................................................................ 19

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................. 11, 14

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................ 10, 12

*In re Convergent Techs. Sec. Litig.*,
  721 F. Supp. 1133 (N.D. Cal. 1988),
  *aff'd*, 948 F.2d 507 (9th Cir. 1991) ..................................................... 18

*In re Crazy Eddie Sec. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993) ........................................................ 18

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ..................... 13

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................passim

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................................................ 18

*In re Indep. Energy Hldgs. PLC Sec. Litig.*,
  No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................... 11, 19

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ......................... 15

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................ 12

iv

*In re Nasdaq Market-Makers Antitrust Litig.*,
  No. 94 Civ. 3996, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) .................................................. 20

*In re Oxford Health Plans, Inc.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ........................................................................................ 6

*In re Prudential Sec. Litig.*,
  MDL No. 1005, M-21-67, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ................................... 9

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................................... 17

*In re Tyco Int'l*,
  No. 02-MD-1335 (PB), 2007 WL 4462593 (D.N.H. Dec. 19, 2007) ....................................... 17

*In re Visa Check/MasterMoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................................... 19

*In re Vivendi Universal, S.A.*,
  No. 02 Civ. 5571, 2007 WL 1490466 (S.D.N.Y. May 21, 2007) .............................................. 7

*In re Warner Comms. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) .......................................................................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ................................................................................ 9, 14

*Joel A. v. Giuliani*,
  218 F.3d 132 (2d Cir. 2000) ................................................................................................ 10

*Klein v. PDG Remediation, Inc.*,
  No. 95-cv-4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ................................................... 10

*Koppel v. 4987 Corp.*,
  191 F.R.D. 360 (S.D.N.Y. 2000) .......................................................................................... 6

*Krinsk v. Fund Asset Mgmt., Inc.*,
  715 F. Supp. 472 (S.D.N.Y. 1988),
  *aff'd*, 875 F.2d 404 (2d Cir. 1989) ........................................................................................ 19

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................ 9, 12, 14

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ................................................................................................. 21

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................................... 17

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
   No. 05-10791, 2007 WL 1430225 (5th Cir. May 16, 2007) ..................................... 16

*Slomovics v. All for a Dollar, Inc.*,
   906 F. Supp. 146 (E.D.N.Y. 1995) .......................................................................... 11

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005).................................. 9

*Strougo v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................. 15, 17

*Taft v. Ackermans*,
   No. 02 Civ 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)........................ 5

*Thompson v. Metro. Life Ins. Co*,
   216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................... 10

*Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005),
   *cert. denied*, 544 U.S. 1044 (2005) ........................................................................... 9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982),
   *cert. denied*, 464 U.S. 818 (1983) ........................................................................ 9, 21

## Miscellaneous

Laura Simmons, Securities Lawsuits:
   Settlement Statistics for Post-Reform Act Cases (1999) ......................................... 17

Court-appointed lead plaintiff PELO, a.s. ("Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for preliminary approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules"), of the proposed class action settlement ("Settlement")[1] entered into with defendants Qiao Xing, Rui Lin Wu, Albert Leung, Zhi Yang Wu, Sonny Kwok Wing Hung, Ze Yun Mu, Yi Hong Zhang, (the "Qiao Xing Defendants"), and Grobstein, Horwath & Company LLP (with the Qiao Xing Defendants, collectively, "Defendants"), and that fully resolves all claims asserted in this consolidated class action (the "Action").

## PRELIMINARY STATEMENT

The proposed Settlement of the Action for $2.4 million in cash plus interest (the "Settlement Fund") represents an excellent result in light of the uncertainties of ultimately prevailing on the merits, which include defenses Defendants have and would have continued to advance, both in this Court and on appeal, regarding liability and damages.

At the time the Settlement was reached, Lead Plaintiff had a full understanding of the strengths and weaknesses of its claims and the defenses thereto, in part due to a comprehensive factual and legal investigation. Lead Plaintiff and Lead Counsel have evaluated the benefit to the Settlement Class of entering into the Settlement at this time, compared to the risks and uncertainties of continuing the litigation, including (1) difficulties in alleging and proving Defendants' scienter with regard to their misstatements concerning Qiao Xing's financial statements (which were eventually restated); and (2) even assuming such conduct was actionable, difficulties in showing that the alleged misconduct, and not other factors, caused a decline in Qiao Xing's stock price. Furthermore, even were Plaintiff was to prevail on its claims,

---

[1] The complete terms of the proposed Settlement are set forth in the Stipulation of Settlement (the "Stipulation") dated February 25, 2008, submitted herewith.

it may prove difficult to collect any judgment from defendant Qiao Xing, a company headquartered in China that does no substantial business, and has no assets, in the United States.

