**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE QIAO XING<br>SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions | MASTER FILE<br>07-CIV-7097 (DLC)<br><br>**"ECF" Case** |

**DECLARATION OF GREGORY B. LINKH IN SUPPORT**
**OF PRELIMINARY APPROVAL OF THE SETTLEMENT**

I, GREGORY B. LINKH, make the following declarations under penalty of perjury:

1.    I am an attorney admitted to practice before this Court and am associated with Murray, Frank & Sailer LLP ("Plaintiffs' Counsel"),[1] court-appointed Lead Counsel for plaintiffs and the proposed class (the "Settlement Class") in this litigation (the "Action"). I am familiar with the proceedings herein and if called upon, I would testify that the following facts are true and correct.

2.    I submit this declaration in support of the application for preliminary settlement of the Action for $2.4 million plus accrued interest.[2]

I.    **INTRODUCTION**

A.    **Overview of the Settlement**

3.    The parties PELO, a.s. ("Lead Plaintiff") and defendants Qiao Xing, Rui Lin Wu,

---

[1] A copy of Murray, Frank & Sailer LLP's firm resume is attached as Exhibit 1 hereto.
[2] This Declaration is submitted concurrently with the (1) Stipulation of Settlement, executed February 25, 2008, and attached Exhibits ("Stipulation"); (2) Notice of Motion and Motion for Preliminary Approval of Settlement; (3) Memorandum of Law in Support of Motion for Preliminary Approval of Settlement; and (4) Declaration of Gregory B. Linkh in Support of Motion for Preliminary Approval of Settlement.

Albert Leung, Zhi Yang Wu, Sonny Kwok Wing Hung, Ze Yun Mu, Yi Hong Zhang, and

Grobstein, Horwath & Company LLP (collectively, "Defendants"), seek to settle the Action for

$2.4 million, in accordance with Rule 23 of the Federal Rules of Civil Procedure. The

Settlement is fair, reasonable and adequate. It represents an excellent recovery for the Class,

particularly in light of the difficulties and uncertainties that would ensue in obtaining a final

judgment of a value equal to the Settlement.

4.      Lead Counsel in the Action has conducted an investigation relating to the claims

and the underlying events and transactions alleged in the Complaint. Lead Counsel has analyzed

the evidence available in the case and has researched the applicable law with respect to the

claims of Plaintiffs and the Class against Defendants and the potential defenses thereto. Plaintiff

and Lead Counsel have conducted arm's-length negotiations with counsel for Defendants with

respect to a compromise and settlement of the Action with a view to settling the issues in dispute

and achieving the best relief possible consistent with the interests of the Class. Based upon Lead

Counsel's investigation, consultation with experts, and negotiations with Defendants, Lead

Plaintiff and Lead Counsel have concluded that the terms and conditions of this Settlement are

fair, reasonable, and adequate to Lead Plaintiff and the Settlement Class, and in their best

interests, and have agreed to settle the claims raised in the Action pursuant to the terms and

provisions of the Stipulation, after considering the substantial benefit to the Settlement Class that

will be received as a result of this Settlement, compared to the distractions, expense and

uncertainty of further litigation, and the desirability of permitting the Settlement to be

consummated as provided by the terms of the Stipulation.

**B.      Procedural History**

5.      On July 17, 2007, Qiao Xing announced that it was restating its financials for the

years 2003, 2004, and 2005.  As a result of these events, beginning on August 9, 2007, five proposed class actions were filed in the United States District Court for the Southern District of New York, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

6.     These cases were assigned to the Honorable Denise Cote.  In orders dated November 1, 2007, the Court: (1) consolidated the five actions under the caption *In Re Qiao Xing Securities Litigation*, No. 07 Civ. 7097 (DLC); (2) appointed PELO, a.s. as Lead Plaintiff in the Action; and (3) approved Lead Plaintiff's selection of Murray, Frank & Sailer LLP as Lead Counsel.

7.     In an order dated November 19, 2007, Judge Cote ordered the parties to mediate the case before Magistrate Judge Henry Pitman.  At a mediation held on January 10, 2007, the parties engaged in intensive negotiations.  At the conclusion of the mediation, Judge Pitman recommended to the parties that the case settle for $2.4 million.  Upon further consideration, the parties agreed to settle the case for that amount.

8.     During the course of the Action, Lead Counsel conducted a detailed factual and legal investigation of Qiao Xing and the Individual Defendants, assisted by an accounting expert, a damages expert, and three separate teams of investigators based both in the United States and abroad.  Lead Plaintiff entered into the Settlement on the basis of the investigation.

C.     **Plaintiff's Allegations**

9.     While Lead Plaintiff did not file an amended complaint, as a result of Lead Counsel's through factual and legal investigation, Lead Counsel's allegations would be as follows.

10.     During the Class Period, Qiao Xing filed Form 20-F Annual Reports ("Form 20-

F") with the United States Securities and Exchange Commission ("SEC') for the fiscal years 2003, 2004, and 2005.  Each Form 20-F detailed Qiao Xing's net income, net sales, and total assets for that fiscal year and previous fiscal years. Attached to the Forms 20-F were certifications provided by defendants Wu and/or Leung, pursuant to the Sarbanes-Oxley Act, which represented that the report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ."

11.     During the Class Period, Qiao Xing also filed several Form 14-A Proxy Statements with the SEC which provided similar information regarding Qiao Xing's net income, net sales, and total assets for fiscal years 2003, 2004, and/or 2005.

