# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE QIAO XING<br>SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions | MASTER FILE<br>07-CIV-7097 (DLC)<br><br>**"ECF" Case** |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION AND FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION

**Murray, Frank & Sailer LLP**
**275 Madison Avenue, Suite 801**
**New York, New York 10016**
**Tel: (212) 682-1818**
**Fax: (212) 682-1892**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

PROCEDURAL HISTORY ............................................................................................... 2

FACTUAL ALLEGATIONS ............................................................................................ 3

ARGUMENT ................................................................................................................ 6

> **POINT I**
> THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................................... 6

>     **A.   All The Requirements For Class Certification Have Been Met** .............................. 6

>         **1.   Rule 23 (a)(1): Numerosity** .......................................................... 6

>         **2.   Rule 23(a)(2): Commonality** ........................................................ 7

>         **3.   Rule 23(a)(3): Typicality** ............................................................ 7

>         **4.   Rule 23 (a)(4):  Adequacy of Representation** ................................. 8

>         **5.   Rule 23(b)(3): Predominance** ...................................................... 8

>         **6.   Rule 23 (b)(3):  Superiority** ......................................................... 9

> **POINT II**
> THE SETTLEMENT SHOULD BE APPROVED UNDER RULE 23(E)................................. 9

>     **A.   The Settlement Was The Result of Arm's-Length Negotiations** ........................... 10

>     **B.   The Nine *Grinnell* Factors Also Support Settlement Of This Action**.................... 11

>         **1.   The Complexity, Expense And Likely Duration Of The Litigation** ................. 11

>         **2.   The Favorable Reaction Of The Settlement Class** ............................... 13

>         **3.   The Stage Of Proceedings And The Amount Of Discovery Completed** ........... 13

>         **4.   The Risks Of Establishing Liability** ............................................... 14

>         **5.   The Risks Of Establishing Damages** .............................................. 16

>         **6.   The Risks Of Obtaining And
>             Maintaining The Class Action Through Trial** ................................... 17

**7.**    **The Ability Of Defendants To Withstand A Greater Judgment** ........................ 18

**8.**    **The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery** ..................................................... 18

**9.**    **The Range of Reasonableness of the Settlement Fund In Light of the Attendant Risks of Litigation** ...................................................... 20

**POINT III**
**THE PLAN OF ALLOCATION IS FAIR AND REASONABLE** ........................................................ 21

**CONCLUSION** ................................................................................................................. 23

## TABLE OF AUTHORITIES

### Statutes and Rules

Fed. R. Civ. P. 23....................................................................................................*passim*

Securities Exchange Act of 1934, Section 10(b) ...................................................... 2, 20

Securities Exchange Act of 1934, Section 20(a) ........................................................ 2

### Cases

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ................................................................................ 21

*AUSA Life Ins. Co. v. Ernst & Young*,
  206 F.3d 202 (2d Cir. 2000)................................................................................... 20

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)...................................................................................... 8

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001)................................................................................... 10

*Bentley v. Legent Corp.*,
  849 F. Supp. 429 (E.D. Va. 1994),
  *aff'd sub nom. Herman v. Legent Corp.*,
  No. 94-1445, 1995 WL 115879 (4th Cir. March 20, 1995).................................... 20

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................... 11, 13, 19, 21

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) ............................................................................. 7

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................................... 11

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006).................................................................................... 6

*Dura Pharm., Inc. v. Broudo,*
  544 U.S. 336 (2005) ............................................................................................... 22

*Eisenstadt v. Centel Corp.,*
  113 F.3d 738 (7th Cir. 1997) ................................................................................. 20

*Evans v. Jeff D.,*
  475 U.S. 717 (1986) ............................................................................................... 10

*Frank v. Eastman Kodak Co.,*
  228 F.R.D 174 (W.D.N.Y. 2005) ........................................................................... 19

*Green v. Wolf Corp.,*
  406 F.2d 291 (2d Cir. 1968) ..................................................................................... 9

*In re Acceptance Ins. Cos. Sec. Litig.,*
  423 F.3d 899 (8th Cir. 2005) ................................................................................. 20

*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................... 12, 13, 15

*In re AOL Time Warner ERISA Litig.,*
  No. 02 Civ. 8853 (SWK), 2006 WL 2789862 (S.D.N.Y. Sept. 27, 2006) .............. 13

*In re Austrian and German Bank Holocaust Litig.,*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................. 11, 13

*In re Comverse Tech. Inc. Sec. Litig.,*
  No. 06-CV1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. March 2, 2007) ......... 22

*In re Gilat Satellite Networks, Ltd.,*
  No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ...... 14

*In re Global Crossing Sec. and ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................... 10, 11, 14, 19

*In re Indep. Energy Hldgs. PLC Sec. Litig.,*
  No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ......................... 12

*In re Initial Public Offering Sec. Litig,*
  471 F.3d 24 (2d Cir. 2006) ..................................................................................... 17

*In re JDS Uniphase Securities Litigation.,*
  02cv1486 (EDL) (N.D. Cal.) ................................................................................... 20

*In re Lease Oil Antitrust Litig.*,
   186 F.R.D. 403 (S.D. Tex. 1999) .................................................................................... 19

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................... 17

*In re Mego Financial Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................... 14

*In re Merrill Lynch & Co. Research Reports. Litig.*,
   No. 02 MDL 1484(JFK), 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) ............................... 21

*In re Merrill Lynch Tyco Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ..................................................................................... 21

*In re Oxford Health Plans, Inc.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................................................... 7

