UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE QIAO XING SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions | MASTER FILE 07-CIV-7097 (DLC)<br><br>**"ECF" Case** |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION FOR
AN AWARD OF ATTORNEYS' FEES AND
<u>REIMBURSEMENT OF COSTS AND EXPENSES</u>**

**Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, New York 10016
Tel: (212) 682-1818
Fax: (212) 682-1892**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ....................................................................................................................... 3

POINT I
LEAD COUNSEL'S APPLICATION FOR AN
AWARD OF ATTORNEYS' FEES SHOULD BE APPROVED ............................................................ 3

   A.    Attorneys' Fees May Be Paid From A Common Fund ........................................... 4

   B.    The Standard Governing the Award of Attorneys' Fees ...................................... 5

   C.    The Requested Fee is Fair and Reasonable Under the *Goldberger* Criteria ............ 6

      1.    The Time and Labor Expended by Lead Counsel .................................................. 7

      2.    The Magnitude And Complexity of the Litigation ................................................. 8

      3.    The Risk of Litigation ................................................................................................ 9

      4.    The Quality of Representation And The Result Achieved .................................. 12

      5.    The Requested Fee Is Fair and
          Reasonable In Relation to the Settlement ........................................................... 133

      6.    Public Policy Considerations ................................................................................. 15

   D.    A Lodestar Analysis Confirms The Fairness Of The Requested Fee .................... 16

   E.    The Overwhelmingly Positive Reaction to the Proposed Settlement by Class
       Members Underscores the Reasonableness of the Fee Request .............................. 18

POINT II
LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT
OF OUT-OF-POCKET EXPENSES SHOULD BE GRANTED ...................................................... 199

CONCLUSION ............................................................................................................... 211

## TABLE OF AUTHORITIES

### Statutes and Rules

Fed. R. Civ. P. 9(b) ................................................................................................................. 8

### Cases

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ............................................................................ 11

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ................................................................................ 11

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988) ........................................................................................... 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ............................................................................................. 4

*Behrens v. Wometco Enters., Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) .................................. 12

*Blum v. Stenson*,
    465 U.S. 886 (1984) ..................................................................................... 5, 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................. 4

*Chatelain v. Prudential Bache-Secs. Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................... 16

*City of Detroit v. Grinnell Corp.*,
    495 F. 2d 448 (2d. Cir. 1974) ............................................................................. 10

*Clark v. Cameron-Brown Co.*,
    No. C-75-65-G, 1981 WL 1637 (M.D.N.C. Apr. 6, 1981) ...................................... 8

*Eisenstadt v. Centel Corp.*,
    113 F.3d 738 (7th Cir. 1997) ............................................................................ 11

*EVCI Career Colleges Holding Corp. Sec. Litig.*,
    05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)........................................ 17

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................................*passim*

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).......................................................................................................... 12

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).......................... 14, 19

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 226 (2d Cir. 1987).............................................................................................. 10

*In re Acceptance Ins. Cos. Sec. Litig.*,
    423 F.3d 899 (8th Cir. 2005).............................................................................................. 11

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)........................................................................... 13, 20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................ 9

*In re Apple Computer Sec. Litig.*,
    No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)................................. 11

*In re AremisSoft Corp. Sec. Litig.*,
    210 F.R.D. 109 (D.N.J. 2002)........................................................................................... 19

*In re Canadian Sup. Energy Inc. Sec. Litig.*,
    04-cv-2020 (S.D.N.Y. Oct. 20, 2005)................................................................................ 14

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) .................................................................................. 18

*In re Elan Sec. Litig.*,
    385 F. Supp. 2d 363 (S.D.N.Y. 2005)................................................................................. 9

*In re Gilat Satellite Networks, Lit.*,
    No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ................... 14

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................*passim*

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
    194 F.R.D.166 (E.D. Pa. 2000) ............................................................................ 17

*In re Interpublic Sec. Litig.*,
    No. 02 Civ.6527(DLC), 2004 WL 2397190 (Oct. 26, 2004) ................................... 17

*In re JDS Uniphase Sec. Litig.*,
    02cv1486 (EDL) (N.D. Ca.) ................................................................................ 11

*In re Lucent Techs, Inc. Sec. Litig.*,
    307 F. Supp. 2d 633 (D.N.J. 2004) ..................................................................... 18

*In re Lucent Techs. Inc. Sec. Litig.*,
    327 F. Supp. 2d 426 (D.N.J. 2004) ..................................................................... 17

*In re Med. X-Ray Antitrust Litig.*,
    No. 93 Civ. 5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................... 15

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, ("*Merrill I*")
    No. 02 MDL 1484, 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ...................... 12, 14

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ......................................................................... 14

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249, F.R.D. 124 (S.D.N.Y. 2008) ........................................................................ 14

*In re N. Telecom, Ltd. Sec. Litig.*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000).................................................................. 11

