**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE QIAO XING SECURITIES LITIGATION<br><br>This Document Relates to:<br><br>All Actions | MASTER FILE 07-CIV-7097 (DLC)<br><br>**"ECF" Case** |

## DECLARATION OF BRIAN P. MURRAY

I, BRIAN P. MURRAY, make the following declarations under penalty of perjury:

1.      I am an attorney admitted to practice before this Court and a member of Murray, Frank & Sailer LLP, Court-appointed Lead Counsel, and counsel for lead plaintiff PELO, a.s. ("Lead Plaintiff").  I am familiar with the proceedings herein and if called upon, I would testify that the following facts are true and correct.

2.      Plaintiff respectfully seeks approval, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure (the "Rules"), of the proposed class action settlement ("Settlement") entered into with defendants Qiao Xing, Rui Lin Wu, Albert Leung, Zhi Yang Wu, Sonny Kwok Wing Hung, Ze Yun Mu, Yi Hong Zhang, (the "Qiao Xing Defendants"), and Grobstein, Horwath & Company LLP (with the Qiao Xing Defendants, collectively, "Defendants"), which fully resolves all claims asserted in this consolidated class action (the "Action").

## I.      PROCEDURAL HISTORY

3.      On July 17, 2007, Qiao Xing announced that it was restating its financial statements for the years 2003, 2004, and 2005.

4.      As a result of this announcement, beginning on August 9, 2007, five proposed class actions were filed in the United States District Court for the Southern District of New York, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

5.      These cases were assigned to this Court.  In orders dated November 1, 2007 [Dkt. Nos. 26 and 27], the Court: (1) consolidated the five actions under the caption In re Qiao Xing Securities Litigation, No. 07 Civ. 7097 (DLC); (2) appointed PELO, a.s. as Lead Plaintiff in the Action; and (3) approved Lead Plaintiff's selection of Murray, Frank & Sailer LLP as Lead Counsel.

6.      Thereafter, the Court ordered the parties to mediate the case before Magistrate Judge Henry Pitman.   At a mediation held on January 10, 2008, the parties engaged in intensive negotiations.  At the conclusion of the mediation, Judge Pitman recommended to the parties that the case settle for $2.4 million.  Upon further consideration, the parties agreed to settle the case for that amount.  Accordingly, the Settlement before the Court was entered into in good faith, after arm's-length and non-collusive negotiations between experienced counsel on both sides before an impartial mediator.

7.      The Court had previously ordered that Lead Plaintiff file its consolidated amended complaint on or before February 1, 2008.  The Court was given notice of the Settlement on January 17, 2008, and as a result the amended complaint was not filed.

8.      The parties entered into a Stipulation of Settlement on February 25, 2008.

9.      On April 2, 2008, the Court entered an order preliminarily approving the Settlement [Dkt. No. 42].

10.     On April 11, 2008, the Court-appointed claims administrator began mailing of the Notice of Pendency of Proposed Settlement of Class Action ("Notice"), which informed members of the Settlement Class ("Settlement Class Members") of the Settlement and their legal rights and options.

11.     The Notice provides a two-tiered Plan of Allocation, which is structured as follows.  Settlement Class Members who purchased common stock, purchased call options, or sold put options between April 17, 2007 and July 17, 2007 shall receive a greater *pro rata* share (twice as much) than those who purchased common stock, purchased call options, or sold put options between June 30, 2004 and April 16, 2007.  This allocation reflects the fact that as of April 17, 2007, QXM had released its registration statement which contained the financial data that ultimately resulted in Qiao Xing's Restatement.  Accordingly, Lead Plaintiff would have an easier time pleading and proving that as of that date, Defendants were aware of the overvaluation of QXM.  Conversely, Lead Plaintiff would have more difficulty proving that before April 17, 2007 Defendants knowingly or recklessly misstated Qiao Xing's financial statements.

12.     On April 25, 2008, the claims administrator caused to be published, over PR NEWSWIRE, a Summary Notice of Pendency of Proposed Settlement of Class Action.

13.     On June 16, 2008, the deadline passed for individuals to seek exclusion from the Settlement Class.  On June 20, 2008, the deadline passed to object to the Settlement.  As of June 30, 2008, no objections or exclusions have been received by Lead Counsel or filed with the Court.

## FACTUAL ALLEGATIONS[1]

14.    During the Class Period, Qiao Xing filed Form 20-F Annual Reports ("Form 20-F") with the United States Securities and Exchange Commission ("SEC") for the fiscal years 2003, 2004, and 2005.  Each Form 20-F detailed Qiao Xing's net income, net sales, and total assets for that fiscal year and previous fiscal years. Attached to the Forms 20-F were certifications provided by defendants Wu and/or Leung, pursuant to the Sarbanes-Oxley Act, which represented that the report "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . . ." During the Class Period, Qiao Xing also filed several Form 14-A Proxy Statements with the SEC which provided similar information regarding Qiao Xing's net income, net sales, and total assets for fiscal years 2003, 2004, and/or 2005.

15.    Qiao Xing was the owner of its subsidiary Qiao Xing Mobile ("QXM").  QXM, in turn, acquired a 90% share in its subsidiary CECT from 2003 to 2005.  CECT's value was reflected on QXM's balance sheets and financial statements, and QXM's value in turn was reflected on Qiao Xing's balance sheets and financial statements.  An incorrect valuation of CECT would therefore have an effect on Qiao Xing's financial statements.

16.    Qiao Xing's financial statements during the Class Period were audited by Grobstein, Horwath & Company LLP, which certified that the financial statements in each Form 20-F "present[ed] fairly, in all material respects, the consolidated financial position of Qiao Xing Universal Telephone, Inc. and Subsidiaries," and that the financial statements were "in conformity with accounting principles generally accepted in the United States of America."

---

[1] While Lead Plaintiff never filed an amended complaint, the allegations below would form the basis of such a complaint.

4

17.    In May 2007, QXM conducted an initial public offering ("IPO").    QXM's registration statement, first filed on April 17, 2007, disclosed material weaknesses and significant deficiencies in QXM's internal controls over financial reporting. The main material weakness primarily related to a lack of effective controls over the financial reporting process that contributed to the following individual material weaknesses: (1) ineffective controls over the accounting for the acquisition of QXM's initial 65% equity interest in CECT in 2003 and the acquisition of an additional 25% equity interest in 2005; (2) ineffective controls over the completeness, accuracy, and presentation and disclosure of QXM's revenue from technical services and the sale of co-operative products; and (3) ineffective controls over the accuracy and presentation and disclosure of deferred taxes.    This registration statement provided revised figures for QXM for revenue, net income, total assets, and net assets for the years 2004 and 2005.

18.    On July 17, 2007, before the market opened, Qiao Xing announced that "it filed with [the] SEC a Form 20-F to release its 2006 annual report and to restate its financial data for the years 2005, 2004 and 2003" (the "Restatement").    The Restatement disclosed that the assumptions used to value CECT were being reassessed, in accordance with the disclosure made in QXM's registration statement. The Restatement further disclosed (1) the incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent" and (2) the incorrect recognition of losses regarding an equity investment.    The latter two matters are unrelated to the disclosures made in QXM's registration statement.

19.    As a result of the Restatement, Qiao Xing's net income dropped from $3.024 million to $187,000 (a 94% drop) in 2004, and from $32.874 million to $31.987 million in 2005

(a 1.5% drop), and the net loss in 2003 increased from $1.028 million to $3.175 million (a 310% increase).  The Restatement also impacted reported net sales and total assets.

20.    Qiao Xing's July 17, 2007 announcement and 2006 Form 20-F also contained other negative news, unrelated to the Restatement, concerning Qiao Xing's current results and future projections.  The price of Qiao Xing common stock closed at $11.04 per share at on July 17, 2007, a 21% drop from the previous day's close of $13.97.

21.    The Restatement, by its terms, is an admission that the financial statements were false when they were made in 2003, 2004, and 2005.  Lead Plaintiff alleges that, at least as of April 17, 2007, the date of the issuance of QXM's registration statement, Defendants knew that the 2003, 2004, and 2005 financial statements were false.  Lead Plaintiff alleges that the Restatement should have been made on that date, if not before.

## III.    RISKS OF LITIGATION

22.    Lead Plaintiff faced many risks and difficulties were this Action to proceed, and there was a significant chance that, if the Action did not settle when it did, the Action might at some point be dismissed outright, and Class Members would recover nothing.