For these reasons, Lead Plaintiff submits that this Settlement should be preliminarily approved, and the Settlement Class certified for purposes of this Settlement. Lead Plaintiff has also provided this Court with a proposed Notice, which will give adequate notice to potential Settlement Class Members.

## PROCEDURAL HISTORY

Beginning on August 9, 2007, five proposed class actions were filed in the United States District Court for the Southern District of New York, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Declaration of Gregory B. Linkh in Support of Lead Plaintiff's Motion for Preliminary Approval of the Settlement ("Linkh Decl.") ¶ 5. In orders dated November 1, 2007, the Court: (1) consolidated the five actions under the caption *In re Qiao Xing Securities Litigation*, No. 07 Civ. 7097 (DLC); (2) appointed PELO, a.s. as Lead Plaintiff in the Action; and (3) approved Lead Plaintiff's selection of Murray, Frank & Sailer LLP as Lead Counsel. Linkh Decl., at ¶ 6.

In an order dated November 19, 2007, this Court ordered the parties to mediate the case before Magistrate Judge Henry Pitman. At a mediation held on January 10, 2007, the parties engaged in intensive negotiations. At the conclusion of the mediation, Judge Pitman recommended to the parties that the case settle for $2.4 million. Upon further consideration, the parties agreed to settle the case for that amount. Linkh Decl., at ¶ 7.

Although this case was settled before Lead Plaintiff filed an amended complaint, Lead Counsel conducted a detailed factual and legal investigation of Qiao Xing and the Individual Defendants, assisted by an accounting expert, a damages expert, and three separate teams of

investigators based both in the United States and abroad. *Id.* at ¶ 8. Lead Plaintiff entered into the Settlement on the basis of the investigation.

## LEAD PLAINTIFF'S ALLEGATIONS

During the Class Period, Qiao Xing filed Form 20-F Annual Reports ("Form 20-F") with the United States Securities and Exchange Commission ("SEC") for the fiscal years 2003, 2004, and 2005. Each Form 20-F detailed Qiao Xing's net income, net sales, and total assets for that fiscal year and previous fiscal years. Attached to the Forms 20-F were certifications provided by defendants Wu and/or Leung, pursuant to the Sarbanes-Oxley Act, which represented that the report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ." During the Class Period, Qiao Xing also filed several Form 14-A Proxy Statements with the SEC which provided similar information regarding Qiao Xing's net income, net sales, and total assets for fiscal years 2003, 2004, and/or 2005. Linkh Decl., at ¶¶ 10-11.

On July 17, 2007, before the market opened, the Company announced that "it filed with [the] SEC a Form 20-F to release its 2006 annual report and to restate its financial data for the years 2005, 2004 and 2003" (the "Restatement"). The Restatement concerned an adjustment based on the revaluation of acquired assets and the recognition of deferred tax assets and liabilities of the mobile phone company CECT, a subsidiary of Qiao Xing Mobile ("QXM"), which was itself a wholly-owned subsidiary of Qiao Xing until a partial spin-off of QXM was consummated in May 2007. The Restatement also concerned (1) the incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent" and (2) the incorrect recognition of losses regarding an equity investment. As a result of the Restatement, Qiao Xing's net income dropped from $3.15 million to $195,000 (a 94% drop) in

2004, and from $34.244 million to $33.721 million in 2005 (a 1.5% drop), and the net loss in 2003 increased from $1.064 million to $3.307 million (a 310% increase). The Restatement also impacted reported net sales and total assets. *Id.* at ¶ 12.

The Company's July 17, 2007 announcement and 2006 Form 20-F also contained other negative news, unrelated to the Restatement, concerning Qiao Xing's current results and future projections. In response to this news, the price of Qiao Xing common stock closed at $11.04 per share at on July 17, 2007, a 21% drop from the previous day's close of $13.97. *Id.* at ¶ 13.

QXM's initial public offering ("IPO") occurred in May 2007, two-and-a-half months before the announcement of the Restatement. QXM's registration statement, first filed on April 17, 2007, revealed that the Qiao Xing Defendants were aware of many of the various accounting irregularities that were ultimately the subject of the Restatement. Lead Plaintiff alleges that the Qiao Xing Defendants had full knowledge of the false financial statements by that date at the latest. One of the stated purposes of the IPO was to obtain funding so that QXM could repay loans to Qiao Xing. Lead Plaintiff alleges that because a restatement could jeopardize the amount of funding that could be obtained by the IPO, thereby putting the repayment in jeopardy, the Qiao Xing Defendants intentionally or recklessly delayed the issuance of the Restatement, with full knowledge of the falsity of its prior financial statements, until over two-and-a-half months after the IPO was completed. *Id.* at ¶ 14.