12.     On July 17, 2007, before the market opened, the Company announced that "it filed with [the] SEC a Form 20-F to release its 2006 annual report and to restate its financial data for the years 2005, 2004 and 2003" (the "Restatement").  The Restatement concerned an adjustment based on the revaluation of acquired assets and the recognition of deferred tax assets and liabilities of the mobile phone company CECT, a subsidiary of Qiao Xing Mobile ("QXM"), which was itself a wholly-owned subsidiary of Qiao Xing until a partial spin-off of QXM was consummated in May 2007.  The Restatement also concerned (1) the incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent" and (2) the incorrect recognition of losses regarding an equity investment.  As a result of the Restatement, Qiao Xing's net income dropped from $3.15 million to $195,000 (a 94% drop) in 2004, and from $34.244 million to $33.721 million in 2005 (a 1.5% drop), and the net loss in 2003 increased from $1.064 million to $3.307 million (a 310% increase).  The Restatement also impacted reported net sales and total assets.

13.     The Company's July 17, 2007 announcement and 2006 Form 20-F also contained

other negative news, unrelated to the Restatement, concerning Qiao Xing's current results and future projections. In response to this news, the price of Qiao Xing common stock closed at $11.04 per share at on July 17, 2007, a 21% drop from the previous day's close of $13.97. *Id.* at ¶ 13.

14.    QXM's initial public offering ("IPO") occurred in May 2007, two-and-a-half months before the announcement of the Restatement. QXM's registration statement, first filed on April 17, 2007, revealed that the Qiao Xing Defendants were aware of many of the various accounting irregularities that were ultimately the subject of the Restatement. Lead Plaintiff alleges that the Qiao Xing Defendants had full knowledge of the false financial statements by that date at the latest. One of the stated purposes of the IPO was to obtain funding so that QXM could repay loans to Qiao Xing. Lead Plaintiff alleges that because a restatement could jeopardize the amount of funding that could be obtained by the IPO, thereby putting the repayment in jeopardy, the Qiao Xing Defendants intentionally or recklessly delayed the issuance of the Restatement, with full knowledge of the falsity of its prior financial statements, until over two-and-a-half months after the IPO was completed. *Id.* at ¶ 14.

15.    Lead Plaintiff alleges that by publishing financial statements that both overvalued CECT and led to other issues that were the subject of the Restatement, Qiao Xing issued materially false and misleading statements to the investing public in 2003, 2004, and 2005, in violation of the Exchange Act. The Qiao Xing Defendants had knowledge of the events giving rise to the Restatement by at least the date of the IPO. Lead Plaintiff alleges that these misstatements caused the price of Qiao Xing common stock to be artificially inflated, and had the market known of the true financial condition of Qiao Xing at that time, Lead Plaintiff and the other Settlement Class Members would not have traded their Qiao Xing securities during the

Class Period at the artificially inflated prices at which they did, and would not have suffered

losses when the inflation was removed from the stock.  Hence, Lead Plaintiff alleges Settlement

Class Members were damaged when the stock price dropped on July 17, 2007.    *Id.* at ¶ 15.

16.    After consulting with the investigators and Plaintiffs' accounting expert Harris

Devor, Lead Counsel determined a viable claim could not be pled against Qiao Xing's auditor,

Grobstein, Horwath & Company LLP.

17.    Furthermore, Lead Plaintiff was also having difficulty tying knowledge of the

misstatements directly to Defendants, although one witness did state that the told certain

Defendants the financial statements were wrong.

## II.    The Proposed Settlement Is Fair And Reasonable

### A.    The Settlement Provides An Excellent Result For  Stockholders

18.    The Settlement was reached after a detailed factual and legal investigation of Qiao

Xing and the Individual Defendants, assisted by an accounting expert, a damages expert, and

three separate teams of investigators based both in the United States and abroad.  Thus, the

Settlement was based on extensive knowledge by Plaintiffs of the strengths and weaknesses of

their case.  Only after a detailed assessment of all of the risks of continued litigation did Lead

Counsel recommend the Settlement to Lead Plaintiff and the Court.

19.    Also, while Plaintiffs believe they have a strong case, both as to liability and

damages, there are always enormous legal and factual risks presented by continuing litigation.

Such issues include satisfying the loss causation requirement, establishing falsity and the

requisite degree of scienter for the misstatements alleged, and control person liability.  Settling

this case will avoid the uncertainty of the outcome of any motions for summary judgment, or at

trial or on appeal.  Indeed, if this Settlement is not approved, and if Defendants were thereafter to

prevail at trial (or on a motion for summary judgment), or on appeal, Plaintiffs would likely

recover nothing at all. Even if Plaintiffs could prevail on liability, they would still have to prove

and establish damages.

20. Nonetheless, if this litigation were to proceed, or should the Settlement not be

effectuated, the Court could deny class certification, or severely restrict the scope of the

approved class.

21. Also, delay, not just at the trial stage but through post-trial motions and the

appellate process, would cause Settlement Class members to wait years for any potential

recovery, further reducing its value.

**B.    The Litigation Posed Considerable Risks**

22. If the case were to progress further Plaintiff would face the following legal

hurdles: (1) difficulties in alleging and proving that Defendants delayed the restatement either

intentionally or recklessly, or with a motive to defraud investors; (2) difficulties in alleging and

proving Defendants' misconduct prior to the IPO; and (3) even assuming such conduct was

actionable, difficulties in showing that the conduct, and not other factors, caused a decline in

Qiao Xing's stock price. Defendants would argue, both at the pleading stage and at summary

judgment and/or trial, that (1) the restatement was not material, because Qiao Xing's stock price

did not drop when the various accounting irregularities that were ultimately the subject of the

restatement were revealed in QXM's registration statement, filed on April 17, 2007;

(2) the restatement was due to a disagreement between accounting firms and was not the result of

fraud, and (3) Qiao Xing's stock price dropped at the end of the Class Period because of news

unrelated to the restatement, including news of Qiao Xing's current results and future

projections. Such difficulties could lead to dismissal at the pleading stage, on summary

7

judgment, at trial, or on appeal.  If any of these risks factors caused the case to be dismissed, it is likely that the Settlement Class would recover significantly less than is being recovered under the terms of the Settlement, or even nothing.