*In re Prudential Sec. Litig.*,
   MDL No. 1005, M-21-67, 1995 WL 798907 (S.D.N.Y. Nov. 20, 1995) ............................... 10

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) .............................................................................. 19

*In re Tyco Int'l*,
   No. 02-MD-1335 (PB), 2007 WL 4462593 (D.N.H. Dec. 19, 2007) ..................................... 19

*In re Vivendi Universal, S.A.*,
   No. 02 Civ. 5571, 2007 WL 1490466 (S.D.N.Y. May 21, 2007) ............................................ 8

*In re Warner Comms. Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)*,
   aff'd*, 798 F.2d 35 (2d Cir. 1986) ............................................................................. 10, 17

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................................... 10, 15

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994) ......................................................................................... 21

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ......................................................................................... 10

*Klein v. PDG Remediation, Inc.*,
   No. 95-cv-4954, 1999 WL 38179 (S.D.N.Y. Jan. 28, 1999) ............................................... 11

*Koppel v. 4987 Corp.*,
191 F.R.D. 360 (S.D.N.Y. 2000) ................................................................................. 6

*Kurzweil v. Phillip Morris Co, Inc.*,
No. 94 Civ. 2373 (MBM), 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999)............................... 19

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................... 9, 13, 15

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972)...................................................................................... 19

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
487 F.3d 261 (5th Cir. 2007) ................................................................................... 18

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 21

*Slomovics v. All for a Dollar, Inc.*,
906 F. Supp. 146 (E.D.N.Y. 1995) ........................................................................... 12

*Spann v. AOL Time Warner, Inc.*,
No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)................................................. 9

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................... 17, 18, 19

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...................................... 6

*Thompson v. Metro. Life Ins. Co*,
216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................................. 11

*Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................................ 10

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982),
*cert. denied*, 464 U.S. 818 (1983) ............................................................................. 9

## Miscellaneous

Laura E. Simmons and Ellen M. Ryan, *Securities Class Action Settlements, 2006 Review and Analysis* (available at http://securities.stanford.edu/Settlements/REVIEW_1995-2006/Settlements_Through_12_2006.pdf, last visited June 30, 2008 ...................................... 19

Court-appointed lead plaintiff PELO, a.s. ("Lead Plaintiff") respectfully seeks final approval, pursuant to Rule 23 (e) of the Federal Rules of Civil Procedure (the "Rules"), of the proposed class action settlement ("Settlement")[1] entered into with defendants Qiao Xing, Rui Lin Wu, Albert Leung, Zhi Yang Wu, Sonny Kwok Wing Hung, Ze Yun Mu, Yi Hong Zhang, (the "Qiao Xing Defendants"), and Grobstein, Horwath & Company LLP (with the Qiao Xing Defendants, collectively, "Defendants"), which fully resolves all claims asserted in this consolidated class action (the "Action").

## PRELIMINARY STATEMENT

The proposed Settlement of the Action for $2.4 million in cash plus interest (the "Settlement Fund") reached under the auspices of Judge Henry Pitman, acting as mediator, represents an excellent result in light of the uncertainties of ultimately prevailing on the merits, which include defenses Defendants have and would have continued to advance, both in this Court and on appeal, regarding liability and damages.

At the time the Settlement was reached, Lead Plaintiff had a full understanding of the strengths and weaknesses of its claims and the defenses thereto, in part due to a comprehensive factual and legal investigation. Lead Plaintiff and Lead Counsel have evaluated the benefit to the Settlement Class of entering into the Settlement at this time, compared to the risks and uncertainties of continuing the litigation, including (1) difficulties in alleging and proving Defendants' scienter with regard to their alleged misstatements concerning Qiao Xing's financial statements (which were eventually restated); and (2) even assuming such conduct was actionable, difficulties in showing that the alleged misconduct, and not other factors, caused a decline in Qiao Xing's stock price. Furthermore, even if Lead Plaintiff was to prevail on its

---

[1] The complete terms of the proposed Settlement are set forth in the Stipulation of Settlement (the "Stipulation") dated February 25, 2008.

claims, it may prove difficult to collect any judgment from defendant Qiao Xing, a company headquartered in China[2] that does no substantial business, and has no assets, in the United States.

For these reasons, Lead Plaintiff submits that this Settlement should be approved, and the Settlement Class certified for purposes of this Settlement.

## PROCEDURAL HISTORY

On July 17, 2007, Qiao Xing announced that it was restating its financial statements for the years 2003, 2004, and 2005. *See* Declaration of Brian P. Murray, dated June 30, 2008 ("Murray Declaration" or "Murray Decl.") at ¶ 3. As a result of this announcement, beginning on August 9, 2007, five proposed class actions were filed in the United States District Court for the Southern District of New York, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). *Id.* at ¶ 4. These cases were assigned to this Court. In orders dated November 1, 2007 [Dkt. Nos. 26 and 27], the Court: (1) consolidated the five actions under the caption In re Qiao Xing Securities Litigation, No. 07 Civ. 7097 (DLC); (2) appointed PELO, a.s. as Lead Plaintiff in the Action; and (3) approved Lead Plaintiff's selection of Murray, Frank & Sailer LLP as Lead Counsel. *Id.* at ¶ 5.

Thereafter, the Court ordered the parties to mediate the case before Magistrate Judge Henry Pitman. At a mediation held on January 10, 2008, the parties engaged in intensive negotiations. At the conclusion of the mediation, Judge Pitman recommended to the parties that the case settle for $2.4 million. Upon further consideration, the parties agreed to settle the case for that amount. *Id.* at ¶ 6. The Court had previously ordered that Lead Plaintiff file its consolidated amended complaint on or before February 1, 2008. The Court was given notice of

---

[2] "China" refers to the "People's Republic of China" as opposed to the "Republic of China" (Taiwan).

the Settlement on January 17, 2008, and as a result the amended complaint was not filed. *Id.* at ¶ 7. The parties entered into a Stipulation of Settlement on February 25, 2008. *Id.* at ¶ 8.