*In re Prudential Bache Energy Income P'ships Sec. Litig.*,
    No. 888, 1994 WL 202394 (E.D. La. May 18, 1994) ............................................ 13

*In re Sumitomo Copper Litig.*,
    74 F.Supp.2d 393 (S.D.N.Y.1999)....................................................................... 18

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Lit.*,
    724 F. Supp. 160 (S.D.N.Y. 1989)............................................................. 7, 10, 16

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    No. 04-2627, 2007 WL 1575003 (E.D. Pa. May 31, 2007) ..................................... 8

*In re Warnaco Group. Inc. Sec. Litig.*,
  No. 00 Civ. 6266(LMM), 2004 WL 1574690 (S.D.N.Y. July 13, 2004) .............................. 14

*In re Warner Comms. Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................................... *passim*

*In re Worldcom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...................................................................... 5, 6, 12, 16

*Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................................... 19

*Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ......................................... 6

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................................................... 13

*Louisville Black Police Officers Org. v. City of Louisville*,
  700 F.2d 268 (6th Cir. 1983) ............................................................................................... 17

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................................... 5, 12, 15, 18

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 679 (M.D. Ala. 1988) ........................................................................................ 9

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................................. 17

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992) ..................................................................................... 15, 20

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ........................................................................................... 11

*Schnall v. Annuity Life Re (Holdings), Ltd.*,
  02 CV 2133 (EBB) (D. Conn. Jan 21, 2005) ......................................................................... 13

*Schwartz v. Novo Industri A/S*,
  119 F.R.D. 359 (S.D.N.Y. 1988) .......................................................................................... 18

*Spann v. AOL Time Warner Inc.*,
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005).........................................6, 15

*Sprague v. Ticonic Nat. Bank*,
   307 U.S. 161 (1939)..................................................................................................................5

*Strougo v. Bassini,*
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)....................................................................................13

*Taft v. Ackermans*,
   No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)...............................9, 14

*Varacallo v. Mass. Mut. Life Ins. Co.,*
   226 F.R.D. 207 (D.N.J. 2005)...................................................................................................8

*Varljen v. H.J. Meyers & Co., Inc.*,
   No. 97 Civ. 6742, 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .............................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................................5

## **Miscellaneous**

*Bankruptcy Isn't Cheap, Judging By The Bills From Enron Lawyers*, WASHINGTON POST, April
   8, 2002.....................................................................................................................................17

Brian P. Murray and Gregory B. Linkh, *Inherent Risk in Securities Cases in the Second Circuit*,
   NEW YORK LAW JOURNAL, August 26, 2004, at p.4 ...............................................................10

Eisenberg, Theodore and Miller, Geoffrey P., *Attorneys Fees in Class Action Settlements, and
   Empirical Study*, September 24, 2003, Cornell Legal Studies Research Paper No. 04-01, and
   NYU Ctr. for Law and Business Research Paper, No. 03-23, at p. 64 ....................................15

## __INTRODUCTION__

Lead Plaintiff PELO a.s. respectfully submits this memorandum in support of its application for an award of attorneys' fees of 20% of the settlement fund of $2,400,000 in cash, plus accrued interest (the "Gross Settlement Fund") in this consolidated class action (the "Action") for Court-appointed Lead Counsel Murray, Frank & Sailer LLP ("Lead Counsel"). In addition, Lead Plaintiff requests reimbursement of Lead Counsel's actual out-of-pocket expenses and costs in the amount of $59,628.23, which were reasonably and necessarily incurred during the prosecution of the Action.[1] This fee request represents a multiplier of 1.5 of Lead Counsel's lodestar and is in accord with other fees awarded in this District.

During the pendency of this Action, all of Lead Counsel's efforts have been without compensation of any kind. Indeed, substantial out-of-pocket expenses were incurred during this time period, including necessary investigation/discovery-related expenses. Fee and expense reimbursement have been contingent upon the results achieved for the Settlement Class.

The requested fee is reasonable and justified based upon the outstanding result achieved, the amount of work required to prosecute the Action, and the complexity of the issues involved, among other factors detailed below. The 1.5 multiplier is in line with similar securities class action settlements approved in this District.

Lead Plaintiff has simultaneously submitted herewith Lead Plaintiff's Memorandum of Law in Support of Class Certification and Final Approval of the Settlement and Plan of Allocation (the "Settlement Brief"), the Murray Declaration, and the Affidavit of Charlene Young, sworn to on June 27, 2008 (the "Young Affidavit" or "Young Aff."). The Settlement Brief discusses, *inter alia*, the legal standards for approval of the Settlement under the standards applicable in this Circuit, together

---

[1]    *See* Declaration of Brian P. Murray, dated June 30, 2008 (the "Murray Declaration" or "Murray Decl.").

with an analysis of the scope, complexity, and risks associated with the Action, demonstrating that the Settlement is fair, reasonable, and adequate. The Murray Declaration provides factual support for the fairness of the Settlement, as well as for the instant fee and expense application. Rather than repeating the matters set forth in the Settlement Brief and the Murray Declaration, Lead Counsel respectfully incorporates by reference the matters contained therein.