23.    If Lead Plaintiff survived Defendants' motion(s) to dismiss, discovery would commence.  It is likely that discovery in this case would be both expensive and time consuming, requiring substantial travel and translation expense.

24.    Most of the relevant documents are written in Chinese and are located in China, as are many of the relevant witnesses.  Furthermore, due to a culture that encourages corporate loyalty, Lead Counsel's investigators were met with skepticism and reluctance when conducting interviews with witnesses in China.

25.     A trial would be costly, and involve the preparation of pre-trial and post-trial briefs, and lengthy and complicated expert discovery.  Experts would be expected to testify concerning such complex issues as the damages suffered by Lead Plaintiff and the Class and loss causation.  Even if Lead Plaintiff had prevailed at trial, post-judgment appeals were likely to be taken by Defendants.

26.     Lead Counsel pursued Lead Plaintiff's claims without the assistance of a government investigation or findings.

27.     If the Action were to progress further, Lead Plaintiff would face the following legal hurdles: (1) difficulties in alleging and proving that Defendants acted with the requisite culpability both before and after the IPO; and (2) difficulties in showing that the revelation of the alleged misconduct, and not other factors, caused a decline in Qiao Xing's stock price. Defendants would argue, both at the pleading stage and at summary judgment and/or trial, that (1) the Restatement was not material, because Qiao Xing's stock price did not drop on April 17, 2007, the date that the material weaknesses and revised financial results, including the valuation of CECT, discussed above, were first mentioned in QXM's registration statement; (2) the Restatement was due to a disagreement between accounting firms and was not the result of fraud, and (3) Qiao Xing's stock dropped at the end of the Class Period because of news unrelated to the Restatement, including news of Qiao Xing's current results and future projections.

28.     According to Lead Plaintiff's damages expert, Financial Markets Analysis, LLC ("FMA"), approximately 17 million damaged shares were purchased by hundreds, if not thousands, of shareholders.  FMA calculated that while the drop of Qiao Xing's stock price at the end of the Class Period caused a loss of $50 million (17 million damaged shares multiplied by the $2.94 drop at the end of the Class Period), the Settlement Class Members suffered actionable

7

damages (that can be tied to Defendants' alleged fraud) of, at most, $3.3 million. Thus, FMA estimated that, at most, 6.6% of the total market loss was due to Defendants' alleged fraud.

29.     Defendants would argue that an even larger share, if not the entire drop, occurred for reasons other than Defendants' alleged fraud. Accordingly, it is possible that even if Lead Plaintiff prevailed on falsity, materiality, and scienter grounds, it would not have been able to prove loss causation or ascertainable damages – and the Settlement Class Members would end up with nothing. Undoubtedly, Defendants would introduce the testimony of a damages expert who would dispute the existence of any material damages and further opine that if any damages existed they were much less than estimated by Lead Plaintiff. The determination of the existence and amount of damages, like the determination of liability, is a complicated and uncertain process that would have involved conflicting expert opinions. Had the Action gone to trial, the jury would have been presented with vastly different damage estimates by Lead Plaintiff and Defendants and would have been required to evaluate conflicting damage estimates. Although we believe that we would have been able to establish some amount of damages, there can be no guarantee that it would prevail.

30.     While companies in securities class actions are often covered by Directors and Officers ("D&O") Insurance, Qiao Xing's insurance carrier has raised issues as to the applicability of coverage in this Action. Accordingly, there was an increased likelihood that Qiao Xing, a company located in China, would be responsible for most or all of any judgment or settlement. Furthermore, because Qiao Xing has no assets in the United States, it could prove difficult to collect any judgment.

## IV.    THE WORK DONE BY COUNSEL

31.    A total of over 632.8 hours was expended by Lead Counsel to prosecute this Action and bring about the proposed Settlement.  The services rendered by Lead Counsel reflect its thorough investigation and diligent prosecution of the Action, and include:

- drafting and filing an initial complaint;

- drafting a consolidated amended complaint;

- writing motions for the appointment of lead plaintiff and the approval of their selection of lead counsel, and opposing competing motions;

- attending a Court hearing regarding the consolidation of related cases, motions for the appointment of lead plaintiff, and motions for the approval of selection of lead counsel;

- consulting with three sets of private investigators, based both domestically and in Asia;

- consulting with experts and other consultants on accounting, damages, and loss causation issues;

- writing a mediation brief in preparation for a Court-ordered mediation with Magistrate Judge Pitman, and attending the mediation session;

- negotiating the Settlement and writing the Stipulation of Settlement and its various exhibits, including the Notice and Summary Notice;

- petitioning the Court for preliminary approval of the Settlement and the form of Notice mailed to the Class; and

- setting up the claims administration process and drafting the plan of allocation.

32.    Indeed, as set forth in detail in the Murray Declaration, the successful prosecution of this case involved the detailed examination of complex and difficult factual and legal issues, including materiality of misrepresentations, scienter, loss causation, control person liability, and

9

class certification.  Intensive factual research, investigative work, and many hours of drafting were necessary to prepare the factual and legal allegations in this Action.  To evaluate and negotiate the proposed settlement, Lead Counsel was required to develop an understanding of Qiao Xing's business, operations, accounting practices and financing, and prosecute Lead Plaintiff's claims.

33.     To evaluate and negotiate the proposed settlement, Lead Counsel retained investigators fluent in both English and Chinese and who could conduct interviews with witnesses and understand the legal issues of the case, which added an additional layer of complexity.

34.     While Lead Plaintiff has not conducted formal discovery of Defendants (due to the discovery stay mandated by the Private Securities Litigation Reform Act of 1995), the investigation described above provided Lead Plaintiff and Lead Counsel with information concerning the strengths and weaknesses of the parties' respective claims and defenses.  The Settlement was reached after a detailed factual investigation, involving three independent sets of investigators, located domestically and in Asia, which resulted in numerous interviews individuals with knowledge of the facts, most of whom are Chinese citizens who reside in China. Lead Plaintiff also retained accounting and damages experts to evaluate the case.

35.     Attached hereto as Exhibit A is a report reflecting the rates and hours spent on this litigation by each timekeeper of my firm.  My firm spent a total of 632.8 hours, for a total lodestar of $322,600.

36.     The hourly rates for the partners, attorneys and professional staff of my firm that are included in Exhibit A are the same as the regular current rates charged for their services in

non-contingent matters and/or which have been accepted and approved in other securities or shareholder litigation.

37.    The time reflected in this declaration was time actually spent by the attorneys and staff involved.  This time does not include any time spent preparing this Declaration or the request for attorneys' fees.

38.    My firm's lodestar figures are based upon my firm's billing rates, which rates do not include charges for expense items.

39.    My firm incurred a total of $59,628.23 in unreimbursed expenses in connection with our work in this litigation.  The expenses are broken down by category in Exhibit B attached hereto.

40.    My firm has a service plan with Westlaw in which we pay a fixed monthly fee for certain services.  The monthly Westlaw bill is apportioned among the cased worked on in that month and is not marked up to reflect what the charges would have been absent the fixed monthly service contract.

41.    The expenses incurred pertaining to this litigation are reflected in the books and records of my firm.  All expenses are billed to the case at cost and do not reflect a service premium.  These books and records are prepared from expense vouchers and check records and are an accurate record of the expenses incurred.

42.    Attached as Exhibit C is the firm resumé of Murray, Frank & Sailer LLP.

## V.    <u>ATTACHED DOCUMENTS</u>

43.    Attached as Exhibit D is the final order and judgment in *Schnall v. Annuity Life Re (Holdings)*, Ltd., 02 CV 2133 (EBB) (D. Conn. Jan 21, 2005).

44.    Attached as Exhibit D is the final order and judgment in *In re Canadian Sup.*

*Energy Inc. Sec. Litig.*, 04-cv-2020 (S.D.N.Y. Oct. 20, 2005).