Lead Plaintiff alleges that by publishing financial statements that both overvalued CECT and led to other issues that were the subject of the Restatement, Qiao Xing issued materially false and misleading statements to the investing public in 2003, 2004, and 2005, in violation of the Exchange Act. The Qiao Xing Defendants had knowledge of the events giving rise to the Restatement by at least the date of the IPO. Lead Plaintiff alleges that these misstatements

caused the price of Qiao Xing common stock to be artificially inflated, and had the market known of the true financial condition of Qiao Xing at that time, Lead Plaintiff and the other Settlement Class Members would not have traded their Qiao Xing securities during the Class Period at the artificially inflated prices at which they did, and would not have suffered losses when the inflation was removed from the stock.  Hence, Lead Plaintiff alleges Settlement Class Members were damaged when the stock price dropped on July 17, 2007.  *Id.* at ¶ 15.

After consulting with the investigators and Plaintiff's accounting expert Harris Devor, Lead Counsel determined a viable claim could not be pled against Qiao Xing's auditor, Grobstein, Horwath & Company LLP. *Id.* at ¶ 16. Furthermore, Lead Plaintiff was also having difficulty tying knowledge of the misstatements directly to Defendants, although one witness did state that he told certain Defendants the financial statements were wrong.  *Id.* at ¶ 17.

<u>**ARGUMENT**</u>

I.    <u>**THE SETTLEMENT CLASS SHOULD BE CERTIFIED**</u>

A.    <u>**All The Requirements For Class Certification Have Been Met**</u>

The parties have stipulated to certification of the Settlement Class for settlement purposes, subject to approval by the Court. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23(a) and (b) have been met.").  In order for a settlement class to be certified, the court must find that the proposed class meets the four threshold requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and, in addition, is maintainable under Rule 23(b)(3). *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *2-3 (S.D.N.Y. Jan. 31, 2007).  Class treatment is particularly appropriate for proceedings involving violations of securities laws and Rule 23(a)

should be construed liberally to effectuate that end. *See Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) ("in light of the importance of the class action device in securities fraud suits, the court construes Rule 23 liberally") (internal quotations omitted).

### 1. Rule 23(a)(1): Numerosity

According to Lead Plaintiff's damages expert, Financial Markets Analysis, LLC ("FMA"), approximately 17 million damaged shares were held by hundreds, if not thousands, of shareholders. Linkh Decl., at ¶ 25. The Settlement Class Members are clearly so numerous that joinder of all members is impracticable.

### 2. Rule 23(a)(2): Commonality

The "commonality" prong of Rule 23(a) is satisfied if only one legal or factual issue is shared by all class members. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (Cote, J.). The commonality requirement is easily satisfied in cases such as the instant Action where the Lead Plaintiff's allegations focus on materially false and misleading statements in the same document, such as Qiao Xing's publicly filed reports. *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374-75 (S.D.N.Y. 2000). Rule 23(a)(2)'s commonality requirement is satisfied here because all Settlement Class Members share several legal and factual issues in common, including:

  a) Whether the federal securities laws were violated by defendants' acts as alleged herein;

  b) Whether defendants acted willfully or recklessly in omitting to state and misrepresenting material facts; and

  c) Whether the members of the Class have sustained damages, and if so, what is the proper measure of damages.

### 3.  <u>Rule 23(a)(3): Typicality</u>

"[T]he focus of the typicality inquiry concerns … whether each class member makes similar legal arguments to prove the defendant's liability." *Cromer*, 205 F.R.D. at 122. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *In re Vivendi Universal, S.A.*, No. 02 Civ. 5571, 2007 WL 1490466, at *7 (S.D.N.Y. May 21, 2007) (internal quotations omitted). Here, Lead Plaintiff's claims are typical of the claims of the Class Members in that Lead Plaintiff and each Class Member purchased or sold Qiao Xing securities (common stock, call options, and/or put options) during the Class Period in an allegedly artificially inflated market and sustained injury when the inflation was removed.

### 4.  <u>Rule 23 (a)(4):  Adequacy of Representation</u>

Adequacy of representation is met where the plaintiffs do not have interests antagonistic to the rest of the class and the plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, Lead Plaintiff's claims and interests are co-extensive, and not antagonistic, with those of the absent class members. Further, as reflected on Lead Counsel's resume, Lead Counsel has wide experience in the type of action before the Court and was fully able to represent the interests of the Settlement Class.[2]

Accordingly, both prongs of the adequacy test are met.