23.    But for the Settlement, litigation at the pleading, class certification, and summary judgment stages was all but certain.  If Lead Plaintiff was to survive Defendants' motion(s) to dismiss, discovery would commence.  It is likely that discovery in this case would be both expensive and time consuming.  Most of the relevant documents are in Chinese and are located in China, as are many of the relevant witnesses.  Lead Counsel's investigators were met with skepticism and reluctance when conducting interviews with witnesses in China.  A trial would be costly, and involve the preparation of pre-trial and post-trial briefs, and lengthy and complicated expert discovery.  Experts would be expected to testify concerning such complex issues as the damages suffered by Lead Plaintiff and the Settlement Class and loss causation.  Even if Lead Plaintiff had prevailed at trial, post-judgment appeals were likely to be taken by Defendants.

24.    While companies in securities class actions are often covered by Directors and Officers ("D&O") Insurance, Qiao Xing's insurance carrier has raised issues as to applicability of coverage in this Action.  Accordingly, there was a increased likelihood that Qiao Xing, a company located in China with no assets in the United States, would have to pay most or all of any judgment or settlement, rather than an American based insurance carrier.

III.    **The Plan Of Allocation Is Fair And Reasonable**

25.    According to Lead Plaintiff's damages expert, Financial Markets Analysis, LLC ("FMA"), there were approximately 17 million damaged shares, held by hundreds, if not thousands, or shareholders.

26.    The best possible recovery in this case, according to FMA, is 3.3 million.  The

Settlement provides $2.4 million in cash; therefore, the Settlement represents approximately 73% of the aforementioned best possible recovery.

27.     Specifically, the Plan of Allocation provides recovery based on the decline in the price of Qiao Xing common stock from July 16, 2007, to July 17, 2007.  On July 17, 2007, Qiao Xing publicly revealed that it was restating its financials for 2003, 2004, and 2005.

28.     In response to this announcement, the price of Qiao Xing stock declined from $13.97 per share, the price of Qiao Xing common stock at the close of trading on July 16, 2007, to close at $11.04 per share (a 21% drop).

29.     FMA calculated that while the drop in Qiao Xing's stock price at the end of the Class Period was caused a loss of $50 million (17 million damaged shares multiplied by the $2.94 drop at the end of the Class Period), the Settlement Class Members suffered actionable damages (that can be tied to Defendants' alleged fraud) of, at most, $3.3 million.  Thus, FMA found that, at most, 6.6% of drop on July 17, 2007 was due was due to Defendants' alleged fraud.

30.     The Plan of Allocation provides a two-tiered structure.  The Plan of Allocation reflects the risk of pleading and proving the appropriate culpability against Defendants, which lessens for claims on trades made after April 17, 2007, when Defendants revealed, through QXM's IPO, the financial problems that became the subject of the restatement.  Lead Counsel estimates that, due to such risks, claims for Qiao Xing securities traded between April 17, 2007 and July 16, 2007 are at least twice as strong as claims for Qiao Xing securities traded between June 30, 2004 and April 16, 2007.  Therefore, under the Plan of Allocation, Settlement Class members who traded applicable Qiao Xing securities between April 17, 2007 and July 16, 2007 will receive a greater *pro rata* share of the Net Settlement Fund than Settlement Class Members

who traded applicable Qiao Xing securities between June 30, 2004 and April 16, 2007.

**III.    The Notice Is Fair And Reasonable**

31.    The parties have agreed upon the proposed Notice of Pendency of Proposed Class Action Settlement ("Notice") and Summary Notice of Pendency of and Proposed Settlement of Class Action Involving Qiao Xing Universal Telephone Inc. ("Summary Notice").  The proposed Notice describes in plain English the terms and operation of the Settlement, the considerations that caused Lead Plaintiff and Lead Counsel to conclude that the Settlement is fair and adequate, the maximum counsel fees that may be sought, the procedure for objecting to or seeking exclusion from the Settlement, and the date and place of the Fairness Hearing.  With the Court's approval, the Class Notice will be mailed to Settlement Class Members, and will also be published over the Internet, at both www.qiaoxingsecuritiessettlement.com and www.murrayfrank.com.  In addition, Summary Notice will be published over the BUSINESS WIRE, PRIMEZONE, or PR NEWSWIRE.

The foregoing information is true and correct.

Dated:  February 25, 2008                   _____/s/_____
                                              Gregory B. Linkh (glinkh@murrayfrank.com)

EXHIBIT 1

# MURRAY, FRANK & SAILER LLP
## ATTORNEYS AT LAW

## 275 MADISON AVENUE; SUITE 801
## NEW YORK, NEW YORK 10016

Telephone:        (212) 682-1818
U.S. Toll Free:   (800) 497-8076
Facsimile:        (212) 682-1892

info@murrayfrank.com

www.murrayfrank.com

MURRAY, FRANK & SAILER LLP concentrates its practice in class action litigation, particularly in cases involving federal securities law, federal antitrust law, ERISA, and state consumer protection law.