On April 2, 2008, the Court entered an order preliminarily approving the Settlement [Dkt. No. 42]. *Id.* at ¶ 9. On April 11, 2008, the Court-appointed claims administrator began mailing of the Notice of Pendency of Proposed Settlement of Class Action ("Notice"), which informed members of the Settlement Class ("Settlement Class Members") of the Settlement and their legal rights and options. *Id.* at ¶ 10. On April 25, 2008, the claims administrator caused to be published, over PR NEWSWIRE, a Summary Notice of Pendency of Proposed Settlement of Class Action. *Id.* at ¶ 12. On June 16, 2008, the deadline passed for individuals to seek exclusion from the Settlement Class. On June 20, 2008, the deadline passed to object to the Settlement. These dates have passed, and as of the filing of this brief, no objections or exclusions have been received by Lead Counsel or filed with the Court. *Id.* at ¶ 13.

Although this case was settled before Lead Plaintiff filed an amended complaint, Lead Counsel conducted a detailed factual and legal investigation of the claims asserted, assisted by an accounting expert, a damages expert, and three separate teams of investigators based both in the United States and in Asia. *Id.* at ¶¶ 32-34. Lead Plaintiff entered into the Settlement on the basis of that investigation.

### FACTUAL ALLEGATIONS[3]

During the Class Period, Qiao Xing filed Form 20-F Annual Reports ("Form 20-F") with the United States Securities and Exchange Commission ("SEC") for the fiscal years 2003, 2004, and 2005. Each Form 20-F detailed Qiao Xing's net income, net sales, and total assets for that fiscal year and previous fiscal years. Attached to the Forms 20-F were certifications provided by

---

[3] While Lead Plaintiff never filed an amended complaint, the allegations below would form the basis of such a complaint.

defendants Wu and/or Leung, pursuant to the Sarbanes-Oxley Act, which represented that the report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ." During the Class Period, Qiao Xing also filed several Form 14-A Proxy Statements with the SEC which provided similar information regarding Qiao Xing's net income, net sales, and total assets for fiscal years 2003, 2004, and/or 2005. Murray Decl., at ¶ 14.

Qiao Xing was the owner of its subsidiary Qiao Xing Mobile ("QXM"). QXM, in turn, acquired a 90% share in its subsidiary CECT from 2003 to 2005. CECT's value was reflected on QXM's balance sheets and financial statements, and QXM's value in turn was reflected on Qiao Xing's balance sheets and financial statements. An incorrect valuation of CECT would therefore have an effect on Qiao Xing's financial statements. Qiao Xing's financial statements during the Class Period were audited by Grobstein, Horwath & Company LLP, which certified that the financial statements in each Form 20-F "present[ed] fairly, in all material respects, the consolidated financial position of Qiao Xing Universal Telephone, Inc. and Subsidiaries," and that the financial statements were "in conformity with accounting principles generally accepted in the United States of America." Murray Decl., at ¶¶ 15-16.

In May 2007, QXM conducted an initial public offering ("IPO"). QXM's registration statement, first filed on April 17, 2007, disclosed material weaknesses and significant deficiencies in QXM's internal controls over financial reporting. The main material weakness primarily related to a lack of effective controls over the financial reporting process that contributed to the following individual material weaknesses: (1) ineffective controls over the accounting for the acquisition of QXM's initial 65% equity interest in CECT in 2003 and the acquisition of an additional 25% equity interest in 2005; (2) ineffective controls over the

completeness, accuracy, and presentation and disclosure of QXM's revenue from technical services and the sale of co-operative products; and (3) ineffective controls over the accuracy and presentation and disclosure of deferred taxes.  This registration statement provided revised figures for QXM for revenue, net income, total assets, and net assets for the years 2004 and 2005.  Murray Decl., at ¶ 17.

On July 17, 2007, before the market opened, Qiao Xing announced that "it filed with [the] SEC a Form 20-F to release its 2006 annual report and to restate its financial data for the years 2005, 2004 and 2003" (the "Restatement").  The Restatement disclosed that the assumptions used to value CECT were being reassessed, in accordance with the disclosure made in QXM's registration statement. The Restatement further disclosed (1) the incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent" and (2) the incorrect recognition of losses regarding an equity investment.  The latter two matters are unrelated to the disclosures made in QXM's registration statement.  As a result of the Restatement, Qiao Xing's net income dropped from $3.024 million to $187,000 (a 94% drop) in 2004, and from $32.874 million to $31.987 million in 2005 (a 1.5% drop), and the net loss in 2003 increased from $1.028 million to $3.175 million (a 310% increase).   The Restatement also impacted reported net sales and total assets.   Murray Decl., at ¶¶ 18-19.

Qiao Xing's July 17, 2007 announcement and 2006 Form 20-F also contained other negative news, unrelated to the Restatement, concerning Qiao Xing's current results and future projections.  The price of Qiao Xing common stock closed at $11.04 per share at on July 17, 2007, a 21% drop from the previous day's close of $13.97.  Murray Decl., at ¶ 20.