This memorandum focuses on the legal and factual standards applicable to an attorneys' fee request by successful plaintiffs' attorneys in class action litigation, and the appropriateness of the fee requested by Lead Counsel in this case. As discussed below, this application is premised on several reinforcing factors, including the benefit Lead Counsel has achieved for the members of the Class; the numerous and substantial risks undertaken on a wholly contingent basis by Lead Counsel; the vigorous and skillful prosecution of the Action; and the lack of any objections by members of the Class to the requested fees and expenses. Lead Plaintiff requests approval of the fees sought and reimbursement of expenses as compensation for the efforts and the substantial risk undertaken by Lead Counsel.

## BACKGROUND

On April 2, 2008, the Court entered an Order (the "Preliminary Order") preliminarily approving the Settlement, directing that a hearing be held on July 11, 2008 to determine the fairness, reasonableness, and adequacy of the proposed Settlement, and directing that notice be given to the members of the settlement class (the "Settlement Class"). Pursuant to the Preliminary Order, over 45,000 copies of the Notice of Pendency of Proposed Class Action and Its Settlement (the "Notice") were mailed to potential Settlement Class members or their nominees, containing, *inter alia*, the terms of the Settlement and its value; the plan of allocation for distributing the Settlement proceeds

among Settlement Class members (the "Plan of Allocation"); a statement that attorneys' fees of up to 20% of the Gross Settlement Fund and costs of up to $100,000 would be sought; the method for objecting to the Settlement, the Plan of Allocation, or the attorneys' fees or costs sought; and a June 20, 2008 deadline for filing such objections.  Young Aff., ¶ 12, Ex. 1.

In addition to the mailing of individual notices, a Summary Notice of Pendency of and Proposed Settlement of Class Action Involving Qiao Xing Universal Telephone, Inc. (the "Summary Notice") describing the procedures available to opt-out or object was published on April 25, 2008 over PR NEWSWIRE.  Young Aff., ¶ 6.  Despite the wide publicity given to the Settlement, no objections or exclusions were received.  Murray Decl., ¶ 13.  The uniformly favorable reaction of the Settlement Class, coupled with other reasons discussed below, further demonstrate that the attorneys' fees and reimbursement of expenses requested are fair and reasonable.

## ARGUMENT

### POINT I

#### LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES SHOULD BE APPROVED

The Settlement here represents an excellent result for the Settlement Class and was achieved only as a result of Lead Counsel's determined and substantial effort in the face of the Defendants' vigorous defenses against Lead Plaintiff's claims.  These efforts are described in the Settlement Brief and the Murray Declaration.

Despite the early posture of the Settlement, Lead Counsel devoted considerable time and expense to the Action in order to develop an understanding of the legal and factual issues involved.  The 20% fee request is also a product of the posture of the Settlement, as this is a low percentage fee

request given the size of the Settlement. In addition, the requested fee represents a 1.5 multiplier on Lead Counsel's lodestar.

### A.    Attorneys' Fees May Be Paid From A Common Fund

It is well-settled that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). The purpose behind granting attorneys adequate compensation is to compensate fairly and adequately plaintiff's counsel for services rendered and to "prevent[ ] unjust enrichment of those benefiting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. This, in turn, has the effect of encouraging skilled counsel to represent those who seek redress for damages and to discourage future alleged misconduct of a similar nature. *In re Warner Comms. Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (Keenan, J.). The Supreme Court has expressly recognized that private securities actions are "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to . . . [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (internal quotations omitted). Securities class actions should be encouraged by the courts; this is accomplished in part by awarding adequate financial incentives to attorneys who prosecute these actions on behalf of classes of injured persons.

4

B.    <u>The Standard Governing the Award of Attorneys' Fees</u>

The United States Supreme Court has held that in common fund cases the fee awarded may be determined on a percentage-of-recovery basis. *See Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 165-70 (1939). The Supreme Court stated that "under the 'common fund doctrine'. . . a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In addition, the Private Securities Litigation Reform Act of 1995, 15 U.S.C.A. § 78u-4(a)(6) (2004) (the "PSLRA"), provides persuasive support for applying the percentage-of-recovery method. The PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C.A. §78u-4(a)(6). By drafting the PSLRA as it did, Congress followed the Supreme Court's lead and endorsed the efficacy of the percentage-of-recovery approach to fee awards in common fund cases. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (McMahon, J.).