Dated:  June 30, 2008                              _____/s/_____
                                                   Brian P. Murray

# Exhibit A

**MURRAY, FRANK & SAILER LLP**

**QIAO XING SECURITIES LITIGATION**

**LODESTAR REPORT**

**REPORTING PERIOD:  INCEPTION THROUGH JUNE 30, 2008**

| PROFESSIONAL | STATUS* | TOTAL HOURS TO DATE | HOURLY RATE | TOTAL LODESTAR TO DATE |
|---|---|---|---|---|
| Brian P. Murray | P | 99.7 | $710 | $70,787 |
| Jacqueline Sailer | P | 10.7 | $710 | $7,597 |
| Gregory B. Linkh | A | 329.3 | $550 | $181,115 |
| Brian D. Brooks | A | 7.1 | $475 | $3,373 |
| Bridget V. Hamill | A | 13.5 | $425 | $5,738 |
| Thomas J. Kennedy | A | 11.3 | $425 | $4,803 |
| Eva Hromadkova | A | 24.0 | $350 | $8,400 |
| Scott Levy | A | 94.0 | $350 | $32,900 |
| Matthew McManus | PL | 15.0 | $225 | $3,375 |
| Nevila Gjyrezi | PL | 28.2 | $160 | $4,512 |
| **TOTAL** | | **632.8** | | **$322,600** |

\*   Partner     (P)
     Associate   (A)
     Paralegal   (PL)

# Exhibit B

**MURRAY, FRANK & SAILER LLP**

**QIAO XING SECURITIES LITIGATION**

**DISBURSEMENT REPORT**

**REPORTING PERIOD:  INCEPTION THROUGH JUNE 30, 2008**

| DISBURSEMENT | TOTAL AMOUNT TO DATE |
|---|---|
| Court & Filing Fees | $350.00 |
| Notice Publications | $625.00 |
| Duplicating - In-House | $49.72 |
| Transcript Fees | $166.91 |
| Travel and Meals | $155.51 |
| Computer Research | $45.95 |
| Telephone/FAX | $290.66 |
| FedEx/Express Delivery | $265.53 |
| Outside Investigators | $45,573.00 |
| Expert Costs | $12,105.95 |
| **TOTALS:** | **$59,628.23** |

# Exhibit C

# Murray, Frank & Sailer llp
## ATTORNEY AT LAW

275 Madison Avenue, 8th Floor

New York, NY 10016

Telephone: 212.682.1818

Toll Free: 800.497.8076

Facsimile: 212.682.1892

info@murrayfrank.com

www.murrayfrank.com

## MURRAY, FRANK & SAILER LLP

*CONCENTRATES ITS PRACTICE IN CLASS ACTION LITIGATION, PARTICULARLY IN CASES INVOLVING FEDERAL SECURITIES LAW, FEDERAL ANTITRUST LAW, ERISA, AND STATE CONSUMER PROTECTION LAW.*

### SECURITIES FRAUD

Murray, Frank & Sailer has been lead counsel, a member of the executive committee, or represented a class representative in successful securities actions throughout the United States, including the following:

*In re Royal Ahold Securities Litigation* (recovery of $1.1 billion); *In re Williams Sec. Litig.* ($311 million); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* ($125 million); *In re JWP Inc. Sec. Litig.* ($40 million); *In re Turkcell Iletisim Hizmetleri A.S. Sec. Litig.* ($19.2 million); *In re PictureTel Inc. Sec. Litig.* ($14 million); *In re Marion Merrell Dow Inc. Sec. Litig.* ($14 million); *LaVallie v. Owens-Corning Fiberglas Corp.* ($10 million); *In re USX Sec. Litig.* ($9 million); *Miller v. Bonmati* ($9.9 million); *Feiner v. SS&C Tech., Inc.* ($8.8 million); *In re ContiFinancial Sec. Litig.* ($5.5 million); *In re EIS Int'l Inc. Sec. Litig.* ($3.8 million); *In re Quintiles Transnational Sec. Litig.* ($3 million); *In re Ramp Corp. Sec. Litig.* ($2.075 million).

The firm is currently lead or co-lead counsel, a member of the executive committee, or represents a class representative in many cases, including the following:

*In re Xybernaut Corp. Securities MDL Litigation*; *The 60223 Trust v. Goldman Sachs & Co.*; *In re General Motors Corp. Sec. Litig.*; *In re Harley-Davidson, Inc. Sec. Litig.*; *In re Infineon Technologies AG Sec. Litig.*; *Lowry v. Andrx Corp.*; *In re Crompton Sec. Litig.*; *In re Credit Suisse First Boston Corp. (Lantronix, Inc.) Analyst Sec. Litig.*; *Brody v. Zix Corp.*; *In re Qiao Xing Universal Telephone Inc. Sec. Litig.*; *Steinberg v. Ericsson LM Telephone Co.*

Murray, Frank & Sailer also represented institutional plaintiffs in individual actions against AOL Time Warner and Royal Dutch Petroleum for violations of the United States securities laws.



## ANTITRUST

Murray, Frank & Sailer has represented plaintiffs in federal and state class actions arising out of antitrust law violations, including the *Bar-Bri, Infant Formula, Brand Name Pharmaceutical, Nasdaq, VISA/MasterCard, Playmobil, Disposable Contact Lens,* and *Time Warner* cases.



Murray, Frank & Sailer is currently counsel in many cases involving Sherman Act violations including: *In re American Express Antitrust Litigation*; *In re Linens Antitrust Litig.*; *Schwartz v. The Thompson Corp.*; *In re Hydrogen Peroxide Antitrust Litig.*; *In re Air Cargo Carrier Antitrust Litig.*; *Slattery v. Apple Computer Inc.*; *Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*; *McDonough v. Toys "R" Us.*

In the *Playmobil* case, Murray, Frank & Sailer was co-lead counsel representing a class of purchasers of Playmobil products. Murray, Frank & Sailer was successful in obtaining certification of a plaintiff class in an oft-cited opinion and settling the case on favorable terms to the class. The Court, at the fairness hearing, "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court." In the *Disposable Contact Lens* case, Murray, Frank & Sailer represented a class of purchasers of disposable contact lenses in California, and eventually obtained reversal in the California appellate courts of a denial of class certification. In the *Time Warner* case, Murray, Frank & Sailer was co-lead counsel representing a class of subscribers of Time Warner's high speed internet service. Murray, Frank & Sailer successfully overcame an arbitration clause and obtained favorable settlement for the class.

## CONSUMER PROTECTION

In the consumer protection area, Murray, Frank & Sailer as lead counsel has represented consumers in class actions involving, *inter alia,* misleading uniform public statements concerning wrongful billing practices and poor service by wireless communications providers; wrongful billing practices by credit card companies, banks and retailers; mislabeling of imported olive oil; mislabeling of domestic pasta; brokerage fees imposed with no or insufficient notice; Medicaid overcharges; and faulty automobile seat heaters.

Among its cases of note, Murray, Frank & Sailer recovered benefits worth $40 million in *Naevus Int'l v. AT&T Corp.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who subscribed to AT&T's Digital One Rate wireless service. In 2005, the firm settled with Volkswagen of America, forcing a recall of all 2003 and 2004

Volkswagen Jettas for faulty automobile seat heaters.

In *Sclafani v. Barilla America, Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Barilla brand pasta, Murray, Frank & Sailer successfully argued that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal.

Similarly, in *Lomenzo v. Bertolli USA Inc.*, a consumer class action brought in New York State Supreme Court on behalf of consumers who purchased Bertolli brand olive oil, Murray, Frank & Sailer successfully argued that Bertolli's labeling misled consumers into believing the company's olive oil was Italian.

### ERISA

Murray, Frank & Sailer is prosecuting several actions in federal court against employers on behalf of employees for employee investment fund mismanagement; knowingly offering, marketing, and selling improper investments to employees for their retirement accounts; and knowingly misrepresenting the prospects of the employees' company in order to sell company stock to them. The firm is currently co-lead counsel in the *Winn-Dixie Stores, Inc. ERISA Litig.* and plaintiffs' class counsel in *In re AON ERISA Litig.* and *In re Cardinal Health, Inc. ERISA Litig.*



### FIRM HIGHLIGHTS

Murray, Frank & Sailer filed over 120 securities class actions in 2004 and over 100 cases in 2005. In Verteris's "Securities Class Action: Plaintiffs' Counsel Watch," Q2, 2005 Report, Murray, Frank & Sailer was ranked fourth in "Plaintiffs' Counsel Litigation Activity Index" and "Plaintiffs' Counsel by Total Unique Actions," and fifth in "Plaintiffs' Counsel Based on Lead Plaintiff Appointments." In ISS's "Accountability Goes Global," May 2007 Report, Murray, Frank & Sailer was ranked fifth in representing international lead plaintiff movants. Murray, Frank & Sailer is also a member of the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT).