---

[2] A copy of Murray, Frank & Sailer LLP's firm resume is attached as Exhibit 1 to the Linkh Declaration.

####     5.     **Rule 23(b)(3): Predominance**

Rule 23(b)(3) requires that common questions of law or fact predominate over any individual questions.  Since the liability of Defendants will be the same as to all Settlement Class Members, with only the amount of damages differing and that only in limited ways, common questions predominate.

####     6.     **Rule 23 (b)(3):  Superiority**

Finally, the superiority requirement of Rule 23(b)(3) is met if the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The Second Circuit has recognized class actions as superior to other available methods of adjudication in the context of claims brought under the federal securities laws, and views such claims as particularly amenable to class treatment, given the large number of plaintiffs and the likelihood that individual claims would often be too small to warrant individual suits.  *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied*, 395 U.S. 977 (1969).  The superiority requirement is clearly met here.  As the damages suffered by individual Settlement Class Members may be relatively small, the expense and burden of individual litigation make it impossible for the Settlement Class Members to seek redress individually for the wrongs done to them.  Lead Plaintiff knows of no other action (not consolidated into the Action) that asserts claims similar to those set forth in this litigation.

Accordingly, for purposed of preliminary approval of the Settlement, the Court should certify the Settlement Class.

## II.     **THE SETTLEMENT SHOULD BE APPROVED UNDER RULE 23(e)**

Rule 23(e) requires that any settlement or dismissal of a class action must be approved by the court.  In determining whether to approve a class action settlement, the court must determine

whether the settlement is "fair, adequate, and reasonable and not a product of collusion." *Maley v. Del Global Techs. Corp*., 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) *cert. denied*, 464 U.S. 818 (1983); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *5 (S.D.N.Y. June 7, 2005) (Cote, J.).

Judicial discretion should be exercised in light of the general policy favoring settlement. *See Bano v. Union Carbide Corp*., 273 F.3d 120, 129-30 (2d Cir. 2001) (collecting cases); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (Cote, J.) ("public policy favors settlement, especially in the case of class actions"). Further, the court has broad discretion to approve a settlement and must appraise the reasonableness of particular class action settlements on a case-by-case basis, in light of all the relevant circumstances. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Prudential Sec. Litig.*, MDL No. 1005, M-21-67, 1995 WL 798907, at *16 (S.D.N.Y. Nov. 20, 1995) (determination of fairness of settlement is left to the "sound discretion" of the court). However, the Court should not substitute its judgment as to a proper settlement for that of class counsel. *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

There is a strong initial presumption that the compromise is fair and reasonable. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004). In determining if the proposed settlement is fair, reasonable, and adequate the court examines (1) the negotiations which led up to the settlement and (2) the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005); *WorldCom*, 388 F. Supp. 2d at 337. These factors are discussed below.

9

A.    **The Settlement Was The Result of Arm's-Length Negotiations**

The Settlement before the Court was entered into in good faith, after arm's-length and non-collusive negotiations between experienced counsel on both sides before an impartial mediator.  Linkh Decl., at ¶ 7.  A strong presumption of fairness attaches to a proposed settlement that has been negotiated at arm's-length.  *See Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000) ("If the Court finds that the Settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").

The Settlement was a direct result of court-appointed mediation session before Magistrate Judge Pitman.  Linkh Decl., at ¶ 7.  "[A] court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure."  *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

B.    **The Nine *Grinnell* Factors Also Support Settlement Of This Action**

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit identified nine factors that courts are to consider in deciding the substantive fairness of a proposed settlement, which are discussed below.  "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Global Crossing*, 225 F.R.D. at 456 (quoting *Thompson v. Metro. Life Ins. Co*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)*.  All of the *Grinnell* factors which are relevant at this stage support preliminary approval of the Settlement.

10

1.    <u>**The Complexity, Expense And Likely Duration Of The Litigation**</u>

This securities class action involves complex legal and factual issues both in establishing liability and in proving damages. *See Global Crossing*, 225 F.R.D. at 456 ("class actions have a well-deserved reputation as being most complex") (internal quotations omitted); *Klein v. PDG Remediation, Inc.,* No. 95-cv-4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (securities class actions involve complex factual and legal issues). Such issues include satisfying the loss causation requirement, establishing falsity and the requisite degree of scienter for the misstatements alleged, and control person liability. Linkh Decl., at ¶ 19.