## SECURITIES FRAUD

MURRAY, FRANK & SAILER has been lead counsel, a member of the executive committee, or represented a class representative in successful securities actions throughout the United States, including the following:

*In re Royal Ahold Securities Litigation* (recovery of $1.1 billion); *In re Williams Sec. Litig.* ($311 million); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* ($125 million); *In re JWP Inc. Sec. Litig.* ($40 million); *In re Turkcell Iletisim Hizmetleri A.S. Sec. Litig.* ($19.2 million); *In re PictureTel Inc. Sec. Litig.* ($14 million); *In re Marion Merrell Dow Inc. Sec. Litig.* ($14 million); *LaVallie v. Owens-Corning Fiberglas Corp.* ($10 million); *In re USX Sec. Litig.* ($9 million); *Miller v. Bonmati* ($9.9 million); *Feiner v. SS&C Tech., Inc.* ($8.8 million); *In re ContiFinancial Sec. Litig.* ($5.5 million); *In re EIS Int'l Inc. Sec. Litig.* ($3.8 million); *In re Quintiles Transnational Sec. Litig.* ($3 million); *In re Ramp Corp. Sec. Litig.* ($2.075 million).

The firm is currently lead or co-lead counsel, a member of the executive committee, or represents a class representative in many cases, including the following:

*In re Xybernaut Corp. Securities MDL Litigation*; *The 60223 Trust v. Goldman Sachs & Co.*; *In re General Motors Corp. Sec. Litig.*; *In re Harley-Davidson, Inc. Sec. Litig.*; *In re Infineon Technologies AG Sec. Litig.*; *Lowry v. Andrx Corp.*; *In re Crompton Sec. Litig.*; *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*; *Brody v. Zix Corp.*; *In re Qiao Xing Universal Telephone Inc. Sec. Litig.*; *Steinberg v. Ericsson LM Telephone Co.*

MURRAY, FRANK & SAILER also represented institutional plaintiffs in individual actions against AOL Time Warner and Royal Dutch Petroleum for violations of the United States securities laws.

## ANTITRUST

MURRAY, FRANK & SAILER has represented plaintiffs in federal and state class actions arising out of antitrust law violations, including the *Bar-Bri, Infant Formula, Brand Name Pharmaceutical, Nasdaq, VISA/MasterCard, Playmobil, Disposable Contact Lens,* and *Time Warner* cases.

MURRAY, FRANK & SAILER is currently counsel in many cases involving Sherman Act violations including: *In re American Express Antitrust Litigation*; *In re Linens Antitrust Litig.*; *Schwartz v. The Thompson Corp.*; *In re Hydrogen Peroxide Antitrust Litig.*; *In re Air Cargo Carrier Antitrust Litig.*; *Slattery v. Apple Computer Inc.*; *Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*; *McDonough v. Toys "R" Us.*

In the *Playmobil* case, MURRAY, FRANK & SAILER was co-lead counsel, representing a class of purchasers of Playmobil products. MURRAY, FRANK & SAILER was successful in obtaining certification of a plaintiff class in an oft-cited opinion and settling the case on favorable terms to the class. The Court, at the fairness hearing, "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court." In the *Disposable Contact Lens* case, MURRAY, FRANK & SAILER represented a class of purchasers of disposable contact lenses in California, and eventually obtained reversal in the California appellate courts of a denial of class certification. In the *Time Warner* case, MURRAY, FRANK & SAILER was co-lead counsel, representing a class of subscribers of Time Warner's high speed internet service. MURRAY, FRANK & SAILER successfully overcame an arbitration clause and obtained favorable settlement for the class.

## CONSUMER PROTECTION

In the consumer protection area, MURRAY, FRANK & SAILER as lead counsel has represented consumers in class actions involving, *inter alia,* misleading uniform public statements concerning wrongful billing practices and poor service by wireless communications providers; wrongful billing practices by credit card companies, banks and retailers; mislabeling of imported olive oil; mislabeling of domestic pasta; brokerage fees imposed with no or insufficient notice; Medicaid overcharges; and faulty automobile seat heaters.

Among its cases of note, MURRAY, FRANK & SAILER recovered benefits worth $40 million in *Naevus Int'l v. AT&T Corp.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who subscribed to AT&T's Digital One Rate wireless service. In 2005, the firm settled with Volkswagen of America,

2

forcing a recall of all 2003 and 2004 Volkswagen Jettas for faulty automobile seat heaters.

In *Sclafani v. Barilla America, Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Barilla brand pasta, MURRAY, FRANK & SAILER successfully argued that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal.

Similarly, in *Lomenzo v. Bertolli USA Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Bertolli brand olive oil, MURRAY, FRANK & SAILER successfully argued that Bertolli's labeling misled consumers into believing the company's olive oil was Italian.

## ERISA

MURRAY, FRANK & SAILER is prosecuting several actions in federal court against employers on behalf of employees for employee investment fund mismanagement; knowingly offering, marketing, and selling improper investments to employees for their retirement accounts; and knowingly misrepresenting the prospects of the employees' company in order to sell company stock to them.

The firm is currently co-lead counsel in the *Winn-Dixie Stores, Inc. ERISA Litig.* and plaintiffs' class counsel in *In re AON ERISA Litig.*; *In re Cardinal Health, Inc. ERISA Litig.*.