The Restatement, by its terms, is an admission that the financial statements were false when they were made in 2003, 2004 and 2005.  Lead Plaintiff alleges that, at least as of April 17,

2007, the date of the issuance of the registration statement, Defendants knew that the 2003, 2004, and 2005 financial statements were false.   Lead Plaintiff alleges that the Restatement should have been made on that date, if not before.   Murray Decl., at ¶ 21.

**ARGUMENT**

**POINT I**

**THE SETTLEMENT CLASS SHOULD BE CERTIFIED**

**A.      All The Requirements For Class Certification Have Been Met**

The parties have stipulated to certification of the Settlement Class for settlement purposes, subject to approval by the Court.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) ("Before certification is proper for any purpose – settlement, litigation, or otherwise – a court must ensure that the requirements of Rule 23 (a) and (b) have been met.").   In order for a settlement class to be certified, the court must find that the proposed class meets the four threshold requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation – and, in addition, is maintainable under Rule 23 (b)(3).   *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *2-3 (S.D.N.Y. Jan. 31, 2007) (Leisure, J).

Class treatment is particularly appropriate for proceedings involving violations of securities laws and Rule 23(a) should be construed liberally to effectuate that end.  *See Koppel v. 4987 Corp.*, 191 F.R.D. 360, 365 (S.D.N.Y. 2000) (Carter, J.) ("in light of the importance of the class action device in securities fraud suits, the court construes Rule 23 liberally") (internal quotations omitted).

**1.   Rule 23 (a)(1): Numerosity**

According to Lead Plaintiff's damages expert, Financial Markets Analysis, LLC ("FMA"), approximately 17 million damaged shares were purchased by hundreds, if not

6

thousands, of shareholders.  Murray Decl., at ¶ 28.  Furthermore, over 1400 proofs of claim have already been filed.  Affidavit of Charlene Young, dated June 27, 2008 ("Young Aff."), ¶ 13.  The Settlement Class Members are clearly so numerous that joinder of all members is impracticable.

### 2.  Rule 23(a)(2): Commonality

The "commonality" prong of Rule 23(a) is satisfied if only one legal or factual issue is shared by all class members.  *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (Cote, J.)  The commonality requirement is easily satisfied in cases such as the instant Action where the Lead Plaintiff's allegations focus on materially false and misleading statements in the same document, such as Qiao Xing's publicly-filed reports.  *See In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 374-75 (S.D.N.Y. 2000) (Brieant, J.)  Rule 23(a)(2)'s commonality requirement is satisfied here because all Settlement Class Members share several legal and factual issues in common, including:

> a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

> b)    Whether Defendants acted willfully or recklessly in omitting to state and misrepresenting material facts; and

> c)    Whether the Settlement Class Members have sustained damages, and if so, what is the proper measure of damages.

### 3.  Rule 23(a)(3): Typicality

"[T]he focus of the typicality inquiry concerns … whether each class member makes similar legal arguments to prove the defendant's liability."  *Cromer*, 205 F.R.D. at 122.  "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of

minor variations in the fact patterns underlying individual claims." *In re Vivendi Universal, S.A.*, No. 02 Civ. 5571, 2007 WL 1490466, at *7 (S.D.N.Y. May 21, 2007) (Holwell, J.) (internal quotations omitted).  Here, Lead Plaintiff's claims are typical of the claims of the Settlement Class Members in that Lead Plaintiff and each Settlement Class Member purchased or sold Qiao Xing securities (common stock, call options, and/or put options) during the Class Period in an allegedly artificially inflated market and sustained injury when the inflation was removed.

### 4.  Rule 23 (a)(4):  Adequacy of Representation

Adequacy of representation is met where the plaintiffs do not have interests antagonistic to the rest of the class and the plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation.  *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).  Here, Lead Plaintiff's claims and interests are co-extensive, and not antagonistic, with those of the absent class members.  Further, as reflected on Lead Counsel's resume, Lead Counsel has wide experience in the type of action before the Court and was fully able to represent the interests of the Settlement Class.[4]

Accordingly, both prongs of the adequacy test are met.

### 5.    Rule 23(b)(3): Predominance

Rule 23(b)(3) requires that common questions of law or fact predominate over any individual questions.  Since the liability of Defendants will be the same as to all Settlement Class Members, with only the amount of damages differing and that only in limited ways, common questions predominate.

---

[4] A copy of Murray, Frank & Sailer LLP's firm resumé is attached as Exhibit C to the Murray Declaration.

### 6.     Rule 23 (b)(3):  Superiority

Finally, the superiority requirement of Rule 23(b)(3) is met if the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The Second Circuit has recognized class actions as superior to other available methods of adjudication in the context of claims brought under the federal securities laws, and views such claims as particularly amenable to class treatment, given the large number of plaintiffs and the likelihood that individual claims would often be too small to warrant individual suits.  *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).  The superiority requirement is clearly met here.  As the damages suffered by individual Settlement Class Members may be relatively small, the expense and burden of individual litigation make it impossible for the Settlement Class Members to seek redress individually for the wrongs done to them.  Lead Plaintiff knows of no other action that asserts claims similar to those set forth in the Action.

Accordingly, for purposes of approval of the Settlement, the Court should certify the Settlement Class.

## POINT II

### THE SETTLEMENT SHOULD BE APPROVED UNDER RULE 23(E)

Rule 23(e) requires that any settlement or dismissal of a class action must be approved by the court.  In determining whether to approve a class action settlement, the court must determine whether the settlement is fair, adequate, and reasonable and not a product of collusion.  *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) *cert. denied*, 464 U.S. 818 (1983); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *5 (S.D.N.Y. June 7, 2005) (Cote, J.), *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) (McMahon, J).