In expressly accepting the percentage method, the Second Circuit has recognized that the lodestar method is cumbersome and often leads to waste of judicial resources. *See Goldberger*, 209 F.3d at 48-49. "The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "This method has been found to be a solution to various problems inherent in the lodestar method, which 'creates an unanticipated disincentive to early settlements, tempt lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *In re Worldcom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (quoting *Visa*, 396 F.3d

5

at 121); s*ee also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (Lynch, J.) (the "trend in the Second Circuit is toward the percentage approach rather than the 'cumbersome, enervating, and often surrealistic process' of evaluating fee petitions under the lodestar/multiplier approach") (quoting *Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *5 n.13 (S.D.N.Y. Sept. 29, 2003) (Scheindlin, J.)).   As Judge Lynch noted in *Global Crossing*, the percentage approach "aligns the class members' and class counsel's interests and moreover provides a powerful incentive or the efficient prosecution and early resolution of litigation." 225 F.R.D. at 466 (internal quotations omitted).   Moreover, this Court favors application of the percentage-of-the-recovery method.  *See WorldCom*, 388 F. Supp. 2d at 355; *Spann v. AOL Time Warner Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *7-8 (S.D.N.Y. June 7, 2005) (Cote, J.); *Varljen v. H.J. Meyers & Co., Inc.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000) (Cote, J.).

In sum, there is a strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery, and that method should be applied in this common fund case.

**C.      The Requested Fee is Fair and Reasonable Under the *Goldberger* Criteria**

In *Goldberger*, the Second Circuit held that, whatever method is chosen, district courts should be guided by the traditional criteria in determining a reasonable common fund fee, including: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risk of the litigation; (4) the quality of representation and the result achieved; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  209 F. 3d at 50.  As Judge Brieant observed in applying these criteria, "a Court essentially makes no more than a qualitative

6

assessment of a fair legal fee under all of the relevant circumstances of the case." *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Lit.*, 724 F. Supp. 160, 166 (S.D.N.Y. 1989) (Brieant, J.).

Here, the *Goldberger* factors strongly support the reasonableness of the request for an award of attorneys' fees of 20% of the Gross Settlement Fund.

## 1.    The Time and Labor Expended by Lead Counsel

A total of over 632.8 hours was expended by Lead Counsel to prosecute this Action and bring about the proposed Settlement. *See* Murray Decl., ¶ 31. The services rendered by Lead Counsel reflect its thorough investigation and diligent prosecution of the Action, and include:

- drafting and filing an initial complaint;

- drafting a consolidated amended complaint;

- writing motions for the appointment of lead plaintiff and the approval of their selection of lead counsel, and opposing competing motions;

- attending a Court hearing regarding the consolidation of related cases, motions for the appointment of lead plaintiff and the approval of selection of lead counsel;;

- consulting with three sets of private investigators, based both domestically and in Asia;

- consulting with experts and other consultants on accounting, damages, and loss causation issues;

- writing a mediation brief in preparation for a Court-ordered mediation with Magistrate Judge Pitman, and attending the mediation session;

- negotiating the Settlement and writing the Stipulation of Settlement and its various exhibits, including the Notice and Summary Notice;

- petitioning the Court for preliminary approval of the Settlement and the form of Notice mailed to the Class; and

- setting up the claims administration process and drafting the plan of allocation.

7

*Id.* Indeed, as set forth in detail in the Murray Declaration, the successful prosecution of this case involved the detailed examination of complex and difficult factual and legal issues, including materiality of misrepresentations, scienter, loss causation, control person liability, and class certification. *Id,* at ¶ 32. Intensive factual research, investigative work, and many hours of drafting were necessary to prepare the factual and legal allegations in this Action. *Id.* Undoubtedly, this Settlement was the result of informed, zealous advocacy on both sides. The extensive and intensive efforts undertaken by Lead Counsel on behalf of the Settlement Class therefore strongly support the reasonableness of the fee requested.[2]

### 2.    The Magnitude And Complexity of the Litigation

This case presented multiple complex issues of both law and fact, including several difficult substantive and complex legal and factual issues raised in the various motions to dismiss, as more fully discussed in the Settlement Brief and the Murray Declaration. Lead Plaintiff prosecuted this Action without the assistance of any governmental investigation. Murray Decl., ¶ 26; *see In re Vicuron Pharms., Inc. Sec. Litig.*, No. 04-2627, 2007 WL 1575003, at *6 (E.D. Pa. May 31, 2007) (noting lack of related government and civil action in approving fee of 25%); *Clark v. Cameron-Brown Co.*, No. C-75-65-G, 1981 WL 1637, at *1 (M.D.N.C. Apr. 6, 1981) (noting lack of related government and civil action in approving fee). To evaluate and negotiate the proposed settlement,

---

[2] The work of Lead Counsel will not conclude with the fairness hearing. Their experience and expertise will be essential in overseeing claims administration and dealing with appellate issues, if any. *See Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 253 (D.N.J. 2005) (finding in favor of the $58.2 million fee requested, noting that it will constitute all of the attorneys' fees "despite the continuing responsibilities they will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals"). The time that will be expended in settlement administration should be considered in determining counsel's fee in a class action of this nature. *Mashburn v. Nat'l Healthcare, Inc.,* 684 F.