### MAJOR ONGOING CASES

*In re Qiao Xing Universal Telephone Inc. Securities Litigation* – Murray, Frank & Sailer is lead counsel representing a class of investors of Qiao Xing Universal Telephone securities;

*Brody v. Zix Corp.* – Murray, Frank & Sailer is co-lead counsel representing a class of investors of Zix Corp. securities;

*Lowry v. Andrx Corp.* – Murray, Frank & Sailer is lead counsel representing a class of investors of Andrx Corp. securities;

*In re Jabil Circuit, Inc. Derivative Litigation* – Murray, Frank & Sailer is co-lead counsel in a derivative action for the benefit of Jabil Circuit arising out of backdated option grants;

*The Police and Fire Retirement System of the City of Detroit v. Jen-Hsun Huang* – Murray, Frank & Sailer is co-lead counsel in a derivative action for the benefit of nVidia Corporation arising out of backdated option grants;

*Pedroli v. Bartek* – Murray, Frank & Sailer is co-lead counsel in a derivative action for the benefit of Microtune, Inc. arising out of backdated option grants;

*In re Infineon Technologies A.G. Securities Litigation* – Murray, Frank & Sailer is co-lead counsel representing a class of investors of Infineon Technologies securities;

*Kosseff v. Ciocia, et al.* – Murray, Frank & Sailer is lead counsel representing shareholders in a derivative action alleging breach of fiduciary duty.



*Scapini v. Argentina* – Murray, Frank & Sailer is lead counsel representing a class of investors who purchased government bonds from Argentina;

*60223 Trust v. Goldman Sachs & Co.* – Murray, Frank & Sailer is co-lead counsel representing a class of investors of Exodus Communications Inc. securities;

*In re General Motors Corp. Securities Litigation* – Murray, Frank & Sailer was lead counsel and currently represents a class of investors in General Motors securities;

*Bennett v. Pops* – Murray, Frank & Sailer is co-lead counsel in a derivative action for the benefit of Alkermes Inc. arising out of backdated option grants;

*Meissner v. Bailey* – Murray, Frank & Sailer is co-lead counsel in a derivative action for the benefit of PMC-Sierra, Inc. arising out of backdated option grants;

*In re Crompton Corp. Securities Litigation* – Murray, Frank & Sailer is co-lead counsel representing a class of investors in Crompton Corp. securities;

*In re Hartford Mutual Funds Fee Litigation* – Murray, Frank & Sailer is an executive committee member representing mutual fund purchasers who paid excessive fund fees;

*Steinberg v. Ericsson LM Telephone Co.* – Murray, Frank & Sailer is lead counsel representing a class of investors of Ericsson LM Telephone Co. securities.

## JUDICIAL COMMENDATIONS

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D 156, 164, 174 (S.D.N.Y. 2007), in which the Court commended Murray, Frank & Sailer's "skillful and zealous representation over a six-year period," and finding the "high quality of representation provided by Lead Counsel is evident from the extensive record of this case."



*In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y. 2006), in which the Court, before appointing the firm lead counsel, stated: "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you."

*Miller v. Bonmati,* Del. Ch., C.A. No. 15849, Lamb, V.C. (March 18, 1999), in which the Court stated "I am quite pleased by the work that was done by the plaintiffs' counsel. They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."

*Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), in which Judge Robert Sweet stated plaintiffs' counsel were "skilled advocates and negotiators."

*In re EIS International, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in which the Court stated: "I wanted to compliment counsel . . . We have been together quite a long time in the case and I appreciate all the fine legal work that you've done."

*Adair v. Microfield Graphics, Inc.* (D. Or. 1998), in a case that recovered 47% of estimated damages, the Court noted "Plaintiff's counsel have exhibited a high quality of work in prosecuting this action."

*Steffen v. Playmobil USA, Inc.*, Civ No. 95-2896 (E.D.N.Y.), in which the Court "compliment[ed] both counsel in the fine job done negotiating with each other and also the legal work that has been submitted to the Court."

*Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), in which the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"



## PRECEDENT SETTING DECISIONS

In *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, 6 Mass. L. Rptr. 367 (Mass. Super. Jan 28, 1997), on a case of first impression, the Superior Court of Massachusetts applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts.

In *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001), Murray, Frank & Sailer successfully argued on a case of first impression in the District of Rhode Island for the pleading standard for claims against an auditor under the Private Securities Litigation Reform Act of 1995.

In *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998), Murray, Frank & Sailer prevailed on an issue of first impression concerning the liability of a qualified independent underwriter for an initial public offering.



In *Adair v. Bristol Tech. Sys., Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998), Murray, Frank & Sailer prevailed on an issue of first impression in the Southern District of New York, successfully arguing that standing under the Securities Act of 1933 was not limited to buyers who purchased directly on an initial public offering. The opinion was subsequently cited in decisions and secondary sources over 70 times.



THE PARTNERS

# THE PARTNERS

**BRIAN MURRAY**, a partner, was admitted to the bars of Connecticut in 1990, New York and the United States District Courts for the Southern and Eastern Districts of New York in 1991, the Second Circuit in 1997, the First and Fifth Circuits in 2000, and the Ninth Circuit in 2002. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude*, from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the St. John's Law Review. Mr. Murray co-wrote: *The Proportionate Trading Model: Real Science or Junk Science?*, 52 Cleveland St. L. Rev. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 Buffalo L. Rev. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove*, 53 Baylor L. Rev. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness*, 27 New England J. on Civil and Criminal Confinement 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba*, 20 Maryland J. of Int'l L. and Trade 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach*, 23 U. Dayton L. Rev. 316 (1997); *Loss Causation Pleading Standard*, New York Law Journal (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery*, New York Law Journal (March 3, 2003); and *Inherent Risk In Securities*

*Cases In The Second Circuit*, New York Law Journal (Aug. 26, 2004). He also authored *Lifting the PSLRA "Automatic Stay" of Discovery*, 80 N. Dak. L. Rev. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933*, 73 St. John's L. Rev. 633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers*, New York Law Journal (Sept. 24, 1998); and Comment, Weissmann v. Freeman: *The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors*, 63 St. John's L. Rev. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatech Group which settled midway through the trial.

Mr. Murray's major cases include *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim Hizmetleri A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability

# THE PARTNERS

found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages.

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Recreation for Garden City (2001-2002); Commissioner of Police for Garden City (2000-2001); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-present; Member, Federal Bar Counsel, Second Circuit Committee, 2007-present.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, at the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe on the topic of class actions.

# THE PARTNERS

**MARVIN L. FRANK**, the managing partner, was admitted to the bars of New York, New Jersey, and the United States District Court for the District of New Jersey in 1991, the United States District Courts for the Southern and Eastern Districts of New York in 1992, the Second Circuit in 1998, the Seventh Circuit in 1999, the United States Supreme Court in 2004, the District of Nebraska in 2005, the Eastern District of Michigan in 2006, the Northern District of Texas in 2006, and the Western District of New York and the Northern District of Illinois in 2008. Mr. Frank graduated with a Bachelor of Arts degree from The City College of New York in 1969, a Master of Business Administration degree from Bernard M. Baruch College in 1974, and received his Juris Doctor degree, *magna cum laude*, from New York Law School in 1991. At New York Law School, he received the Kaplun Foundation Award For Academic Excellence.

Mr. Frank's major cases include *In re General Motors Corp. Sec. Litig.*, 05-CV-8088 (S.D.N.Y.), in which the Court, before appointing the firm lead counsel, stated "we know Mr. Frank very well, so they are both esteemed and experienced attorneys in these matters, and I don't think anybody could go wrong with either one of them to be honest with you"; *Sclafani v. Barilla America, Inc.*, 2004-03542 (N.Y. App. Div.), in which Mr. Frank successfully argued before the Supreme Court's Appellate Division that General Business Law § 349(d) did not establish a complete defense to a plaintiff's allegation that Barilla's packaging misled consumers into believing the company's pasta was made in Italy, obtaining a reversal of a trial court dismissal; *Miller v. Bonmati,* Del. Ch., C.A. No. 15849 (Lamb, V.C.) (Mar. 18, 1999), in which the Court, while approving a $9.9 million recovery, stated "I am quite pleased by the work that was done by the plaintiffs' counsel.