In addition, this case was settled at an early stage of the litigation. But for the Settlement, contested motions at the pleading, class certification, and summary judgment stages were all but certain. If Lead Plaintiff survived Defendants' motion(s) to dismiss, discovery would commence. It is likely that discovery in this case would be both expensive and time consuming. Most of the relevant documents are in Chinese and are located in China, as are many of the relevant witnesses. Lead Counsel's investigators were met with skepticism and reluctance when conducting interviews with witnesses in China. A trial would be costly, and involve the preparation of pre-trial and post-trial briefs, and lengthy and complicated expert discovery. Experts would be expected to testify concerning such complex issues as the damages suffered by Lead Plaintiff and the Class and loss causation. Even if Lead Plaintiff had prevailed at trial, post-judgment appeals were likely to be taken by Defendants. *Id.* at ¶ 23. As one court concluded, "[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995). To litigate this Action through class certification, discovery, and summary judgment, and then prepare for and try this case would require

additional significant time and expense.  Based on the complexity of the legal and factual issues, and the expense and potential length of a trial and the likelihood of an appeal, the balance for this factor weighs towards settlement.  *See In re Indep. Energy Hldgs. PLC Sec. Litig.,* No. 00 Civ. 6689, 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003)*; In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 424-25 (S.D.N.Y. 2001).

### 2.    The Favorable Reaction Of The Settlement Class

As Plaintiff is moving for preliminary approval the Settlement, there has not yet been any reaction by the Settlement Class.

### 3.    The Stage Of Proceedings And The Amount Of Discovery Completed

"[T]he stage of the proceedings and the amount of discovery completed is another factor that may be considered in determining the fairness, reasonableness and adequacy of a settlement." *Maley*, 186 F. Supp. 2d at 363 (internal quotations omitted).  Formal discovery is not a prerequisite to settlement.  *Id.* (to approve a proposed settlement, "the Court need not find that the parties have engaged in extensive discovery"); *see also Austrian and German Bank Holocaust*, 80 F. Supp. 2d at 176 (same).

Here, the Settlement was reached after a detailed factual investigation, involving three independent sets of investigators, which resulted in numerous interviews with individuals with knowledge of the facts.  Plaintiff also retained accounting and damages experts to evaluate the case.  Linkh Decl., at ¶¶ 26, 26.  While Lead Plaintiff has not conducted formal discovery of Defendants (due to the discovery stay mandated by the Private Securities Litigation Reform Act of 1995), the investigation described above provided Lead Plaintiff and Lead Counsel with information concerning the strengths and weaknesses of the parties' respective claims and defenses.  Accordingly, the stage of proceedings strongly favors approval of the Settlement.  *See*

12

*In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *See also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *14, n.36 (E.D.N.Y. Sept. 18, 2007) (settlement approved even though formal discovery had not taken place).

### 4.    The Risks Of Establishing Liability

Lead Plaintiff faces significant uncertainty with respect to prevailing on the merits in this Action. Where, as here, "plaintiffs would have faced significant legal and factual obstacles to proving their case," courts should approve the settlement. *Global Crossing,* 225 F.R.D. at 459.

For example, if the case were to progress further, Lead Plaintiff would face the following legal hurdles: (1) difficulties in alleging and proving that Defendants acted with the requisite scienter both before and after the IPO; and (2) difficulties in showing that the revelation of the alleged misconduct, and not other factors, caused a decline in Qiao Xing's stock price. Defendants would argue, both at the pleading stage and at summary judgment and/or trial, that (1) the Restatement was not material, because Qiao Xing's stock price did not drop when the various accounting irregularities that were ultimately the subject of the Restatement were revealed in QXM's registration statement, filed on April 17, 2007; (2) the Restatement was due to a disagreement between accounting firms and was not the result of fraud, and (3) Qiao Xing's stock price dropped at the end of the Class Period because of news unrelated to the Restatement, including news of Qiao Xing's current results and future projections. As discussed below, even FMA concluded that most of the drop in Qiao Xing's stock price was due to factors other than the restatement. Such difficulties could lead to dismissal at the pleading stage, on summary

13

judgment, at trial, or on appeal.  If any of these risks factors caused the case to be dismissed, it is likely that the Settlement Class would recover significantly less than is being recovered under the terms of the Settlement, or even nothing.  Linkh Decl., at ¶ 22.

Even if Lead Plaintiff prevailed at trial, there was the likelihood of a subsequent appeal, further adding to the risks of continued litigation.  *Id.* at 19.

Courts recognize that "establishing the roles of specific individual defendants in the fraud; … [and] getting a jury to understand the many complex issues during a trial that could go on for weeks[,]" *Maley,* 186 F. Supp. 2d at 364, are among the significant obstacles faced in this complex securities class action. *See also WorldCom*, 388 F. Supp. 2d at 338 (noting that among the "substantial risks" remaining "at these late stages of the litigation" were "the falsity of many alleged misstatements" and whether defendants acted in good faith); *Am. Bank Note*, 127 F. Supp. 2d at 426 (recognizing substantial risk in proving scienter "because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult").