## FIRM HIGHLIGHTS

MURRAY, FRANK & SAILER filed over 120 securities class actions in 2004 and over 100 cases in 2005. In Verteris's "Securities Class Action: Plaintiffs' Counsel Watch," Q2, 2005 Report, MURRAY, FRANK & SAILER was ranked fourth in "Plaintiffs' Counsel Litigation Activity Index" and "Plaintiffs' Counsel by Total Unique Actions," and fifth in "Plaintiffs' Counsel Based on Lead Plaintiff Appointments." In ISS's "Accountability Goes Global," May 2007 Report, MURRAY, FRANK & SAILER was ranked fifth in representing international lead plaintiff movants. MURRAY, FRANK & SAILER is also a member of the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT).

## MAJOR ONGOING CASES

*In re Qiao Xing Universal Telephone Inc. Securities Litigation* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors of Qiao Xing Universal Telephone securities;

*Brody v. Zix Corp.* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors of Zix Corp. securities;

*Lowry v. Andrx Corp.* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors of Andrx Corp. securities;

*In re Jabil Circuit, Inc. Derivative Litigation* – MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of Jabil Circuit arising out of backdated option grants;

*The Police and Fire Retirement System of the City of Detroit v. Jen-Hsun Huang* – MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of nVidia Corporation arising out of backdated option grants;

*Pedroli v. Bartek* – MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of Microtune, Inc. arising out of backdated option grants;

*In re Infineon Technologies A.G. Securities Litigation* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors of Infineon Technologies securities;

*Kosseff v. Ciocia, et al.* – MURRAY, FRANK & SAILER is lead counsel representing shareholders in a derivative action alleging breach of fiduciary duty.

*Scapini v. Argentina* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors who purchased government bonds from Argentina;

*60223 Trust v. Goldman Sachs & Co.* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors of Exodus Communications Inc. securities;

*In re General Motors Corp. Securities Litigation* – MURRAY, FRANK & SAILER was lead counsel and currently represents a class of investors in General Motors securities;

*Bennett v. Pops* – MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of Alkermes Inc. arising out of backdated option grants;

*Meissner v. Bailey* – MURRAY, FRANK & SAILER is co-lead counsel in a derivative action for the benefit of PMC-Sierra, Inc. arising out of backdated option grants;

*In re Crompton Corp. Securities Litigation* – MURRAY, FRANK & SAILER is co-lead counsel representing a class of investors in Crompton Corp. securities;

4

*In re Hartford Mutual Funds Fee Litigation* – MURRAY, FRANK & SAILER is an executive committee member representing mutual fund purchasers who paid excessive fund fees;

*Steinberg v. Ericsson LM Telephone Co.* – MURRAY, FRANK & SAILER is lead counsel representing a class of investors of Ericsson LM Telephone Co. securities.

## JUDICIAL COMMENDATIONS

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D 156, 164, 174 (S.D.N.Y. 2007) (commending MURRAY, FRANK & SAILER's "skillful and zealous representation over a six-year period," and finding the "high quality of representation provided by Lead Counsel is evident from the extensive record of this case").

*In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y. 2006), in which the Court, before appointing the firm lead counsel, stated: "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you."

*Miller v. Bonmati,* Del. Ch., C.A. No. 15849, Lamb, V.C. (March 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."

*Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) in which Judge Robert Sweet stated plaintiffs' counsel were "skilled advocates and negotiators."

*In re EIS International, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in which the Court stated: "I wanted to compliment counsel . . . We have been together quite a long time in the case and I appreciate all the fine legal work that you've done."

*Adair v. Microfield Graphics, Inc.* (D. Or. 1998), in a case that recovered 47% of estimated damages, the Court noted "Plaintiff's counsel have exhibited a high quality of work in prosecuting this action."

*Steffen v. Playmobil USA, Inc.*, Civ No. 95-2896 (E.D.N.Y.), in which the Court "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court."

*Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), in which the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

## PRECEDENT SETTING DECISIONS

In *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, 6 Mass. L. Rptr. 367 (Mass. Super. Jan 28, 1997), on a case of first impression, the Superior Court of Massachusetts applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.

In *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), MURRAY, FRANK & SAILER successfully argued on a case of first impression in the District of Rhode Island for the pleading standard for claims against an auditor under the Private Securities Litigation Reform Act of 1995.

In *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998),

MURRAY, FRANK & SAILER prevailed on an issue of first impression concerning the liability of a qualified independent underwriter for an initial public offering.

In *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), MURRAY, FRANK & SAILER prevailed on an issue of first impression in the Southern District of New York, successfully arguing that standing under the Securities Act of 1933 was not limited to buyers who purchased directly on an initial public offering. The opinion was subsequently cited in decisions and secondary sources over 70 times.

## THE PARTNERS

**BRIAN MURRAY**, a partner, was admitted to the bars of Connecticut in 1990, New York and the United States District Courts for the Southern and Eastern Districts of New York in 1991, the Second Circuit in 1997, the First and Fifth Circuits in 2000, and the Ninth Circuit in 2002. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude*, from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the ST. JOHN'S LAW REVIEW. Mr. Murray co-wrote: *The Proportionate Trading Model: Real Science or Junk Science?*, 52 CLEVELAND ST. L. REV. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 BUFFALO L. REV. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 BAYLOR L. REV. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness*, 27 NEW ENGLAND J. ON CIVIL AND CRIMINAL CONFINEMENT 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba*, 20 MARYLAND J. OF INT'L L. AND TRADE 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach*, 23 U. DAYTON L. REV. 316 (1997); *Loss Causation Pleading Standard*, NEW YORK LAW JOURNAL (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery*, NEW YORK LAW JOURNAL (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004). He also authored *Lifting the PSLRA "Automatic Stay" of Discovery*, 80 N. DAK. L. REV. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933*, 73 ST. JOHN'S L. REV. 633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers*, NEW YORK LAW JOURNAL (Sept. 24, 1998); and Comment, Weissmann v. Freeman: *The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors*, 63 ST. JOHN'S L. REV. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found

for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4ᵗʰ Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Recreation for Garden City (2001-2002); Commissioner of Police for Garden City (2000-2001); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-present; Member, Federal Bar Counsel, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe on the topic of class actions.