Judicial discretion should be exercised in light of the general policy favoring settlement. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) (collecting cases); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 337 (S.D.N.Y. 2005) (Cote, J.) ("public policy favors settlement, especially in the case of class actions"). Further, the court has broad discretion to approve a settlement and must appraise the reasonableness of particular class action settlements on a case-by-case basis, in light of all the relevant circumstances. *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *In re Prudential Sec. Litig.*, MDL No. 1005, M-21-67, 1995 WL 798907, at *16 (S.D.N.Y. Nov. 20, 1995) (Pollack, J.) (determination of fairness of settlement is left to the "sound discretion" of the court). However, the Court should not substitute its judgment as to a proper settlement for that of class counsel. *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 746 (S.D.N.Y. 1985) (Keenan, J.)*, aff'd*, 798 F.2d 35 (2d Cir. 1986).

There is a strong initial presumption that the compromise is fair and reasonable. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (Lynch, J.) In determining if the proposed settlement is fair, reasonable, and adequate the court examines (1) the negotiations which led up to the settlement and (2) the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa, U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *WorldCom*, 388 F. Supp. 2d at 337. These factors are discussed below.

### A.    The Settlement Was The Result of Arm's-Length Negotiations

The Settlement before the Court was entered into in good faith, after arm's-length and non-collusive negotiations between experienced counsel on both sides before an impartial court-appointed mediator. Murray Decl., at ¶ 6. A strong presumption of fairness attaches to a proposed settlement that has been negotiated at arm's-length. *See Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 173-74 (S.D.N.Y. 2000) (Kram, J.) ("If the Court finds that the Settlement is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.").

Furthermore, "a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

### B.    The Nine *Grinnell* Factors Also Support Settlement Of This Action

In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit identified nine factors that courts are to consider in deciding the substantive fairness of a proposed settlement, which are discussed below. "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *Global Crossing*, 225 F.R.D. at 456 (quoting *Thompson v. Metro. Life Ins. Co*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (Baer, J.)   All of the *Grinnell* factors which are relevant at this stage support approval of the Settlement.

### 1.    The Complexity, Expense And Likely Duration Of The Litigation

This securities class action involves complex legal and factual issues both in establishing liability and in proving damages. *See Global Crossing*, 225 F.R.D. at 456 ("class actions have a well-deserved reputation as being most complex") (internal quotations omitted); *Klein v. PDG Remediation, Inc.,* No. 95-cv-4954, 1999 WL 38179, at *2 (S.D.N.Y. Jan. 28, 1999) (Batts, J.) (securities class actions involve complex factual and legal issues). Such issues include satisfying the loss causation requirement, establishing falsity and the requisite degree of scienter for the misstatements alleged, and control person liability. Murray Decl., at ¶ 32.

11

In addition, this case was settled at an early stage of the litigation. But for the Settlement, contested motions at the pleading, class certification, and summary judgment stages were all but certain. If Lead Plaintiff survived Defendants' motion(s) to dismiss, discovery would commence. It is likely that discovery in this case would be both expensive and time consuming, requiring substantial travel and translation expense. Most of the relevant documents are written in Chinese and are located in China, as are many of the relevant witnesses. Furthermore, due to a culture that encourages corporate loyalty, Lead Counsel's investigators were met with skepticism and reluctance when conducting interviews with witnesses in China. *Id.* at ¶ 24. A trial would be costly, and involve the preparation of pre-trial and post-trial briefs, and lengthy and complicated expert discovery. Experts would be expected to testify concerning such issues as the damages suffered by Lead Plaintiff and the Class and loss causation. Even if Lead Plaintiff had prevailed at trial, post-judgment appeals were likely to be taken by Defendants. *Id.* at ¶ 25. As one court concluded, "[t]he potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class." *Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995). To litigate this Action through class certification, discovery, and summary judgment, and then prepare for and try this case would require additional significant time and expense. Based on the complexity of the legal and factual issues, and the expense and potential length of a trial and the likelihood of an appeal, the balance for this factor weighs towards settlement. *See In re Indep. Energy Hldgs. PLC Sec. Litig.,* No. 00 Civ. 6689, 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003) (Scheindlin, J.)*; In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 424-25 (S.D.N.Y. 2001) (McMahon, J.)

## 2.    The Favorable Reaction Of The Settlement Class

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley*, 186 F. Supp. 2d at 362; *see Am. Bank Note*, 127 F. Supp. 2d at 425.

In total, over 45,00 Notices have been sent to potential Settlement Class Members or their nominees.  Young Aff., ¶ 12.  Furthermore, Summary Notice was distributed via PR NEWSWIRE, a nationally syndicated newswire, which is picked up by Bloomberg and Google Finance.  The deadline for Settlement Class Members to exclude themselves was June 16, 2008, and the deadline for Settlement Class Members to object was June 20, 2008.  As of this date, no exclusions or objections to the Settlement have been received.  Murray Decl. ¶ 13.

Accordingly, the Settlement enjoys the overwhelming support of the Settlement Class.  This favorable reaction of the Settlement Class provides strong evidence that the Settlement is fair, reasonable, and adequate.  See *Grinnell*, 495 F.2d at 462; *In re AOL Time Warner ERISA Litig*., No. 02 Civ. 8853 (SWK), 2006 WL 2789862, at *6 (S.D.N.Y. Sept. 27, 2006) (Kram. J.) ("[t]he exceptionally low number of objections submitted by the Class also weighs in favor of the Settlement"); *Austrian and German Bank Holocaust*, 80 F. Supp. 2d at 175 (same).