Lead Counsel was required to develop an understanding of Qiao Xing's business, operations, accounting practices and financing, and prosecute Lead Plaintiff's claims. Murray Decl., ¶ 32. Lead Plaintiff was also required to retain investigators fluent in both English and Chinese and who could conduct interviews with witnesses and understand the complex legal issues of the case, which added an additional layer of complexity. *Id.*, ¶ 33.

The magnitude, complexity, and novelty of the issues presented in this litigation favor the requested 20% award.

### 3.        The Risk of Litigation

The Second Circuit and courts within this Circuit have identified the "risk of success as 'perhaps the foremost' factor to be considered in determining [a reasonable award of attorneys' fees]." *Goldberger*, 209 F.3d at 54; *see also In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (Berman, J.), *Global Crossing*, 225 F.R.D. at 467.

It is widely recognized that securities class actions are complex and difficult to prove. *See Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *5 (S.D.N.Y. Jan. 31, 2007) (Leisure, J.) ; *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (Kram, J.). This case is no different. As an initial matter, unlike the litigation in *Goldberger*, which was preceded by a lengthy government investigation that resulted in guilty pleas to charges of securities fraud, in the case at bar, Lead Counsel pursued Lead Plaintiff's claims without the assistance of a government investigation or findings. Murray Decl., ¶ 26. Although it is common to see references to the urban legend that securities fraud cases are without risk, the facts show otherwise. For example, since the PSLRA was

---

Supp. 679, 699 (M.D. Ala. 1988).

passed until 2004, almost one-third of cases filed are dismissed *in toto* after defendants move to

dismiss. When partial dismissals are included, the dismissal rate is 46%. *See* Brian P. Murray and

Gregory B. Linkh, *Inherent Risk in Securities Cases in the Second Circuit*, NEW YORK LAW

JOURNAL, August 26, 2004, at p.4.   When post-motion to dismiss reasons for termination are

factored in (lost class certification motions, summery judgment dismissals, lost trials), it is clear that

filing a securities action does not lead to a sure thing.

     Moreover, the Second Circuit and courts within this Circuit have expressly recognized that

the contingent nature of counsel's fee, with the built-in risk of litigation, is a highly relevant factor in

determining the fee to be awarded.   As the Second Circuit in *City of Detroit v. Grinnell Corp.* stated:

> [n]o one expects a lawyer whose compensation is contingent upon his
> success to charge, when successful, as little as he would charge a
> client who in advance had agreed to pay for his services, regardless of
> success.   Nor, particularly in complicated cases producing large
> recoveries, is it just to make a fee depend solely on the reasonable
> amount of time expended.

495 F.2d 448, 470 (2d. Cir. 1974); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226,

236 (2d Cir. 1987); *Global Crossing*, 225 F.R.D. at 467 ("The contingent nature of Securities Lead

Counsel's representation is a key factor in determining a reasonable award of attorney's fees");

*Union Carbide*, 724 F. Supp. at 164 ("contingent fee risk is the single most important factor in

awarding a multiplier"); *Warner Comms.*, 618 F. Supp. at 747 ("Numerous cases have recognized

that the attorneys' contingent fee risk is an important factor in determining the fee award.").

     There are numerous class actions in which the plaintiff's counsel expended thousands of

hours and yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*,

*In re JDS Uniphase Sec. Litig.*, 02cv1486 (EDL) (N.D. Ca.) (after five years of litigation, the case

went to trial and the jury returned a verdict against plaintiffs); *In re Acceptance Ins. Cos. Sec. Litig.*, 423 F.3d 899 (8th Cir. 2005) (case dismissed at summary judgment stage, dismissal affirmed on appeal, after almost six years of litigation); *In re N. Telecom, Ltd. Sec. Litig.*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (Cedarbaum, J.) (summary judgment granted after seven years of litigation); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (affirming the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (class won jury verdict against two individual defendants, but district court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation).

While this case was settled at an early stage of the litigation, there was no guarantee that Defendants would consider settling at this stage, and every likelihood that they would fight hard at the pleading stage, the class certification stage, the summary judgment stage, the trial stage, or even the appeal stage. When Lead Plaintiff initially pursued the litigation, it did not know whether the case would settle quickly, or whether it would linger on for years, with the possibility of dismissal after several years of hard-fought litigation. While this case settled at an early stage, Lead Plaintiff never had any guarantee that it would do so. Taking into account this risk, a 20% attorneys' fee

11

award is fully justified.

**4.      The Quality of Representation And The Result Achieved**

The quality of the services provided and the result achieved are "important" factors to be considered in determining the amount of reasonable attorneys' fees. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990); *Maley*, 186 F. Supp. 2d at 373 (same); *Warner Comms.*, 618 F. Supp. at 748-49 (same).  This *Goldberger* factor also supports the requested fee award.

The quality of Lead Counsel's representation is best evidenced by its accomplishments, which includes evaluating the strengths and weaknesses of this case and negotiating an excellent settlement, with a 73% recovery, at such an early stage.