# THE PARTNERS

They seem to have done a very professional job of dealing with a difficult situation and have obtained, from everything I can ascertain from the record in front of me, quite a beneficial settlement that gives an opportunity for this situation to work itself out."; *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) ($40 million recovery); *In re Marion Merrell Dow Inc. Sec. Litig.* (W.D. Mo.) ($14 million); *In re PictureTel Inc. Sec. Litig.* (D. Mass.) ($14 million); *In re ContiFinancial Sec. Litig.* (S.D.N.Y.) ($5.5 million); *In re EIS Int'l, Inc. Sec. Litig.*, 97-cv-813 (D. Conn. 2006), in which the Court stated: "I wanted to compliment counsel...We have been together quite a long time in the case and I appreciate all the fine legal work that you have done."; *In re Quintiles Transnational Sec. Litig.* (M.D.N.C.) ($3 million).

Mr. Frank is the firm's representative on the Executive Committee of the National Association of Shareholder and Consumer Attorneys (NASCAT). He is also Vice President of the Institute for Law and Economic Policy (ILEP), a public policy research and educational foundation established to preserve, study, and enhance access to the civil justice system by shareholders and consumers and is Vice President of the Emerald Green Property Owners Association in Rock Hill, New York.

Mr. Frank co-wrote *Staying Derivative Actions Pursuant to PSLRA and SLUSA*, New York Law Journal (Oct. 21, 2005) and the Securities Reform Act Litigation Reporter, Vol. 20, No. 3 (Dec. 2005). Mr. Frank has been a panelist at the American Banker's Association Operations Conference for Securities, Brokerage & Trust in Memphis, Tennessee; a panelist at the Magenta One Conference for Securities and Trust on the Isle of Jersey, United Kingdom; and a panelist at the Global Pensions' Conference on Shareholder Responsibility and Class Action Law in London.

# THE PARTNERS

**JACQUELINE SAILER**, a partner, was admitted to the bars of Delaware in 1990, the United States District Court for the District of Delaware in 1991, New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996, the United States Court of Appeals for the Sixth Circuit and the United States District Court for the District of Colorado in 1997, the United States Court of Appeals for the Second Circuit in 1998, and the United States Supreme Court in 2005. She graduated with honors from Smith College with a Bachelor of Arts degree in 1985. She received a Juris Doctor degree from St. John's University School of Law in 1990. Ms. Sailer is fluent in French. She is a member of the Federal Bar Council; the New York State Bar Association; and the Association of the Bar for the City of New York, including the Sex and Law Committee, 1996-1999. Ms. Sailer is the co-author of *Loss Causation Pleading Standards*, New York Law Journal (Feb. 25, 2005). Ms. Sailer is fluent in French.

Among the major cases in which Ms. Sailer has served as Lead or Co-Lead Counsel, Ms. Sailer served as Co-Chair of the Executive Committee of Lead Counsel in *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.* (S.D.N.Y.), in which $125 million was recovered on behalf of investors in settlement of claims of misrepresentations in published analyst reports. In approving that settlement, the court commended Murray, Frank & Sailer's "skillful and zealous representation over a six-year period," and found that the "high quality of representation provided by Lead Counsel is evident from the extensive record of this case." *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*, 246 F.R.D 156, 164, 174 (S.D.N.Y. 2007). Ms. Sailer was also responsible for the recovery of $40 million worth of benefits for a plaintiff class of wireless consumers in a state consumer class action, *Naevus Int'l, Inc. v. AT&T Corp.*

# THE PARTNERS

Her major reported cases as lead counsel include *Naevus Intl., Inc. v. AT&T Corp.*, 713 N.Y.S.2d 642 (Sup. Ct. New York Co. 2000) (establishing limits on the reach of the Federal Communications Act on state consumer fraud claims), in which she successfully argued against a motion to dismiss on behalf of a class of current and former subscribers to AT&T's wireless service; and a federal securities class action: *Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*, 999 F. Supp. 725 (S.D.N.Y. 1998) (denying underwriters' motion to dismiss securities fraud claims); *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173 (D.R.I. 2001) (addressing the pleading standard for fraud under the Private Securities Litigation Reform Act of 1995 for claims against an auditor, an issue of first impression in the District of Rhode Island), in which she successfully argued and opposed an auditor's motion to dismiss claims under Section 10(b) of the Securities Exchange Act of 1934.

At the fairness hearing in *Metro Global*, the court expressed an "appreciation for how difficult this case was for all sides, for how hotly contested many of the issues in this case were from the get-go and how reaching a settlement, given all of those considerations, was particularly difficult; so I commend all of you for persevering in the efforts that you made toward reaching a settlement . . . [and] for achieving what I find to be a fair, adequate and reasonable result[.]"

Ms. Sailer's trial experience includes the prosecution of a breach of contract case that was tried successfully before a jury in the District of Delaware.

Currently Ms. Sailer's major case responsibilities include serving as lead counsel in *Lowry v. Andrx Corp.* (S.D. Fla.) (securities class action), *60223 Trust v. Goldman Sachs & Co.* (S.D.N.Y.) (securities class action), and *In re Xybernaut Corp. Securities Litigation* (E.D. Va.) (securities class action).

# THE PARTNERS

**LAWRENCE D. MCCABE**, a partner, was admitted to the bars of New York and the United States District Court for the Southern District of New York in 1995, the United States District Court for the Eastern District of New York in 2001, the Eastern District of Michigan in 2006, the Northern District of Texas in 2006, and the Western District of New York in 2008. Mr. McCabe received a Bachelor of Arts degree, *cum laude,* from Iona College in 1984. He received his Juris Doctor degree, *cum laude*, from Fordham University School of Law in 1994. At Fordham, he was a Notes & Articles editor of the Law Review. Upon graduation from Fordham, he was admitted into the Order of the Coif.

Mr. McCabe focuses his practice primarily on class actions on behalf of defrauded investors, derivative actions on behalf of corporate shareholders, as well as complex commercial litigation. His extensive securities fraud litigation experience includes significant settlements for class members in

*In re Computer Associates 2002 Class Action Sec. Litig.* (common stock valued at approximately $165 million); *Scheiner v. i2 Tech., Inc.* (N.D. Tex.) ($87.75 million); *In Re Lason, Inc. Sec. Litig.* (E.D. Mich.) ($12.68 million); *In re Berkshire Realty Co. Shareholder Litig.* (Del. Ch.) ($6.25 million); *Dorchester Investors v. Peak TrENDS Trust* (S.D.N.Y.) ($4 million).

Upon graduation from college, Mr. McCabe worked as a securities trader, specializing in NASDAQ securities. After law school, Mr. McCabe practiced commercial litigation with Skadden, Arps, Slate, Meagher & Flom LLP. Mr. McCabe has been an active member of the plaintiffs bar since 2002 when he became associated with Milberg LLP and later with Coughlin Stoia Geller Rudman & Robbins LLP.



SPECIAL COUNSEL

# SPECIAL COUNSEL

**RANDALL H. STEINMEYER**, Special Counsel, is admitted to the bars of Minnesota and the United States District Court for the District of Minnesota. He earned his Bachelor of Science degree from the University of Southern California in 1993, and his Juris Doctor degree, *cum laude*, from Hamline University School of Law in 1996, where he was a member of the Hamline Law Review. He is the author of *The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings*, 281 Practicing Law Institute (1998). Prior to joining Murray, Frank & Sailer Mr. Steinmeyer was a partner with Coughlin Stoia Geller Rudman & Robbins LLP and Milberg LLP. Before that, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a former securities broker and held Series 7 and Series 63 licenses with the National Association of Securities Dealers.

In 2003, Mr. Steinmeyer was a guest lecturer at Oxford University on the impact of corporate and broker dealer fraud on the investment community. He also sits on the Board of Directors of the Hedge Fund Association. He has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors.