This factor weighs in favor of the preliminary approval of the Settlement.

**5.    The Risks Of Establishing Damages**

Even if Lead Plaintiff was successful in establishing liability, there are substantial risks in proving loss causation and damages which Lead Plaintiff has avoided by virtue of the Settlement.  Linkh Decl., at ¶¶ 22-23.  FMA calculated that while the drop of Qiao Xing's stock price at the end of the Class Period was caused a loss of $50 million (17 million damaged shares multiplied by the $2.94 drop at the end of the Class Period), the Settlement Class Members suffered actionable damages (that can be tied to Defendants' alleged fraud) of, at most, $3.3 million.  *Id.,* at ¶¶ 26, 29.  Thus, FMA found that, at most, 6.6% of the total loss was due to Defendants' alleged fraud.

14

Defendants would argue that an even larger share, if not the entire drop, occurred for reasons other than Defendants' alleged fraud. *Id.,* at ¶ 22. Accordingly, it is possible that even if Lead Plaintiff prevailed on falsity, materiality, and scienter grounds, it would not have been able to prove loss causation or ascertainable damages – and the Settlement Class Members would end up with nothing. Undoubtedly, Defendants would introduce the testimony of a damages expert who would dispute the existence of any material damages and further opine that if any damages existed they were much less than estimated (and ultimately recoverable) by Lead Plaintiff. The determination of the existence and amount of damages, like the determination of liability, is a complicated and uncertain process that would have involved conflicting expert opinions. Had the case gone to trial, the jury would have been presented with vastly different damage estimates by Lead Plaintiff and Defendants and would have been required to evaluate conflicting damage estimates. Although Lead Plaintiff believes that it would have been able to establish some amount of damages, there can be no guarantee that it would prevail. *Id.* at ¶ 19.

Thus trial would have become a "battle of experts" over loss causation and damages issues, and the jury would be free to pick or disregard either party's expert testimony. *See Warner Comms.*, 618 F. Supp. at 744-45 ("[i]n this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"); *Strougo v. Bassini,* 258 F. Supp. 2d 254, 259 (S.D.N.Y. 2003) ("[t]he issue of damages would have been hotly disputed, and would have been the subject of further dispute between [the] experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict"); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("Expert testimony about damages could

15

rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable.  Conceivably, a jury could find that damages were only a fraction of the amount that Plaintiffs contended.").

This factor weighs in favor of the preliminary approval of the Settlement.

### 6.    The Risks Of Obtaining And Maintaining The Class Action Through Trial

This Action has not yet been certified as a class action.  For the reasons discussed above Lead Counsel is confident that the proposed class would be certified.  Nonetheless, if this litigation were to proceed, or should the Settlement not be effectuated, the Court could deny class certification, or severely restrict the scope of the approved class.  Furthermore, even if a class is certified, Rule 23(f) provides Defendants with the opportunity to obtain interlocutory review of the decision, which holds additional risks.  *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, No. 05-10791, 2007 WL 1430225 (5th Cir. May 16, 2007) (vacating class certification order for failure to show loss causation).

Accordingly, risks remain with regard to maintenance of this Action as a class action, which further favors preliminary approval of the Settlement.

### 7.    The Ability Of Defendants To Withstand A Greater Judgment

While companies in securities class actions are often covered by Directors and Officers ("D&O") Insurance, Qiao Xing's insurance carrier has raised issues as to the applicability of coverage in this Action.  Linkh Decl., at ¶ 24.  Accordingly, there was an increased likelihood that Qiao Xing, a company located in China, would have to pay most or all of any judgment or settlement.  Furthermore, because Qiao Xing has no assets in the United States, it could prove difficult to collect any judgment.  Thus, while Qiao Xing, as a solvent, relatively healthy company, may be able to withstand a greater judgment, it may prove difficult to collect it.

16

8.     **The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery**

The "best possible" recovery necessarily assumes Lead Plaintiff's success both on liability and damages as well as the ability of Defendants to pay the judgment.  The maximum recoverable damages in this case, according to Lead Plaintiff's damages expert, is $3.3 million.  Linkh Decl., at ¶¶ 26, 29.  The Settlement provides $2,400,000 in cash; therefore, the Settlement represents approximately 73% of the aforementioned best possible recovery.  *Id.*

The amount of recovery is well within the range of reasonableness.  "The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum."  *Strougo,* 258 F. Supp. 2d at 260.  Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Strougo*, 258 F. Supp. 2d at 260; *Frank v. Eastman Kodak Co.,* 228 F.R.D 174, 186 (W.D.N.Y. 2005).  In *Grinnell*, the Second Circuit noted that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  495 F.2d at 455; *see also Global Crossing*, 225 F.R.D. at 461.