**MARVIN L. FRANK**, the managing partner, was admitted to the bars of New York, New Jersey, and the United States District Court for the District of New Jersey in 1991, the District of Nebraska in 2005, the United States District Courts for the Southern and Eastern Districts of New York in 1992, the Second Circuit in 1998, the Seventh Circuit in 1999, the United States Supreme Court in 2004, the Eastern District of Michigan in 2006, the Northern District of Texas in 2006, and the Western District of New York in 2008. Mr. Frank graduated with a Bachelor of Arts degree from The City College of New York in 1969, a Master of business Administration degree from Bernard M. Baruch College in 1974, and received his Juris Doctor degree, *magna cum laude*, from New York Law School in 1991. At New York Law School, he received the Kaplun Foundation Award For Academic Excellence.

Mr. Frank's major cases include *In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y.), in which the Court, before appointing the firm lead counsel, stated "we know Mr. Frank very well, so they are both esteemed and experienced attorneys

in these matters, and I don't think anybody could go wrong with either one of them to be honest with you"; *Sclafani v. Barilla America, Inc.*, 2004-03542 (N.Y. App. Div.), in which Mr. Frank successfully argued before the Supreme Court's Appellate Division that General Business Law § 349(d) did not establish a complete defense to a plaintiff's allegation that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal; *Miller v. Bonmati,* Del. Ch., C.A. No. 15849 (Lamb, V.C.) (Mar. 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel.  They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."; *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) ($40 million); *In re Marion Merrell Dow Inc. Sec. Litig.* (W.D. Mo.) ($14 million); *In re PictureTel Inc. Sec. Litig.* (D. Mass) ($14 million); *In re ContiFinancial Sec. Litig.* (S.D.N.Y.) ($5.5 million); *In re Quintiles Transnational Sec. Litig.* (M.D.N.C.) ($3 million).

Mr. Frank is the firm's representative on the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT).  He is also Vice President of the Institute for Law and Economic Policy (ILEP), a public policy research and educational foundation established to preserve, study, and enhance access to the civil justice system by shareholders and consumers and is Vice President of the Emerald Green Property Owners Association in Rock Hill, New York.

Mr. Frank co-wrote *Staying Derivative Actions Pursuant to PSLRA and SLUSA*, NEW YORK LAW JOURNAL (Oct. 21, 2005) and the SECURITIES REFORM ACT LITIGATION REPORTER, Vol. 20, No. 3 (Dec. 2005).  Mr. Frank has been a panelist at the American Banker's Association Operations Conference for Securities, Brokerage & Trust in Memphis, Tennessee; a panelist at the Magenta One Conference for Securities and Trust on the Isle of Jersey, United Kingdom; and a panelist at the Global Pensions' Conference on Shareholder Responsibility and Class Action Law in London.

JACQUELINE SAILER, a partner, was admitted to the bars of Delaware in 1990, the United States District Court for the District of Delaware in 1991, New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996, the United States Court of Appeals for the Sixth Circuit and the United States District Court for the District of Colorado in 1997, the United States Court of Appeals for the Second Circuit in 1998, and the United States Supreme Court in 2005.  She graduated with honors from Smith College with a Bachelor of Arts degree in 1985. She received a Juris Doctor degree from St. John's University School of Law in 1990. Ms. Sailer is fluent in French.  She is a member of the Federal Bar Council; the New

York State Bar Association; and the Association of the Bar for the City of New York, including the Sex and Law Committee, 1996-1999.  Ms. Sailer is the co-author of *Loss Causation Pleading Standards*, NEW YORK LAW JOURNAL (Feb. 25, 2005).

Among the major cases in which Ms. Sailer has served as Lead or Co-Lead Counsel, Ms. Sailer served as Co-Chair of the Executive Committee of Lead Counsel in *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* (S.D.N.Y.), in which $125 million was recovered on behalf of investors in settlement of consumer claims of misrepresentations in published analyst reports.  In approving that settlement, the court commended MURRAY, FRANK & SAILER's "skillful and zealous representation over a six-year period," and found that the "high quality of representation provided by Lead Counsel is evident from the extensive record of this case."  *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 246 F.R.D 156, 164, 174 (S.D.N.Y. 2007).  Ms. Sailer was also responsible for the recovery of $40 million worth of benefits for a plaintiff class of wireless consumers in a state consumer class action, *Naevus Int'l, Inc. v. AT&T Corp.*  Her major reported cases as lead counsel include *Naevus Intl., Inc. v. AT&T Corp.*, 713 N.Y.S.2d 642 (Sup. Ct. New York Co. 2000) (establishing limits on the reach of the Federal Communications Act on state consumer fraud claims), in which she successfully argued against a motion to dismiss on behalf of a class of current and former subscribers to AT&T's wireless service; and a federal securities class action: *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 999 F. Supp. 725 (S.D.N.Y. 1998) (denying underwriters' motion to dismiss securities fraud claims); *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001) (addressing the pleading standard for fraud under the Private Securities Litigation Reform Act of 1995 for claims against an auditor, an issue of first impression in the District of Rhode Island), in which she successfully argued and opposed an auditor's motion to dismiss claims under Section 10(b) of the Securities Exchange Act of 1934.  At the fairness hearing in *Metro Global*, the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

Ms. Sailer's trial experience includes the prosecution of a breach of contract case that was tried successfully before a jury in the District of Delaware.