## 3.    The Stage Of Proceedings And The Amount Of Discovery Completed

"[T]he stage of the proceedings and the amount of discovery completed is another factor that may be considered in determining the fairness, reasonableness and adequacy of a settlement."  *Maley*, 186 F. Supp. 2d at 363 (internal quotations omitted).  Formal discovery is not a prerequisite to settlement.  *Id.* (to approve a proposed settlement, "the Court need not find that the parties have engaged in extensive discovery"); *see also Austrian and German Bank Holocaust*, 80 F. Supp. 2d at 176 (same).

Here, the Settlement was reached after a detailed factual investigation, involving three independent sets of investigators, located domestically and in Asia, which resulted in numerous interviews of individuals with knowledge of the facts, most of whom are Chinese citizens who reside in China.  Lead Plaintiff also retained accounting and damages experts to evaluate the case.  Murray Decl., at ¶ 34.  While Lead Plaintiff has not conducted formal discovery of Defendants (due to the discovery stay mandated by the Private Securities Litigation Reform Act of 1995), the investigation described above provided Lead Plaintiff and Lead Counsel with information concerning the strengths and weaknesses of the parties' respective claims and defenses.  Accordingly, the stage of proceedings supports approval of the Settlement.  *See In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[i]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement"); s*ee also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *14 n.36 (E.D.N.Y. Sept. 18, 2007) (settlement approved even though formal discovery had not taken place).

### 4.    The Risks Of Establishing Liability

Lead Plaintiff faces significant uncertainty with respect to prevailing on the merits in this Action.  Where, as here, "plaintiffs would have faced significant legal and factual obstacles to proving their case," courts should approve the settlement. *Global Crossing,* 225 F.R.D. at 459.

For example, if the Action were to progress further, Lead Plaintiff would face the following legal hurdles: (1) difficulties in alleging and proving that Defendants acted with the requisite culpability both before and after QXM's IPO; and (2) difficulties in showing that the revelation of the alleged misconduct, and not other factors, caused a decline in Qiao Xing's stock

price.  Defendants would argue, both at the pleading stage and at summary judgment and/or trial, that (1) the Restatement was not material, because Qiao Xing's stock price did not drop on April 17, 2007, the date that the material weaknesses and revised financial results, including the valuation of CECT, discussed above, were first mentioned in QXM's registration statement; (2) the Restatement was due to a disagreement between accounting firms and was not the result of fraud, and (3) Qiao Xing's stock dropped at the end of the Class Period because of news unrelated to the Restatement, including news of Qiao Xing's current results and future projections.  Murray Decl., at ¶ 27.  As discussed below, even FMA concluded that most of the drop in Qiao Xing's stock price was due to factors other than the Restatement.  Such difficulties could lead to dismissal at the pleading stage, on summary judgment, at trial, or on appeal.  If any of these risk factors caused the Action to be dismissed, it is likely that the Settlement Class would recover significantly less than is being recovered under the terms of the Settlement, or even nothing.

Even if Lead Plaintiff prevailed at trial, there was the likelihood of a subsequent appeal, further adding to the risks of continued litigation.  *Id.* at ¶ 25.

Courts recognize that "establishing the roles of specific individual defendants in the fraud … [and] getting a jury to understand the many complex issues during a trial that could go on for weeks", are among the significant obstacles faced in this complex securities class action. *Maley,* 186 F. Supp. 2d at 364; *see also WorldCom*, 388 F. Supp. 2d at 338 (noting that among the "substantial risks" remaining "at these late stages of the litigation" were "the falsity of many alleged misstatements" and whether defendants acted in good faith); *Am. Bank Note*, 127 F. Supp. 2d at 426 (recognizing substantial risk in proving scienter "because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult").

This factor weighs in favor of approval of the Settlement.

### 5.    The Risks Of Establishing Damages

Even if Lead Plaintiff was successful in establishing liability, there are substantial risks in proving loss causation and damages which Lead Plaintiff has avoided by virtue of the Settlement.  FMA calculated that while the drop of Qiao Xing's stock price at the end of the Class Period caused a loss of $50 million (17 million damaged shares multiplied by the $2.94 drop at the end of the Class Period), the Settlement Class Members suffered actionable damages (that can be tied to Defendants' alleged fraud) of, at most, $3.3 million.  Thus, FMA estimated that, at most, 6.6% of the total loss was due to Defendants' alleged fraud.  Murray Decl., at ¶ 28.

Defendants would argue that an even larger share, if not the entire drop, occurred for reasons other than Defendants' alleged fraud.  Accordingly, it is possible that even if Lead Plaintiff prevailed on falsity, materiality, and scienter grounds, it would not have been able to prove loss causation or ascertainable damages – and the Settlement Class Members would end up with nothing.  Undoubtedly, Defendants would introduce the testimony of a damages expert who would dispute the existence of any material damages and further opine that if any damages existed they were much less than estimated (and ultimately recoverable) by Lead Plaintiff. The determination of the existence and amount of damages, like the determination of liability, is a complicated and uncertain process that would have involved conflicting expert opinions.  Had the case gone to trial, the jury would have been presented with vastly different damage estimates by Lead Plaintiff and Defendants and would have been required to evaluate conflicting damage estimates.  Although Lead Plaintiff believes that it would have been able to establish some amount of damages, there can be no guarantee that it would prevail.  *Id.* at ¶ 29.