Lead Counsel was faced with formidable opposition in this Action.  Defendants were represented by Morrison & Foerster, an international law firm with extensive experience in securities litigation. That Lead Counsel was able to obtain a substantial settlement in this action – 73% of the best possible recovery – while opposed by formidable defense counsel is additional confirmation of the quality of Lead Counsel's representation in this matter and further confirms the reasonableness of the requested fee.  *See, e.g.*, *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, ("*Merrill I*") No. 02 MDL 1484, 2007 WL 313474, at *19 (S.D.N.Y. Feb. 1, 2007) (Keenan, J.); *WorldCom*, 388 F. Supp. 2d at 358; *Global Crossing*, 225 F.R.D. at 467; *Maley*, 186 F. Supp. 2d at 373.

### 5.    The Requested Fee Is Fair and <u>Reasonable In Relation to the Settlement</u>

The percentage award sought, 20% of the total Settlement of $2,400,000 (or $480,000), is reasonable in relation to the recovery, and consistent with awards in many similar cases, as discussed below.  The percentage-of-recovery method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements.  *Strougo v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (Sweet, J.); *see also In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (McMahon, J.) ("[t]he percentage of the recovery formula can serve as a proxy for the market in setting counsel fees."); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'").  In personal injury non-class litigation, 33 1/3% contingency fees are typical.  As Justices Brennan and Marshall observed in their concurring opinion in *Blum*: "In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson,* 465 U.S. 886, 903 n.1 (1984); *see also In re Prudential Bache Energy Income P'ships Sec. Litig.*, No. 888, 1994 WL 202394, at *2 (E.D. La. May 18, 1994) ("Were this not a class action, attorney's fees would range between 30% and 40%, the percentages commonly contracted for in contingency cases.").

The percentage award requested herein is comparable to, if not less than, fees that have been awarded in class actions by courts in this Cicuit that were settled while the case was in a similar procedural posture.  *See Schnall v. Annuity Life Re (Holdings), Ltd.*, 02 CV 2133 (EBB) (D. Conn. Jan 21, 2005) (approving attorney's fees of 33 1/3% of a $16.5 million settlement fund where

lodestar multiplier was 2.9 and settlement was reached before the court decided defendants' motion

to dismiss) (attached to the Murray Declaration as Ex. D); *In re Canadian Sup. Energy Inc. Sec.*

*Litig.*, 04-cv-2020 (S.D.N.Y. Oct. 20, 2005) (approving attorneys' fees of 33% where settlement was

reached before the court decided defendants' motion to dismiss) (attached to the Murray Declaration

as Ex. E).

 Furthermore, courts in this Circuit have held that fees of 20% awarded in securities class

actions are well within the range of reasonableness. *In re Merrill Lynch Tyco Research Sec. Litig.*,

249, F.R.D. 124, 143-44 (S.D.N.Y. 2008) (Keenan, J.) (22.5% of $4.9 million settlement); *In re*

*Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 178 (S.D.N.Y. 2007)

(Keenan, J.) (24% of $125 million settlement); *Merrill Lynch I,* 2007 WL 313474, at *25 (22.5% of

$39 million settlement); *Taft v. Ackermans*,  No. 02 Civ. 7951(PKL), 2007 WL 414493, at *10-11

(S.D.N.Y. Jan 31, 2007) (Leisure, J.) (30% of $15.17 million settlement); *In re Gilat Satellite*

*Networks, Lit.*, No. CV-02-1510 (CPS)(SMG), 2007 WL 2743675, at *18 (E.D.N.Y. Sept. 18, 2007)

(25% of $20 million settlement); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL

2757792, at *9-10 (S.D.N.Y. Oct. 24, 2005) (Holwell, J.) (30% of $10 million settlement); *In re*

*Warnaco Group. Inc. Sec. Litig.*, No. 00 Civ. 6266(LMM), 2004 WL 1574690, at *3 (S.D.N.Y. July

13, 2004) (McKenna, J.) (30% of $12.85 million settlement).[3]

 One empirical study concluded that for settlements in the $1.4 to $3.1 million range, the

mean fee award was 29.5% and the median fee award was 30%.  Eisenberg, Theodore and Miller,

---

 [3] While the $2.4 million settlement is an excellent recovery for the Settlement Class, it is
not such a large amount that Plaintiff's fee request would be a windfall for Class Counsel. *See*
*Hicks*, 2005 WL 2757792, at *9 ("[a] settlement amount of $10 million does not raise the
windfall issue in the same way as would a $100 million settlement, and a 30% fee does not
produce such a windfall").

Geoffrey P., *Attorneys Fees in Class Action Settlements, and Empirical Study*, September 24, 2003,

Cornell Legal Studies Research Paper No. 04-01, and NYU Ctr. for Law and Business Research

Paper, No. 03-23, at p. 64, http://papers.ssrn.com/sol3/papers.cfm?abstract_id=456600 (last visited

June 30, 2008). The authors suggest that a fee request falling below the mean (as this fee request

does) should be viewed as generally reasonable and approved. *Id.* at 65.