THE ASSOCIATES

# THE ASSOCIATES

**GREGORY B. LINKH,** an associate, was admitted to the bars New York and the United States District Court for the Southern and Eastern Districts of New York in 2000. He graduated from the State University of New York at Binghamton with a Bachelor of Arts degree in 1996 and received a Juris Doctor degree from the University of Michigan in 1999. Mr. Linkh is the co-author of Inherent Risk In Securities Cases In The Second Circuit, New York Law Journal (Aug. 26, 2004); Staying Derivative Action Pursuant to PSLRA and SLUSA, New York Law Journal (Oct. 21, 2005) and the Securities Reform Act Litigation Reporter, Vol. 20, No. 3 (Dec. 2005). Prior to joining Murray, Frank & Sailer, Mr. Linkh was associated with the law firms Dewey Ballantine LLP and Pomerantz Haudek Block Grossman & Gross LLP.

**THOMAS J. KENNEDY**, an associate, was admitted to the bars of New York and the United States District Courts for the Southern and Eastern Districts of New York in 1996. He received a Juris Doctor degree in 1995 from St. John's University School of Law and a Bachelor of Science in Accounting from Miami University in 1992. Mr. Kennedy passed the Certified Public Accounting exam in 1998.

**BRIDGET V. HAMILL**, an associate, was admitted to the bars of New Jersey in 2001 and New York in 2005. She received a Juris Doctor degree in 2000 from Rutgers School of Law and a Bachelor of Arts from Douglass College of Rutgers University, where she was one of twelve members of her graduating class in the Douglass Scholars Academic Scholarship Program, in 1985. Her primary area of practice is securities class action. Prior to joining Murray, Frank & Sailer, Ms. Hamill was law clerk to United States Magistrate Judge Mark Falk in the District of New Jersey. While attending law school, she was an employee stock options/stock purchase plan administrator in New York City. Prior to entering law school, Ms. Hamill was a health care information systems manager.

**BRIAN BROOKS,** an associate, was admitted to the bar of Louisiana in 2003, New York in 2006, and the United States District Court for the Southern District of New York in 2006. Mr. Brooks received a Bachelor of Arts from Northwestern State University in 1998 and a Juris Doctor degree from Washington and Lee University in 2002. Prior to joining Murray, Frank & Sailer he was associated with the firm of Percy, Smith & Foote, where his primary area of practice was antitrust law.

# THE ASSOCIATES

**OLGA FORT**, an associate, was admitted to the New York bar in 2005. She graduated from Fordham University School of Law with a Master of Laws degree in Banking, Corporate and Finance Law in 2004. She received a Juris Doctor degree in 1998 from the Moscow Institute of Economics and Law and a Bachelor of Arts degree in Commerce and Marketing from Moscow University for the Humanities in 1995. She attended the Russian State Institute of Intellectual Property from 1998 to 2000. She authored "International Exhaustion of Intellectual Property Rights," Patent Affairs, #8, Moscow, 2000 and Exhaustion of Intellectual Property Rights, Russian State Institute of Intellectual Property Journal, Moscow, 1999 (Thesis for and Presentation at the Conference on Legal Protection, Commercial Use and Problems associated with Intellectual Property organized by the Russian State Agency on Patents and Trademarks, December 16-17, 1999). While attending law school, Ms. Fort clerked for a Judge in Moscow Military Court. She worked as a legal counsel for the Savings Bank of the Russian Federation where she specialized in banking, finance, and corporate law. Prior to joining Murray, Frank & Sailer, Ms. Fort was associated with the Law Offices of Peter E. Finning, where her primary area of practice was insurance defense litigation. She is a member of the American Bar Association and New York State Bar Association. Ms. Fort is fluent in Russian.

**SCOTT H. LEVY**, an associate, was admitted to the New York bar in 2006 and the United States District Courts for the Southern and Eastern Districts of New York in 2007. He received a Bachelor of Arts degree in History from the University of California at Berkeley in 2001 and a Juris Doctor degree from the Fordham University School of Law in 2005. At Fordham, he was a staff member of the Fordham Urban Law Journal.

**EVA HROMADKOVA**, an associate, was admitted to the New York bar in 2005. She received an Master of Laws degree in Corporate Law from New York University School of Law in 2004 and a Master's degree from Comenius University, Slovakia in 2001. Ms. Hromadkova is fluent in Slovak, Czech and Russian.



OF COUNSEL

# OF COUNSEL

**DONALD J. WALLACE** was admitted to the New York bar in 1992. He earned a B.S. from the New York Institute of Technology in 1987 and a Juris Doctor degree from St. John's University School of Law in 1991. While at St. John's, he was a member of the Law Review and was awarded the American Jurisprudence Award for Contracts I. He co-authored You Shouldn't Be Required To Plead More Than You Have To Prove, 53 BAYLOR L. REV. 783 (2001); Jehovah's Witnesses and the Refusal of Blood Transfusions: A Balance of Interests, 33 CATHOLIC LAWYER 361 (1991). Prior to entering law school, Mr. Wallace was a licensed stockbroker in Garden City, New York.

**ANGELA M. FINLAY** was admitted to the Washington State bar in 2000. She received a Juris Doctor degree from New York Law School in 1999 and a Bachelor of Arts from Loyola College in Maryland in 1991. She holds a Certificate in Advanced Accounting from the University of Washington Business School.

**CHARLES CLAY CARROLL** was admitted to the bars of Alabama and the United States District Courts for the Northern, Middle, and Southern Districts of Alabama in 2003, and the bar of Kentucky in 2005, the United States Court of Appeals for the Sixth Circuit in 2007, the United States Court of Appeals for the Eleventh Circuit in 2007, the United States Court of Appeals for the Federal Circuit in 2007, the United States Court of International Trade in 2007, and the Supreme Court of the United States of America in 2007. He earned his Juris Doctor degree in 2002 from the University of Alabama, where he received the Balch & Bingham/Harold A. Bowron Award for Academic Achievement in Labor and Employment Law. After graduating from the University of Alabama with Bachelor of Arts degrees in Political Economics (1994) and Geography (1995), Mr. Carroll earned graduate degrees in International Business Management from Schiller University and Heidelberg University in Germany in 1996; Public Administration from the University of Alabama in 1998; and Mediation and Conflict Resolution from Erasmus University in The Netherlands in 1999.

# OF COUNSEL

**NEIL GANDHI** was admitted to the bars of New Jersey in 2005 and New York in 2006. He received a Bachelor of Arts degree in Economics and History from New York University in 2001 and a Juris Doctor degree from Fordham Law School in 2005. At Fordham, he was an associate editor of the Fordham Intellectual Property, Media, and Entertainment Law Journal. While in law school, Mr. Gandhi interned at the New York Stock Exchange.

**KEITH E. GITMAN** was admitted to the Florida bar in 2007. He received a Juris Doctor degree from Brooklyn Law School in 2003 and a Bachelor of Arts degree in Policy Studies, with a concentration in Society and the Legal System, from the Maxwell School of Citizenship and Public Affairs at Syracuse University in 1999.

**CHLOE MURPHY** was admitted to the New York bar in 2006. She received a Juris Doctor degree from New York Law School in 2004 and a Bachelor of Arts degree in French from Columbia University in 1982. Ms. Murphy is fluent in French.

# Exhibit D

FILED

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

2005 JAN 21  P 4: 13

U.S. DISTRICT COURT
NEW HAVEN. CT

SHERRY SCHNALL, Individually and On )
Behalf of All Others Similarly Situated, )
)
Plaintiffs, )
)
v. )
) Civil Action No. 02 CV 2133 (EBB)
ANNUITY AND LIFE RE (HOLDINGS), )
LTD., XL CAPITAL, LTD., LAWRENCE S. )
DOYLE, FREDERICK S. HAMMER, JOHN )
F. BURKE, WILLIAM W. ATKIN, BRIAN )
O'HARA, AND MICHAEL P. ESPOSITO, JR., )
)
Defendants. )

## ORDER AND FINAL JUDGMENT

On the 21st day of January, 2005, a hearing having been held before this Court to

determine: (1) whether the terms and conditions of the Stipulation and Agreement of Partial

Settlement dated August 24, 2004 (the "Stipulation") are fair, reasonable and adequate for the

settlement of all claims asserted by the Class against the Settling Defendants in the Complaint

now pending in this Court under the above caption, including the release of the Settling

Defendants and the Released Parties, and should be approved; (2) whether judgment should be

entered dismissing the Complaint on the merits and with prejudice in favor of the Settling

Defendants only and as against all persons or entities who are members of the Class herein who

have not requested exclusion therefrom; (3) whether to approve the Plan of Allocation as a fair

and reasonable method to allocate the settlement proceeds among the members of the Class; and

(4) whether and in what amount to award Plaintiffs' Counsel fees and reimbursement of

expenses. The Court having considered all matters submitted to it at the hearing and otherwise;

and it appearing that a notice of the hearing substantially in the form approved by the Court was

mailed to all persons or entities reasonably identifiable, who purchased the common stock of

Annuity and Life Re (Holdings), Ltd. ("ANR") during the period between March 15, 2000 and

November 19, 2002, inclusive (the "Class Period"), except those persons or entities excluded

from the definition of the Class, as shown by the records of ANR's transfer agent, at the

respective addresses set forth in such records, and that a summary notice of the hearing

substantially in the form approved by the Court was published in the international edition of The

Wall Street Journal and the international edition of Financial Times pursuant to the specifications

of the Court; and the Court having considered and determined the fairness and reasonableness of

the award of attorneys' fees and expenses requested; and all capitalized terms used herein having

the meanings as set forth and defined in the Stipulation.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Court has jurisdiction over the subject matter of the Action, the Lead

Plaintiffs, all Class Members, and the Settling Defendants.