The Settlement of $2.4 million (73% of the maximum possible recovery) is an extraordinary recovery and is much greater than recoveries in other settlements that are regularly approved by courts.  *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (settlement of 9.65% is fair; noting that "[o]n a relative basis, Professor Coffee reports that a recent study shows that settlements since 1995 of securities class actions 'have recovered between 5.5% and 6.2% of the class members' estimated losses')" (citing Laura Simmons,

*Securities Lawsuits: Settlement Statistics for Post-Reform Act Cases* (1999) at 4).”); *see also In re Tyco Int'l*, No. 02-MD-1335 (PB), 2007 WL 4462593, at *14 (D.N.H. Dec. 19, 2007) (14.5% of recovery is fair); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 184-85 (E.D. Pa. 2000) (settlement of 5% is fair); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 323-24 (E.D.N.Y. 1993) (settlement of 10% is fair).[3]

This factor weighs in favor of the preliminary approval of the Settlement.

### 9.    The Range of Reasonableness of the Settlement Fund In Light of the Attendant Risks of Litigation

The risks of litigation are why settlement is frequently preferred.  Settling avoids delay as well as uncertain outcome at summary judgment, trial and on appeal.  Given the numerous risks Lead Plaintiff would face in prosecuting the Action to a successful trial verdict, what Lead Plaintiff has achieved represents a very good outcome for the Settlement Class, especially when the difficulties Lead Plaintiff would otherwise face in prevailing at trial are considered.  Many cases are lost on summary judgment after plaintiffs and their counsel in similar cases have invested thousands of hours in successfully opposing motions to dismiss and pursuing discovery. *See, e.g.*, *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming summary judgment in favor of the defendants); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994) (directed verdict after plaintiff's presentation of their case to the jury), *aff'd sub nom. Herman v. Legent Corp.*, 50 F.3d 6 (4th Cir. 1995); *In re JDS Uniphase Sec. Litig.*, 02cv1486 (EDL) (N.D. Ca.) (jury verdict against plaintiffs in class action securities litigation); *In re Convergent Techs. Sec.*

---

[3] Cornerstone Research has reported that the median settlement of damages for cases settled from December 1995 (when the PSLRA was enacted) through the end of 2005 that had “estimated damages” of less than $50 million is 10.5%.  *See* Laura E. Simmons and Ellen M. Ryan, *Securities Class Action Settlements, 2006 Review and Analysis* (available at http://securities.stanford.edu/Settlements/REVIEW_1995-2006/Settlements_Through_12_2006.pdf, last visited February 25, 2008).

*Litig.*, 721 F. Supp. 1133 (N.D. Cal. 1988) (summary judgment against plaintiffs following almost six years of litigation), *aff'd*, 948 F.2d 507 (9th Cir. 1991).

Numerous appellate court decisions also demonstrate the risks inherent in this type of litigation. *See, e.g., In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899 (8th Cir. 2005) (affirming grant of summary judgment in favor of defendants on Section 10(b) claims after five years of litigation); *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000) (affirming lower court finding after a bench trial that loss causation was not established); *Krinsk v. Fund Asset Mgmt., Inc*., 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial).[4]

As described above, Lead Plaintiff faces numerous significant risks absent settlement in establishing falsity, scienter, loss causation and damages in this case, plus the inherent risks of trial and appeal.  Also, delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Settlement Class members to wait years for any potential recovery, further reducing its value.  Linkh Decl., at ¶ 21; *see Grinnell*, 495 F.2d at 467.

This factor weighs in favor of the preliminary approval of the Settlement.

## III.    **THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE**

As a general rule, the adequacy of a plan of allocation turns on whether the proposed apportionment is fair and reasonable under the particular circumstances of the case.  *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518-19 (E.D.N.Y. 2003); *see Indep. Energy*, 2003 WL 22244676, at *5 (when considering a plan of allocation, "a court's primary

---

[4] *See also, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing a jury verdict of $81 million after a 19-day trial against an accounting firm on loss causation grounds and entering judgment for the defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re Worlds of Wonder Sec. Litig*., 35 F.3d 1407 (9th Cir. 1994) (affirming summary judgment in favor of all but one defendant after 6 years of litigation).

responsibility is to ensure that the distribution of funds is fair and reasonable . . . . An allocation formula need only have a reasonable, rational basis") (internal citations omitted); *In re Nasdaq Market-Makers Antitrust Litig.*, No. 94 Civ. 3996, 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) ("[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel").