Currently Ms. Sailer's major case responsibilities include serving as lead counsel in *Lowry v. Andrx Corp.* (S.D. Fla.) (securities class action), *60223 Trust v. Goldman Sachs & Co.* (S.D.N.Y.) (securities class action), and *In re Xybernaut Corp. Securities Litigation* (E.D. Va.) (securities class action).

LAWRENCE D. MCCABE, a partner, was admitted to the bars of New York and the United States District Court for the Southern District of New York in 1995, the United States District Court for the Eastern District of New York in 2001, the Eastern District of Michigan in 2006, the Northern District of Texas in 2006, and the Western District of New York in 2008. Mr. McCabe received a Bachelor of Arts degree, *cum laude,* from Iona College in 1984. He received his Juris Doctor degree, *cum laude*, from Fordham University School of Law in 1994. At Fordham, he was a Notes & Articles editor of the Law Review. Upon graduation from Fordham, he was admitted into the Order of the Coif.

Mr. McCabe focuses his practice primarily on class actions on behalf of defrauded investors, derivative actions on behalf of corporate shareholders, as well as complex commercial litigation. His extensive securities fraud litigation experience includes significant settlements for class members in *In re Computer Associates 2002 Class Action Sec. Litig.* (common stock valued at approximately $165 million); *Scheiner v. i2 Tech., Inc.* (N.D. Tex.) ($87.75 million); *In Re Lason, Inc. Sec. Litig.* (E.D. Mich.) ($12.68 million); *In re Berkshire Realty Co. Shareholder Litig.* (Del. Ch.) ($6.25 million); *Dorchester Investors v. Peak TrENDS Trust* (S.D.N.Y.) ($4 million).

Upon graduation from college, Mr. McCabe worked as a securities trader, specializing in NASDAQ securities. After law school, Mr. McCabe practiced commercial litigation with Skadden, Arps, Slate, Meagher & Flom LLP. Mr. McCabe has been an active member of the plaintiffs bar since 2002 when he became associated with Milberg Weiss Hynes & Lerach LLP and later with Lerach Coughlin Stoia Geller Rudman & Robbins LLP.

## SPECIAL COUNSEL

**RANDALL H. STEINMEYER**, Special Counsel, is admitted to the bars of Minnesota and the United States District Court for the District of Minnesota. He earned his Bachelor of Science degree from the University of Southern California in 1993, and his Juris Doctor degree, *cum laude*, from Hamline University School of Law in 1996, where he was a member of the Hamline Law Review. He is the author of *The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings*, 281 Practicing Law Institute (1998). Prior to joining MURRAY, FRANK & SAILER Mr. Steinmeyer was a partner with Coughlin Stoia Geller Rudman & Robbins LLP and Milberg Weiss LLP. Before that, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a former securities broker and held Series 7 and Series 63 licenses with the National Association of Securities Dealers.

In 2003, Mr. Steinmeyer was a guest lecturer at Oxford University on the impact of corporate and broker dealer fraud on the investment community. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors.

## THE ASSOCIATES

GREGORY B. LINKH, an associate, was admitted to the bars New York and the United States District Court for the Southern and Eastern Districts of New York in 2000. He graduated from the State University of New York at Binghamton with a Bachelor of Arts degree in 1996 and received a Juris Doctor degree from the University of Michigan in 1999. Mr. Linkh is the co-author of *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004); *Staying Derivative Action Pursuant to PSLRA and SLUSA*, NEW YORK LAW JOURNAL (Oct. 21, 2005) and the SECURITIES REFORM ACT LITIGATION REPORTER, Vol. 20, No. 3 (Dec. 2005). Prior to joining MURRAY, FRANK & SAILER, Mr. Linkh was associated with the law firms Dewey Ballantine LLP and Pomerantz Haudek Block Grossman & Gross LLP.

THOMAS J. KENNEDY, an associate, was admitted to the bars of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996. He received a Juris Doctor degree in 1995 from St. John's University School of Law and a Bachelor of Science in Accounting from Miami University in 1992. Mr. Kennedy passed the Certified Public Accounting exam in 1998.

BRIDGET V. HAMILL, an associate, was admitted to the bars of New Jersey in 2001 and New York in 2005. She received a Juris Doctor degree in 2000 from Rutgers School of Law and a Bachelor of Arts from Douglass College of Rutgers University, where she was one of twelve members of her graduating class in the Douglass Scholars Academic Scholarship Program, in 1985. Her primary area of practice is securities class action. Prior to joining MURRAY, FRANK & SAILER, Ms. Hamill was law clerk to United States Magistrate Judge Mark Falk in the District of New Jersey. While attending law school, she was an employee stock options/stock purchase plan administrator in New York City. Prior to entering law school, Ms. Hamill was a health care information systems manager.

BRIAN BROOKS, an associate, was admitted to the bar Louisiana in 2003, New York in 2006, and the United States District Court for the Southern District of New York in 2006. Mr. Brooks received a Bachelor of Arts from Northwestern State University in 1998 and a Juris Doctor degree from Washington and Lee University in 2002. Prior to joining MURRAY, FRANK & SAILER he was associated with the firm of Percy, Smith & Foote, where his primary area of practice was antitrust law.