16

Thus trial would have become a "battle of experts" over loss causation and damages issues, and the jury would be free to accept or disregard either party's expert testimony. *See Warner Comms.*, 618 F. Supp. at 744-45 ("[i]n this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"); *Strougo v. Bassini,* 258 F. Supp. 2d 254, 259 (S.D.N.Y. 2003) (Sweet, J.) ("[t]he issue of damages would have been hotly disputed, and would have been the subject of further dispute between [the] experts [retained by the parties], a dispute whose outcome is impossible for [the Court] to predict"); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) (Sweet, J.) ("Expert testimony about damages could rest on many subjective assumptions, any one of which could be rejected by a jury as speculative or unreliable. Conceivably, a jury could find that damages were only a fraction of the amount that Plaintiffs contended.").

This factor weighs in favor of approval of the Settlement.

> **6.      The Risks Of Obtaining And**
> **Maintaining The Class Action Through Trial**

This Action has not yet been certified as a class action. For the reasons discussed above Lead Counsel is confident that the proposed class would be certified. Nonetheless, if this litigation were to proceed, or should the Settlement not be effectuated, the Court could deny class certification, or severely restrict the scope of the approved class. Furthermore, even if a class is certified, Rule 23(f) provides Defendants with the opportunity to obtain interlocutory review of the decision, which holds additional risks. *See In re Initial Public Offering Sec. Litig,* 471 F.3d 24, 44 (2d Cir. 2006) (vacating class certification, citing various factual and legal

issues, including reliance); *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 271 (5th Cir. 2007) (vacating class certification order for failure to show loss causation).

Accordingly, risks remain with regard to maintenance of this Action as a class action, which further favors approval of the Settlement.

### 7.    The Ability Of Defendants To Withstand A Greater Judgment

While companies in securities class actions are often covered by Directors and Officers Insurance, Qiao Xing's insurance carrier has raised issues as to the applicability of coverage in this Action.  Murray Decl., at ¶ 30.  Accordingly, there was an increased likelihood that Qiao Xing, a company located in China, would be responsible for most or all of any judgment or settlement.  Furthermore, because Qiao Xing has no assets in the United States, it could prove difficult to collect any judgment.  *Id*.  Thus, while Qiao Xing, as a solvent, relatively healthy company, may be able to withstand a greater judgment, it may prove difficult to collect such a judgment.

### 8.    The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery

The "best possible" recovery necessarily assumes Lead Plaintiff's success both on liability and damages as well as the ability of Defendants to pay the judgment.  The maximum recoverable damages in this case, according to Lead Plaintiff's damages expert, is $3.3 million. *Id.* at ¶ 28.  The Settlement provides $2,400,000 in cash; therefore, the Settlement represents approximately 73% of the aforementioned best possible recovery.  *Id.*

The amount of recovery is well within the range of reasonableness.  "The determination of a 'reasonable' settlement is not susceptible to a mathematical equation yielding a particularized sum."  *Strougo,* 258 F. Supp. 2d at 260.  Rather, "in any case there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

18

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Strougo*, 258 F. Supp. 2d at 260; *Frank v. Eastman Kodak Co.*, 228 F.R.D 174, 186 (W.D.N.Y. 2005).  In *Grinnell*, the Second Circuit noted that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  495 F.2d at 455; *see also Global Crossing*, 225 F.R.D. at 461.

The Settlement of $2.4 million (73% of the maximum possible recovery) is an extraordinary recovery and is much greater than recoveries in other settlements that are regularly approved by courts.  In fact, Cornerstone Research has reported that the median settlement of damages for cases settled from December 1995 (when the PSLRA was enacted) through the end of 2005 that had "estimated damages" of less than $50 million is 10.5%.  *See* Laura E. Simmons and Ellen M. Ryan, *Securities Class Action Settlements, 2006 Review and Analysis* (available at http://securities.stanford.edu/Settlements/REVIEW_1995-2006/Settlements_Through_12_2006.pdf, last visited June 30, 2008); *see also In re Tyco Int'l*, No. 02-MD-1335 (PB), 2007 WL 4462593, at *14 (D.N.H. Dec. 19, 2007) (14.5% of recovery is fair); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (settlement of 9.65% is fair; noting that "[o]n a relative basis, Professor Coffee reports that a recent study shows that settlements since 1995 of securities class actions 'have recovered between 5.5% and 6.2% of the class members' estimated losses"); *Kurzweil v. Phillip Morris Co, Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *2 (S.D.N.Y. Nov. 30, 1999) (Mukasey, J.) (normal range of recovery in securities class actions is 7-15% of maximum damages); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 434 n. 47 (S.D. Tex. 1999) (citing various studies showing the average

19

recovery in securities litigation cases is 4-14%).  This factor strongly supports the Settlement.

**9.    The Range of Reasonableness of the Settlement Fund
In Light of the Attendant Risks of Litigation**

The risks of litigation are why settlement is frequently preferred.  Settling avoids delay as well as uncertain outcome at the pleading stage, summary judgment, trial and on appeal.  Given the numerous risks Lead Plaintiff would face in prosecuting the Action to a successful trial verdict, what Lead Plaintiff has achieved represents an outstanding outcome for the Settlement Class, especially when the difficulties Lead Plaintiff would otherwise face in prevailing at trial are considered.  Many cases are lost on summary judgment or trial after plaintiffs and their counsel in similar cases have invested thousands of hours in successfully opposing motions to dismiss and pursuing discovery.  Just last year, in *In re JDS Uniphase Securities Litigation.*, 02cv1486 (EDL) (N.D. Cal.), after five years of litigation, the jury returned a verdict against plaintiffs.  *See also Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994) (directed verdict after plaintiff's presentation of their case to the jury), *aff'd sub nom. Herman v. Legent Corp.*, No. 94-1445, 1995 WL 115879, at *11 (4th Cir. March 20, 1995); *In re Convergent Techs. Sec. Litig.*, 721 F. Supp. 1133, 1140 (N.D. Cal. 1988) (summary judgment against plaintiffs following almost six years of litigation), *aff'd*, 948 F.2d 507 (9th Cir. 1991).