### 6.     Public Policy Considerations

The federal securities laws are remedial in nature. To effectuate their purpose of protecting

investors, courts should encourage private enforcement lawsuits. *See Basic, Inc. v. Levinson*, 485

U.S. 224, 230-31 (1988). The typical class representative is unlikely to be able to pursue long and

protracted litigation at his or her own expense, and likely would not do so with the knowledge that

others similarly situated would enjoy a "free ride" due to these efforts at no cost or risk to

themselves. Moreover, lawyers that pursue private suits such as this on behalf of investors augment

the overburdened SEC by "acting as 'private attorneys general.'" *Warner Comms.*, 618 F. Supp. at

751. Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for

bringing these actions and to encourage them to bring additional such actions." *Ressler v. Jacobson*,

149 F.R.D. 651,657 (M.D. Fla. 1992); *see also Spann*, 2005 WL 1330937, at *13 (finding that an

award of attorneys' fees is supported by public policy considerations "which favor encouraging

attorneys to represent on a contingent basis parties who would otherwise likely be without a

remedy"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public

policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray

Antitrust Litig.*, No. 93 Civ. 5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (awarding fee of

33 1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain v.*

*Prudential Bache-Secs. Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992) (Lowe, J.) (determining "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *Warner Comms.*, 618 F. Supp. at 750-51 (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"). As the court observed in *Union Carbide*, 724 F. Supp. at 169:

> Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken. (Internal citation omitted.)

Without the willingness of Lead Counsel to assume the risks associated with this Action, members of the Class would not have recovered anything. Here, Lead Counsel is seeking a modest multiplier of 1.5 times Lead Counsel's lodestar. As such, an award of the fees requested herein would be fully consistent with these important public policy considerations.

**D.    A Lodestar Analysis Confirms The Fairness Of The Requested Fee**

In addition to being in line with fees awarded in comparable cases, the reasonableness of this request is confirmed by cross-checking the proposed award against the lodestar of Lead Counsel. *See Goldberger*, 209 F.3d at 50. "Where the lodestar fee is used a 'a mere cross-check' to the percentage method of determining reasonable attorney's fees, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Worldcom*, 388 F. Supp. 2d at 355 (citing *Goldberger*, 209 F.3d at 50).

The lodestar cross-check involves a two step analysis. The lodestar is first determined by

multiplying the number of hours each attorney spent on the case by each attorney's reasonable hourly rate. That lodestar figure is then adjusted (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. *Goldberger*, 209 F.3d at 50.

Lead Counsel spent a total of 632.8 hours working on this case for a lodestar of $322,600. Murray Decl. at ¶ 34, Ex. A. In determining whether the rates used to perform this lodestar calculation are reasonable, the Court should take into account the attorneys' legal reputation, experience, and status. Use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-85 (1989). On this basis, the rates charged by Lead Counsel are reasonable.[4] *See In re Lucent Techs. Inc. Sec. Litig*, 327 F. Supp. 2d 426, 443 (D.N.J. 2004); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D.166, 195 (E.D. Pa. 2000).

The fee request is fair and reasonable because the 1.5 multiplier is in line with recent awards in this District and the jurisprudence arising therefrom. *See EVCI Career Colleges Holding Corp. Sec. Litig*, 05 Civ. 10240(CM), 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) (McMahon, J.) (2.48 lodestar justified); *In re Interpublic Sec. Litig.*, No. 02 Civ.6527(DLC), 2004 WL 2397190, at *12 (Oct. 26, 2004) (Cote, J.) (3.96 multiplier awarded because "lead counsel acted responsibly in

---

[4] Lead Counsel's lodestar was calculated using hourly rates similar to those approved in similar cases. Lead Counsel's hourly rates are also consistent with the prevailing rates charged by other attorneys who specialize in securities litigation. *See Louisville Black Police Officers Org. v. City of Louisville*, 700 F.2d 268, 278 (6th Cir. 1983) (district courts are free to look at national market or area of specialization in approving rates). Looking to the prevailing rates of New York law firms, defense firms regularly charge up to $700 and $900 per hour. *See Law Firm Approved, But at Reduced Rate*, HOUSTON CHRONICLE, Mar. 15, 2002; *Bankruptcy Isn't Cheap, Judging By The Bills From Enron Lawyers*, WASHINGTON POST, April 8, 2002.

connection with settlement discussions, and to encourage early settlements when they are warranted by the circumstances of the case"); *Global Crossing,* 225 F.R.D. at 468 (2.16 multiplier "falls comfortably within the range of lodestar multipliers and implied lodestar multipliers used for cross-check purposes in common fund cases in the Southern District of New York"); *Maley,* 186 F. Supp. 2d at 369 (S.D.N.Y. 2002) (4.65 multiplier was "well within the range awarded by courts in this Circuit and courts throughout the country); *In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 399 (S.D.N.Y.1999) (Pollack, J.) (awarding a 2.5 multiplier, and noting that "multipliers of between 3 and 4.5 have been common in federal securities cases").