2.      The Court finds that the prerequisites for a class action under Federal Rules of

Civil Procedure 23 (a) and (b)(3) have been satisfied in that: (a) the number of Class Members is

so numerous that joinder of all members thereof is impracticable; (b) there are questions of law

and fact common to the Class; (c) the claims of the Class Representatives are typical of the

claims of the Class they seek to represent; (d) the Class Representatives have and will fairly and

adequately represent the interests of the Class; (e) the questions of law and fact common to the

members of the Class predominate over any questions affecting only individual members of the

Class; and (f) a class action is superior to other available methods for the fair and efficient

adjudication of the controversy.

2

3.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure this Court hereby

finally certifies this Action, for purposes of this Settlement only, as a class action on behalf of all

persons who purchased the common stock of Annuity and Life Re (Holdings), Ltd. ("ANR")

during the period between March 15, 2000 and November 19, 2002, inclusive, and were

damaged thereby. Excluded from the Class are the Settling Defendants, the officers and

directors of ANR and XL Capital at all relevant times, members of their immediate families and

their legal representatives, heirs, successors or assigns, and any entity in which Defendants have

or had a controlling interest. For purposes of this Settlement, the term "controlling interest" shall

include any interest of 10% or more of the common stock of any entity. Also excluded from the

Class are the persons and/or entities who requested exclusion from the Class as listed on Exhibit

1 annexed hereto.

4.    Notice of the pendency of this Action as a class action and of the proposed

Settlement was given to all Class Members who could be identified with reasonable effort. The

form and method of notifying the Class of the pendency of the action as a class action and of the

terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal

Rules of Civil Procedure, Section 21D(a)(7) of the Securities Exchange Act of 1934, 15 U.S.C.

78u-4(a)(7) as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"),

due process, and any other applicable law, constituted the best notice practicable under the

circumstances, and constituted due and sufficient notice to all persons and entities entitled

thereto.

5.    The Settlement is approved as fair, reasonable and adequate, and the Class

Members and the parties are directed to consummate the Settlement in accordance with the terms

and provisions of the Stipulation.

3

6.  The Complaint, which the Court finds was filed on a good faith basis in accordance with the PSLRA and Rule 11 of the Federal Rules of Civil Procedure based upon all publicly available information, is hereby dismissed with prejudice and without costs, except as provided in the Stipulation, as against the Settling Defendants only.

7.  Members of the Class and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, debts, demands, rights or causes of action or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on United States federal, state, local, statutory or common law or the laws of Bermuda or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including both known claims and Unknown Claims, (i) that have been asserted in this Action by the Class Members or any of them against any of the Released Parties, or (ii) that could have been asserted in any forum by the Class Members or any of them against any of the Released Parties which arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and relate to the purchase of shares of the common stock of Annuity and Life Re (Holdings) Ltd. ("ANR") during the Class Period (the "Settled Claims") against any and all of the Settling Defendants, their past or present subsidiaries, parents, successors and predecessors, and all of the aforementioned entities' officers, directors, agents, employees, attorneys, advisors, insurers, and investment advisors, and any person, firm, trust, corporation, officer, director or other individual or entity in which any Settling Defendant has a controlling interest or which is related to or

4

affiliated with any of the Settling Defendants, and the legal representatives, heirs, successors in

interest or assigns of the Settling Defendants (the "Released Parties"). "Released Parties" does

not include KPMG in Bermuda ("KPMG Bermuda") and KPMG LLP USA ("KPMG USA")

(collectively, "KPMG") or its partners, principals, employees, agents and affiliates. The Settled

Claims are hereby compromised, settled, released, discharged and dismissed as against the

Released Parties on the merits and with prejudice by virtue of the proceedings herein and this

Order and Final Judgment. "Settled Claims" does not include any claims against KPMG or its

partners, principals, employees, agents and affiliates.

8.    "Unknown Claims" means any and all Settled Claims which any Lead Plaintiff or

Class Member does not know or suspect to exist in his, her or its favor at the time of the release

of the Released Parties, and any Settled Defendants' Claims which any Settling Defendant does

not know or suspect to exist in his, her or its favor, which if known by him, her or it might have

affected his, her or its decision(s) with respect to the Settlement. With respect to any and all

Settled Claims and Settled Defendants' Claims, the parties stipulate and agree that upon the

Effective Date, the Lead Plaintiffs and the Settling Defendants shall expressly waive, and each

Class Member shall be deemed to have waived, and by operation of the Judgment shall have

expressly waived, any and all provisions, rights and benefits conferred by any law of any state or

territory of the United States or Bermuda, or principle of common law, which is similar,

comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor.

5

Lead Plaintiffs and Settling Defendants acknowledge, and Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement.

9.      The Settling Defendants and the successors and assigns of any of them, are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any and all claims, rights or causes of action or liabilities whatsoever, whether based on United States federal, state, local, statutory or common law or the laws of Bermuda or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted in the Action or any forum by the Settling Defendants or any of them or the successors and assigns of any of them against any of the Lead Plaintiffs, Class Members or their attorneys, which arise out of or relate in any way to the institution, prosecution, or settlement of the Action (except for claims to enforce the Settlement) (the "Settled Defendants' Claims") against any of the Lead Plaintiffs, Class Members or their attorneys. The Settled Defendants' Claims of all the Released Parties are hereby compromised, settled, released, discharged and dismissed on the merits and with prejudice by virtue of the proceedings herein and this Order and Final Judgment.

10.     Pursuant to the PSLRA, the Released Parties are hereby discharged from all claims for contribution or equitable indemnity, by any person or entity, whether arising under United States federal, state, local, statutory or common law or the laws of Bermuda or any other law, based upon, arising out of, relating to, or in connection with the claims of the Class or any Class Member in the Action (including the KPMG Action, which has been consolidated into the Action). Accordingly, to the maximum extent permissible under the PSLRA, the Court hereby

6

bars and enjoins all such claims for contribution or equitable indemnity:  (a) by any person or entity against any Released Party; and (b) by any Released Party against any person or entity other than a person or entity whose liability to the Class has been extinguished pursuant to the Stipulation and Agreement of Partial Settlement and this Order and Final Judgment.  Pursuant to 15 U.S.C. § 78u-4(f)(7)(B), if there is a final verdict or judgment against any other Defendant in the Action, the verdict or judgment shall be reduced by the greater of:  (a) an amount that corresponds to the percentage of responsibility of the Settling Defendants; or (b) the amount paid pursuant to this Settlement by the Settling Defendants.

11.     Neither this Order and Final Judgment, the Stipulation, nor any of its terms and provisions, nor any of the negotiations or proceedings connected with it, nor any of the documents or statements referred to therein shall be:

(a)     offered or received against the Settling Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Settling Defendants with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of the Settling Defendants;

(b)     offered or received against the Settling Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Settling Defendant;

(c)     offered or received against the Settling Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or

7

wrongdoing, or in any way referred to for any other reason as against any of the Settling

Defendants, in any other civil, criminal or administrative action or proceeding, other than such

proceedings as may be necessary to effectuate the provisions of this Stipulation; provided,

however, that if this Stipulation is approved by the Court, Settling Defendants may refer to it to

effectuate the liability protection granted them hereunder;

      (d)    construed against the Settling Defendants as an admission or concession

that the consideration to be given hereunder represents the amount which could be or would have

been recovered after trial; or

      (e)    construed as or received in evidence as an admission, concession or

presumption against Lead Plaintiffs or any of the Class Members that any of their claims are

without merit, or that any defenses asserted by the Settling Defendants have any merit, or that

damages recoverable under the Complaint would not have exceeded the Gross Settlement Fund.