The Plan of Allocation, fully described in Exhibit 2 to the Stipulation, was formulated by Lead Counsel, with the assistance of FMA, and seeks to reimburse Settlement Class members in a fair and reliable manner. Under the proposed Plan of Allocation, each authorized claimant will receive a *pro rata* share of the "Net Settlement Fund," *i.e.*, the Gross Settlement Fund less certain fees and expenses, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

In keeping with the well-recognized principle that a "[p]ro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach," *Global Crossing*, 225 F.R.D. at 462, the Plan of Allocation provides a two-tiered structure. Settlement Class Members who purchased common stock, purchased call options, or sold put options between April 17, 2007 and July 17, 2007 shall receive a greater pro-rata share than those who purchased common stock, purchased call options, or sold put options between June 30, 2004 and April 16, 2007. This reflects the fact that as of April 17, 2007, QXM had released its registration statement which contained the financial data that ultimately resulted in Qiao Xing's restatement. Accordingly, Lead Plaintiff would have an easier time pleading and proving that as of that date, Defendants were aware of the overvaluation of QXM. Conversely, Lead Plaintiff would have more difficulty proving that, before April 17, 2007, Defendants knowingly or recklessly misstated Qiao Xing's financial statements. Linkh Decl., at ¶ 30.

20

Furthermore, under the proposed Plan of Allocation, claimants who are in-and-out purchasers of common stock or call options, or in-and-out sellers of put options, will not receive an allocation, since any loss suffered by such Settlement Class Members would have been recouped before the end of the Class Period – thus such Settlement Class Members would not be able to establish loss causation. *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336 (2005).

For the foregoing reasons, the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

## IV.   THE PROPOSED NOTICE IS FAIR AND REASONABLE

The parties have agreed upon the proposed Notice of Pendency of Proposed Class Action Settlement ("Notice") and Summary Notice of Pendency of and Proposed Settlement of Class Action Involving Qiao Xing Universal Telephone Inc. ("Summary Notice").  The proposed Notice describes in plain English the terms and operation of the Settlement, the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair and adequate, the maximum counsel fees that may be sought, the procedure for objecting to or seeking exclusion from the Settlement, and the date and place of the Fairness Hearing.  With the Court's approval, the Class Notice will be mailed to Settlement Class Members, and will also be published over the Internet, at both www.qiaoxingsecuritiessettlement.com and www.murrayfrank.com.  In addition, Summary Notice will be published over the BUSINESS WIRE, PRIMEZONE, or PR NEWSWIRE.  Linkh Decl., at ¶ 31.

To satisfy due process, notice to the Settlement Class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Notice should also provide a "very general description[] of the

proposed settlement." *Weinberger v. Kendrick,* 698 F.2d 61, 70 (2d Cir. 1982). The Notice described above meets these standards.

<u>**CONCLUSION**</u>

In light of the substantial benefits that will be realized by the Settlement Class Members as a result of this Settlement, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable and adequate, in the best interests of all of the Settlement Class Members, and worthy of the approval of this Court. The Settlement should be preliminarily approved.

Dated: New York, New York
      February 25, 2007

                                    Respectfully submitted,

                                    MURRAY, FRANK & SAILER LLP

                                      /s/
                                    Brian P. Murray (bmurray@murrayfrank.com)
                                    Gregory B. Linkh (glinkh@murrayfrank.com)
                                    275 Madison Avenue, Suite 801
                                    New York, New York 10016
                                    Telephone: (212) 682-1818
                                    Facsimile: (212) 682-1892

                                    **Lead Counsel for Lead Plaintiff**
                                    **and the Putative Class**

**<u>DECLARATION OF SERVICE</u>**

       I am an attorney admitted to practice in this district.  I hereby certify, under penalty of perjury, that on this 25th day of February, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below by causing a true copy thereof to be delivered by both e-mail and hand overnight mail:

Jack C. Auspitz (jauspitz@mofo.com)
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

**Counsel for Qiao Xing and the Individual Defendants**

Lawrence Steckman
(lsteckman@lskdnylaw.com)
LESTER SCHWAB KATZ
 & DWYER, LLP
120 Broadway
New York, New York  10271
Telephone:  (212) 964-6611
Facsimile:  (212) 267-5916

**Counsel for Grobstein, Horwath & Company LLP**

_____/s/_____
Gregory B. Linkh (glinkh@murrayfrank.com)