OLGA FORT, an associate, was admitted to the New York bar in 2005. She graduated from Fordham University School of Law with a Master of Laws degree in Banking, Corporate and Finance Law in 2004. She received a Juris Doctor degree in 1998 from the Moscow Institute of Economics and Law and a Bachelor of Arts degree in Commerce and Marketing from Moscow University for the Humanities in 1995. She attended the Russian State Institute of Intellectual Property from 1998 to 2000. She authored "International Exhaustion of Intellectual Property Rights," PATENT AFFAIRS, #8, Moscow, 2000 and Exhaustion of Intellectual Property Rights, RUSSIAN STATE INSTITUTE OF INTELLECTUAL PROPERTY JOURNAL, Moscow, 1999 (Thesis for and Presentation at the Conference on Legal Protection, Commercial Use and Problems associated with Intellectual Property organized by the Russian State Agency on Patents and Trademarks, December 16-17, 1999). While attending law school, Mrs. Fort clerked for a Judge in Moscow Military Court. She worked as a legal counsel for the Savings Bank of the Russian Federation where she specialized in banking, finance, and corporate law. Prior to joining MURRAY, FRANK & SAILER, Mrs. Fort was associated with the Law Offices of Peter E. Finning, where her primary area of practice was insurance defense litigation. She is a member of the American Bar Association and New York State Bar Association.

SCOTT H. LEVY, an associate, was admitted to the New York bar in 2006 and the United States District Courts for the Southern and Eastern Districts of New York in 2007. He received a Bachelor of Arts degree in History from the University of California at Berkeley in 2001 and a Juris Doctor degree from the Fordham University School of Law in 2005. At Fordham, he was a staff member of the FORDHAM URBAN LAW JOURNAL.

EVA HROMADKOVA, an associate, was admitted to the New York bar in 2005. She received an Master of Laws degree in Corporate Law from New York University School of Law in 2004 and a Master's degree from Comenius University, Slovakia in 2001.

14

<u>OF COUNSEL</u>

**DONALD J. WALLACE** was admitted to the New York bar in 1992. He earned a B.S. from the New York Institute of Technology in 1987 and a Juris Doctor degree from St. John's University School of Law in 1991. While at St. John's, he was a member of the Law Review and was awarded the American Jurisprudence Award for Contracts I. He co-authored *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 BAYLOR L. REV. 783 (2001); *Jehovah's Witnesses and the Refusal of Blood Transfusions: A Balance of Interests*, 33 CATHOLIC LAWYER 361 (1991). Prior to entering law school, Mr. Wallace was a licensed stockbroker in Garden City, New York.

**ANGELA M. FINLAY** was admitted to the Washington State bar in 2000. She received a Juris Doctor degree from New York Law School in 1999 and a Bachelor of Arts from Loyola College in Maryland in 1991. She holds a Certificate in Advanced Accounting from the University of Washington Business School.

**CHARLES CLAY CARROLL** was admitted to the bars of Alabama and the United States District Courts for the Northern, Middle, and Southern Districts of Alabama in 2003, and the bar of Kentucky in 2005, the United States Court of Appeals for the Sixth Circuit in 2007, the United States Court of Appeals for the Eleventh Circuit in 2007, the United States Court of Appeals for the Federal Circuit in 2007, the United States Court of International Trade in 2007, and the Supreme Court of the United States in 2007. He earned his Juris Doctor degree in 2002 from the University of Alabama, where he received the Balch & Bingham/Harold A. Bowron Award for Academic Achievement in Labor and Employment Law. After graduating from the University of Alabama with Bachelor of Arts degrees in Political Economics (1994) and Geography (1995), Mr. Carroll earned graduate degrees in International Business Management from Schiller University and Heidelberg University in Germany in 1996; Public Administration from the University of Alabama in 1998; and Mediation and Conflict Resolution from Erasmus University in The Netherlands in 1999.

**NEIL GANDHI** was admitted to the bars of New Jersey in 2005 and New York in 2006. He received a Bachelor of Arts degree in Economics and History from New York University in 2001 and a Juris Doctor degree from Fordham Law School in 2005. At Fordham, he was an associate editor of the Fordham Intellectual Property, Media, and Entertainment Law Journal. While in law school, Mr. Gandhi interned at the New York Stock Exchange.

**KEITH E. GITMAN** was admitted to the Florida bar in 2007. He received a Juris Doctor degree from Brooklyn Law School in 2003 and a Bachelor of Arts degree in Policy Studies, with a concentration in Society and the Legal System, from the Maxwell School of Citizenship and Public Affairs at Syracuse University in 1999.

**CHLOE MURPHY** was admitted to the New York bar in 2006. She received a Juris Doctor degree from New York Law School in 2004 and a Bachelor of Arts degree in French from Columbia University in 1982. Ms. Murphy is fluent in French.

16

## <u>DECLARATION OF SERVICE</u>

I am an attorney admitted to practice in this district.  I hereby certify, under penalty of perjury, that on this 25th day of February, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below by causing a true copy thereof to be delivered by both e-mail and hand overnight mail:

Jack C. Auspitz (jauspitz@mofo.com)
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

**Counsel for Qiao Xing and the
Individual Defendants**

Lawrence Steckman
(lsteckman@lskdnylaw.com)
LESTER SCHWAB KATZ
 & DWYER, LLP
120 Broadway
New York, New York  10271
Telephone:  (212) 964-6611
Facsimile:  (212) 267-5916

**Counsel for Grobstein, Horwath &
Company LLP**

_____/s/_____
Gregory B. Linkh (glinkh@murrayfrank.com)