Numerous appellate court decisions also demonstrate the risks inherent in this type of litigation.  *See, e.g.*, *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899, 904-05 (8th Cir. 2005) (affirming grant of summary judgment in favor of defendants on Section 10(b) claims after five years of litigation); *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 210 (2d Cir. 2000) (affirming lower court finding after a bench trial that loss causation was not established); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 747 (7th Cir. 1997) (affirming summary judgment in favor of the defendants); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1446 n.3 (11th Cir.

1997) (reversing a jury verdict of $81 million after a 19-day trial against an accounting firm on loss causation grounds and entering judgment for the defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1219 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 .14 (9th Cir. 1994) (affirming summary judgment in favor of all but one defendant after 6 years of litigation).

As described above, Lead Plaintiff faces numerous significant risks absent settlement in establishing falsity, scienter, loss causation, and damages in this case, plus the inherent risks of trial and appeal. Also, delay, not just at the trial stage but through post-trial motions and the appellate process, would cause Settlement Class members to wait years for any potential recovery, further reducing the Settlement's value. *See Grinnell*, 495 F.2d at 467.

This factor weighs in favor of the approval of the Settlement.

## POINT III

### THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

"A plan of allocation that is devised by competent and experienced class counsel 'need have only a reasonable, rational basis.'" *In re Merrill Lynch & Co. Research Reports. Litig.*, No. 02 MDL 1484(JFK), 2007 WL 4526593, at *12 (S.D.N.Y. Dec. 20, 2007) (Keenan, J.) (citing *Hicks,* 2005 WL 2757792, at *7). "A plan of allocation that calls for the *pro rata* distribution of settlement proceeds on the basis of investment loss is presumptively reasonable." *In re Merrill Lynch Tyco Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (Keenan, J.)

The Plan of Allocation, fully described in the Notice, was formulated by Lead Counsel, with the assistance of FMA, and seeks to reimburse Settlement Class Members in a fair and reliable manner. Under the two-tiered Plan of Allocation, based on the timing of each authorized claimant's purchase, the authorized claimant will receive a *pro rata* share of one of two tiers of

the "Net Settlement Fund," *i.e.*, the Gross Settlement Fund less certain fees and expenses, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

The Plan of Allocation's two-tiered structure is implemented as follows. Settlement Class Members who purchased common stock, purchased call options, or sold put options between April 17, 2007 and July 17, 2007 shall receive a greater *pro rata* share than those who purchased common stock, purchased call options, or sold put options between June 30, 2004 and April 16, 2007. This allocation reflects the fact that as of April 17, 2007, QXM had released its registration statement which contained the financial data that ultimately resulted in Qiao Xing's Restatement. Accordingly, Lead Plaintiff would have an easier time pleading and proving that as of that date, Defendants were aware of the overvaluation of QXM. Conversely, Lead Plaintiff would have more difficulty proving that before April 17, 2007 Defendants knowingly or recklessly misstated Qiao Xing's financial statements. Murray Decl., at ¶ 11.

Furthermore, under the proposed Plan of Allocation, claimants who are in-and-out purchasers of common stock or call options, or in-and-out sellers of put options, will not receive an allocation, since any loss suffered by such Settlement Class Members would have been recouped before the end of the Class Period – thus such Settlement Class Members would not be able to establish loss causation. *See Dura Pharm., Inc. v. Broudo,* 544 U.S. 336 (2005), *see also In re Comverse Tech. Inc. Sec. Litig.*, No. 06-CV1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. March 2, 2007) ("it is clear that under *Dura* and its progeny, any losses that P&P may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this

litigation"). Lead Plaintiff has found no evidence to suggest that any loss trickled out of the stock before the end of the Class Period.

For the foregoing reasons, the proposed Plan of Allocation is fair and reasonable and should be approved by the Court.

<u>**CONCLUSION**</u>

In light of the substantial benefits that will be realized by the Settlement Class Members as a result of this Settlement, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is fair, reasonable, and adequate, in the best interests of all of the Settlement Class Members, and worthy of the approval of this Court. The Settlement should be approved.

Dated: New York, New York
June 30, 2008

MURRAY, FRANK & SAILER LLP

_____/s/_____
Brian P. Murray (BM 9954)
Gregory B. Linkh (GL 0477)
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**Lead Counsel for Lead Plaintiff
and the Putative Class**

## DECLARATION OF SERVICE

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 30th day of June, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below, 1) through this court's ECF system, 2) by e-mail, and 3) by causing a true copy thereof to be delivered by regular United States mail, postage prepaid:

**MORRISON & FOERSTER, LLP**

Jack C. Auspitz (jauspitz@mofo.com)
Joel C. Haims (jhaims@mofo.com)
Lily M. Fan (lmfan@mofo.com)
1290 Avenue of the Americas
New York, New York 10104-0050
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

**Counsel for Qiao Xing and the Individual Defendants**

**LESTER SCHWAB KATZ & DWYER, LLP**

Lawrence Steckman
(lsteckman@lskdnylaw.com)
120 Broadway
New York, New York 10271
Telephone: (212) 964-6611
Facsimile: (212) 267-5916

**Counsel for Grobstein, Horwath & Company LLP**

_____/s/Gregory B. Linkh_____
Gregory B. Linkh (GL-0477)