### E. The Overwhelmingly Positive Reaction to the Proposed Settlement by Class Members Underscores the Reasonableness of the Fee Request

The reasonableness of the requested fee is underscored by the lack of objections to it on the part of Settlement Class Members. *See In re Lucent Techs, Inc. Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004). Over 45,000 copies of the Notice were mailed to potential Settlement Class Members. Young Aff. ¶ 12. Each Notice specifically indicating that Lead Counsel would apply for a fee award of up to 20% of the Settlement Fund, for reimbursement of expenses, and that any class member could object to the fee and expense application. *Id.*, at Ex. 1. The Summary Notice disseminated via PR NEWSWIRE also informed investors of Lead Counsel's fee request. *Id.*, at Ex. 2. The lack of objections to petitioner's fee application is powerful evidence that the requested fee is fair. S*ee, e.g.*, *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325 (E.D.N.Y. 1993); *Schwartz v. Novo Industri A/S*, 119 F.R.D. 359, 363 (S.D.N.Y. 1988) (Weinfeld, J.).

**POINT II**

**LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT
OF OUT-OF-POCKET EXPENSES SHOULD BE GRANTED**

Lead Counsel also requests reimbursement of $59,628.23 in costs and expenses reasonably incurred while prosecuting this action. Murray Decl., ¶ 39 and Ex. B. The requested expense award is reasonable and justified, for despite the very real possibility of no recovery and no reimbursement for time or money expended, Lead Counsel advanced all of the funds necessary to prosecute this case to settlement for the benefit of the Settlement Class.

The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out of pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients."). The categories of expenses for which Lead Counsel seeks reimbursement here, filing fees, computer and databases research, investigator services, accounting and economic experts fees, postage and courier services, copying expenses, long distance phone calls, and the like, *see* Murray Decl., Ex. B, are the type of customary and necessary expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *See, e.g., Hicks*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005) (approving reimbursement for expenses such as expert witness fees, claims administrator fees, and "other expenses necessary to the litigation and settlement of this action."); *Global Crossing*, 225 F.R.D. at 468 (expenses related to expert witnesses, filing fees, service of process, travel, and legal research

19

are properly chargeable to the settlement fund because they are the type for which the "paying, arms' length market" reimburses attorneys); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (noting that courts have held that photocopying expenses, telephone charges, postage, express mail services, witness fees and expert costs are properly reimbursable expenses). Indeed, under the PSLRA, the Court may award "reasonable costs and expenses . . . directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C.A. § 78u-4(a)(4).

The Notice informs Settlement Class Members that Lead Counsel would seek reimbursement of expenses up to $100,000, and, tellingly, no opposition to the expense application has been received. The actual expenses requested are less than $60,000. Where there are no objections to the requested reimbursement, the requested expenses should be awarded. *See Am. Bank Note*, 127 F. Supp. 2d at 433; *Ressler*, 149 F.R.D. at 657.

20

**CONCLUSION**

Based on the foregoing and the entire record, Lead Plaintiff respectfully requests that the Court award Lead Counsel attorneys' fees in the amount of $480,000 (20% of the Settlement Fund), plus *pro rata* interest earned thereon; and additionally, approve Lead Counsel's request for reimbursement of $59,628.23 in costs and expenses incurred in litigating the Action.

Dated: New York, New York
        June 30, 2008                         MURRAY, FRANK & SAILER LLP


                                              _____/s/_____
                                              Brian P. Murray (BM 9954)
                                              Gregory B. Linkh (GL 0477)
                                              275 Madison Avenue, Suite 801
                                              New York, New York 10016
                                              Telephone: (212) 682-1818
                                              Facsimile: (212) 682-1892


                                              **Lead Counsel for Lead Plaintiff**
                                              **and the Putative Class**

21

## <u>DECLARATION OF SERVICE</u>

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 30th day of June, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below, 1) through this court's ECF system, 2) by e-mail, and 3) by causing a true copy thereof to be delivered by regular United States mail, postage prepaid:

**MORRISON & FOERSTER, LLP**

Jack C. Auspitz (jauspitz@mofo.com)
Joel C. Haims (jhaims@mofo.com)
Lily M. Fan (lmfan@mofo.com)
1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

**Counsel for Qiao Xing and the Individual Defendants**

**LESTER SCHWAB KATZ
 & DWYER, LLP**

Lawrence Steckman
(lsteckman@lskdnylaw.com)
120 Broadway
New York, New York  10271
Telephone:  (212) 964-6611
Facsimile:  (212) 267-5916

**Counsel for Grobstein, Horwath & Company LLP**

_____/s/Gregory B. Linkh_____
        Gregory B. Linkh (GL-0477)