    12.    The Plan of Allocation is approved as fair and reasonable, and Plaintiffs' Counsel

and the Claims Administrator are directed to administer the Stipulation in accordance with its

terms and provisions.

    13.    The Court finds that all parties and their counsel have complied with each

requirement of Rule 11 of the Federal Rules of Civil Procedure as to all proceedings herein.

    14.    Plaintiffs' Counsel are hereby awarded one-third (33⅓%) of the Gross Settlement

Fund in fees, which sum the Court finds to be fair and reasonable, and $191,705.37 in

reimbursement of expenses, which expenses shall be paid to Plaintiffs' Co-Lead Counsel from

the Settlement Fund with interest from the date such Settlement Fund was funded to the date of

8

payment at the same net rate that the Settlement Fund earns.  The award of attorneys' fees shall be allocated among Plaintiffs' Counsel in a fashion which, in the opinion of Plaintiffs' Co-Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions in the prosecution of the Action.

15.     Lead Plaintiff Midstream Investments Ltd. is hereby awarded $3,150.  Such award is for reimbursement of this Lead Plaintiff's reasonable costs and expenses (including lost wages) directly related to its representation of the Class.

16.     In making this award of attorneys' fees and reimbursement of expenses to be paid from the Gross Settlement Fund, the Court has considered and found that:

(a)     the settlement has created a fund of $16.5 million in cash that is already on deposit, plus interest thereon and that numerous Class Members who submit acceptable Proofs of Claim will benefit from the Settlement created by Plaintiffs' Counsel;

(b)     16,700 copies of the Notice were disseminated to putative Class Members indicating that Plaintiffs' Counsel were moving for attorneys' fees not to exceed one-third (33⅓%) of the Gross Settlement Fund and for reimbursement of expenses in the approximate amount of $250,000 (including approximately $10,000 for the costs and expenses of the Lead Plaintiffs directly relating to their representation of the Class) and no objections were filed against the terms of the proposed Settlement or the ceiling on the fees and expenses requested by Plaintiffs' Counsel contained in the Notice;

(c)     Plaintiffs' Counsel have conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

9

(d)    The action involves complex factual and legal issues and was actively prosecuted over two years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

(e)    Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Lead Plaintiffs and the Class may have recovered less or nothing from the Settling Defendants;

(f)    Plaintiffs' Counsel have devoted over 5,473 hours, with a lodestar value of $1,862,701.25, to achieve the Settlement; and

(g)    The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases.

17.    Exclusive jurisdiction is hereby retained over the parties and the Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order and Final Judgment, and including any application for fees and expenses incurred in connection with administering and distributing the settlement proceeds to the members of the Class.

18.    Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

19.    This Action has been pending since the first of the constituent actions were filed in 2002. The Settlement Stipulation resolves all of the claims asserted by the Class against the Settling Defendants, and pursuant to the above bar orders bars any claims for contribution or equitable indemnity, by or against the Settling Defendants. The claims asserted against the

10

Settling Defendants and now settled raise issues that are separable from the remaining claims of Plaintiffs and the Class against KPMG. Permitting the immediate appeal, if taken, of this Order and Final Judgment does not result in any duplication of review by an appellate court, because if an appellate court were to vacate the Stipulation, then the parties may reasonably continue their prosecution or defense of the claims while this Court continues to preside over other related claims, without a waste of time or judicial resources. If this Order and Final Judgment were not immediately appealable, once an appeal were ripe after the conclusion of the entire coordinated litigation, and if the appellate court vacated this Order and Final Judgment, then this Court would face re-trying the entire litigation as to the Settling Defendants, wasting judicial resources.

20.     By reason of the finding in the previous paragraph, there is no just reason for delay in the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54 (b) of the Federal Rules of Civil Procedure. The Action is not dismissed in respect of claims against any person or entity other than the Settling Defendants.

Dated:        New Haven, Connecticut
              _____, 2005


              _____
              Honorable Ellen Bree Burns
              UNITED STATES DISTRICT JUDGE

11

**EXHIBIT 1**

**List of Persons and Entities Excluded from the Class in <u>Schnall, et al. v. Annuity and Life Re (Holdings). Ltd., et al.</u>, Civil Action No. 02 CV 2133 (EBB)**

The following persons and entities, and only the following persons and entities, have properly excluded themselves from the Class:

Andrew S. Lerner
515 East 85th Street, Apt. 1E
New York, New York  10028

# Exhibit E

DOC # 57

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- x
In re CANADIAN SUPERIOR ENERGY INC. :
SECURITIES LITIGATION
-------------------------------------------------- :
                                                   :
This Document Relates To:                          :
                                                   :
        ALL ACTIONS.                               :
-------------------------------------------------- x

Master File No. 04-CV-02020(RO)

CLASS ACTION

[PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES

OCT 2 0 2005



THIS MATTER having come before the Court on October 19, 2005, on the application of Plaintiffs' Settlement Counsel for an award of attorneys' fees and reimbursement of expenses incurred in the Litigation; the Court, having considered all papers filed and proceedings conducted herein, having found the settlement of this Litigation to be fair, reasonable and adequate and otherwise being fully informed in the premises and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      All of the capitalized terms used herein shall have the same meanings as set forth in the Stipulation of Settlement dated as of May 26, 2005 (the "Stipulation").

2.      This Court has jurisdiction over the subject matter of this application and all matters relating thereto, including all Members of the Class who have not timely and validly requested exclusion.

3.      The Court hereby awards Plaintiffs' Settlement Counsel attorneys' fees of 33% of the Settlement Fund and reimbursement of expenses in an aggregate amount of $135,677.46 together with the interest earned thereon for the same time period and at the same rate as that earned on the Settlement Fund until paid.  Said fees shall be allocated by Plaintiffs' Settlement Counsel in a manner which, in their good-faith judgment, reflects each counsel's contribution to the institution, prosecution and resolution of the Litigation. The Court finds that the amount of fees awarded is fair and reasonable under the "percentage-of-recovery" method.

4.      The awarded attorneys' fees and expenses, and interest earned thereon, shall be paid to Plaintiffs' Settlement Counsel from the Settlement Fund immediately after the date this Order is

executed subject to the terms, conditions, and obligations of the Stipulation and in particular ¶6.2

thereof, which terms, conditions, and obligations are incorporated herein.

IT IS SO ORDERED.

DATED: _10/19/15_                    _____
                                     THE HONORABLE RICHARD OWEN
                                     UNITED STATES DISTRICT JUDGE

Submitted by:

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
ROBERT M. ROTHMAN (RR-6090)
DAVID A. ROSENFELD (DR-7564)

_____
        SAMUEL H. RUDMAN

200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
ELLEN GUSIKOFF STEWART
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

S:\Settlement\CanadianSuperior.set\ORD 00025084.doc

- 2 -

## DECLARATION OF SERVICE

I am an attorney admitted to practice in this district. I hereby certify, under penalty of perjury, that on this 30th day of June, 2008, I caused a true and correct copy of the foregoing document to be served on the persons listed below, 1) through this court's ECF system, 2) by e-mail, and 3) by causing a true copy thereof to be delivered by regular United States mail, postage prepaid:

**MORRISON & FOERSTER, LLP**

Jack C. Auspitz (jauspitz@mofo.com)
Joel C. Haims (jhaims@mofo.com)
Lily M. Fan (lmfan@mofo.com)
1290 Avenue of the Americas
New York, New York  10104-0050
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900

**Counsel for Qiao Xing and the Individual Defendants**

**LESTER SCHWAB KATZ**
 **& DWYER, LLP**

Lawrence Steckman
(lsteckman@lskdnylaw.com)
120 Broadway
New York, New York  10271
Telephone:  (212) 964-6611
Facsimile:  (212) 267-5916

**Counsel for Grobstein, Horwath & Company LLP**

_____/s/Gregory B. Linkh_____
        Gregory B. Linkh (GL-0477)